UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| COLIN BOWER, on his own behalf and as the guardian and legal custodian of his minor children, N and R, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CIVIL ACTION NO. 1:10-cv-10405-NG |
| MIRVAT EL-NADY BOWER and EGYPTAIR AIRLINES, | ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS MOTION
TO COMPEL RESPONSE TO SUBPOENA FROM MICHAEL TRAFT**

Plaintiff and left-behind parent Colin Bower respectfully submits this motion to compel a response to a subpoena from third-party Michael Traft. In support of this motion, Mr. Bower states as follows:

**INTRODUCTION**

This motion seeks to compel information from Michael Traft, a Massachusetts attorney who has represented the defendant Mirvat El-Nady Bower and who had contact with her in the days surrounding and since El Nady's abduction of Mr. Bower's children, including a lengthy call the day of the abduction.

Raising a "blanket" claim of attorney-client privilege, Mr. Traft has refused to provide a meaningful response to the subpoena. Copies of the subpoena and Mr. Traft's objection are attached to the Declaration of Joshua L. Solomon (the "Solomon Declaration") as Exhibits A and B, respectively. Mr. Traft has refused to produce any documents in response to the subpoena issued to him. He has even refused to produce documents concerning communications with

persons with whom he has not claimed to have an attorney-client relationship. While taking this position, Mr. Traft has also refused to provide Mr. Bower with a privilege log or other information to support his blanket claim of privilege. Instead, he has simply refused to respond meaningfully to the subpoena.

In light of Mr. Traft's refusal to satisfy his obligations pursuant to the subpoena, but in an abundance of caution in light of the invocation of privilege, Mr. Bower respectfully requests an order requiring Mr. Traft to (1) inform Mr. Bower's counsel of the names of those with whom he claims to have an attorney-client relationship, to the extent he has responsive communications with such persons; (2) with respect to such persons, provide copies of any engagement letters or agreements; (3) provide Mr. Bower's counsel with a privilege log; and (4) make available for an *in camera* inspection documents on the log that Mr. Bower seeks to have reviewed following receipt of the log.

## BACKGROUND

This action arises out of an international child abduction by the defendant Mirvat El-Nady Bower. On August 11, 2009, Ms. El-Nady abducted Mr. Bower's young minor children, N and R, taking them away from their Massachusetts home to Egypt. Apart from recent brief meetings in Cairo arranged through diplomatic efforts, which were closely supervised by an entourage accompanying Ms. El-Nady, Mr. Bower has not seen N and R or spoken to them since the abduction 14 months ago. Mr. Bower's efforts to locate and recover his children, and information concerning the danger that they are in, is summarized in a recent letter to President Mubarak of Egypt, attached hereto as Exhibit C.

Pursuant to a Massachusetts Probate and Family Court order, Mr. Bower had sole legal custody over N and R at the time of the abduction, and possesses sole legal and physical custody

over them now.  During the children's visit with Ms. El-Nady at her Massachusetts home, she

illegally fled the state and the country with the children, brought them to Egypt, and has kept

them away from their Massachusetts home and their father ever since.

Through discovery in this action, Mr. Bower has learned that Mr. Traft, who represented

Ms. El-Nady in the divorce proceedings that led to his sole legal custody, had contact with Ms.

El-Nady in the months and days preceding her abduction of the children.  Most notably, phone

records reflect that Mr. Traft spoke to Ms. El-Nady for 16 minutes on the day of the abduction,

August 11, 2009.  *See* Excerpts from Verizon Phone Records attached hereto as Exhibit D

(reflecting calls between 617-959-1666 [Ms. El-Nady] and 617-338-5566 [Mr. Traft]).  Mr. Traft

also spoke to Ms. El-Nady in the period leading up to the abduction, including calls or voicemail

exchanges on August 10, July 27, July 14, July 9, July 8 (twice, for a total of one hour and 17

minutes), July 7, July 6, and July 2.  *Id.*  These calls reflect communications between only Ms.

El-Nady's cell phone number and Mr. Traft's office number.  Whether there were additional

calls in which either Ms. El-Nady or Mr. Traft used a different number remains unknown.

In addition, Mr. Bower has learned that Mr. Traft has spoken to Bruce Bower, who has

offered his assistance to Ms. El-Nady after her abduction of Mr. Bower's children.  *See, e.g.,*

Excerpt from Hollis Telecom Phone Records, attached to the Solomon Declaration as Exhibit E

(reflecting calls between 617-338-5566 [Mr. Traft] and 603-465-7950 [Bruce Bower]); Email

from Bruce Bower, attached to the Solomon Declaration as Exhibit F.  Bruce Bower was also in

contact with Ms. El-Nady leading up to the abduction.  *See* Verizon Records, Exh. D (reflecting

calls between 617-959-1666 [Ms. El-Nady] and 603-465-7950 [Bruce Bower]).  Mr. Bower has

also learned through government officials with whom he is working to recover his children that

Bruce Bower has been in regular contact with Ms. El-Nady since the abduction.

- 3 -

Based on the timing of Mr. Traft's communications with Ms. El-Nady in relation to her abduction, Mr. Bower sought limited discovery from Mr. Traft. Specifically, Mr. Bower limited his requests to materials dated since June 1, 2009, which was approximately two months prior to the abduction and during a time when there were few, if any, active matters in the divorce proceedings in which Mr. Traft had represented Ms. El-Nady. Mr. Bower sought the following categories of documents within that time period:

1.     documents concerning Ms. El-Nady, N, R, and Bruce Bower;

2.     documents concerning communications with or about Ms. El-Nady;

3.     documents concerning or containing Ms. El-Nady's or Bruce Bower's phone numbers or email addresses;

4.     documents concerning communications with any member of Ms. El-Nady's family, the children's family, and others known to be associates or friends of Ms. El-Nady;

5.     documents concerning custody rights, obligations, or orders related to the children;

6.     documents concerning communications with defendant EgyptAir concerning Ms. El-Nady or the children;

7.     documents concerning travel by Ms. El-Nady or the children;

8.     documents concerning the location of the children since the abduction.

Notwithstanding the harrowing circumstances of this matter, in which two children have been abducted and held away from their father in an unknown location for more than a year, Mr. Traft has refused to respond meaningfully to the subpoena. He has provided Mr. Bower with only a blanket invocation of Ms. El-Nady's attorney-client privilege and work product protection, in which he stated that he would not respond further and provided no item-by-item explanation of his objection. In subsequent discussions, Mr. Traft has refused to provide a privilege log or any information concerning whom he represents and whether he has had post-

abduction contact with Ms. El-Nady.  In an effort to avoid motion practice, Mr. Bower's counsel

eventually sent to Mr. Traft the letter attached to the Solomon Declaration as Exhibit G.

Following Mr. Traft's receipt of this letter, counsel for Mr. Bower had one further phone

call with Mr. Traft, in which he reiterated his refusal to provide any documents or a privilege log.

In the interest of focusing the dispute, Mr. Bower's counsel invited Mr. Traft to explain with

whom he claims to have an attorney-client relationship (and, especially, whether he purports to

represent Bruce Bower) and to state, if true, that he has had no communications with Ms. El-

Nady since the abduction or that he has not traveled to Egypt since the abduction.  Mr. Traft

refused to answer any of these questions, continuing to assert that he would respond no further to

the subpoena.  In fact, in an effort to explain his position that disclosing whether he has traveled

to Egypt would not provide meaningful information, he went so far as to state that it would not

matter if he did not travel to Egypt because "maybe I met with her in Paris."  This discussion

only heightened Mr. Bower's reasons for believing that Mr. Traft could possess information

concerning the abduction and location of his children.

## DISCUSSION

Particularly under the circumstances of this case, in which a defendant has kidnapped two

children, has been charged by the United States with international child kidnapping, and remains

a fugitive from those charges, Mr. Traft's blanket assertion of privilege, on behalf of Ms. El-

Nady, without further analysis or meaningful discussion should not be endorsed.  At the very

least, Mr. Traft should be required to support his invocation of the privilege by providing a

privilege log, disclosing whom he actually represents, providing engagement letters or

agreements with such persons, and making appropriate materials available for *in camera*

inspection.  Such relief is all that Mr. Bower seeks from the Court at this stage.

It is axiomatic that a party invoking a privilege bears the burden of demonstrating the propriety of that invocation. *United States v. Schussel*, 291 Fed. Appx. 336, 343 (1st Cir. 2008) ("The burden of proving an applicable privilege lies with the party claiming the privilege. The party must demonstrate by a preponderance of the evidence not only that the privilege applies, but that it has not been waived or that exceptions do not apply."). Furthermore, Federal Rule of Civil Procedure 45, under which Mr. Bower issued his subpoena, requires Mr. Traft to "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Despite these requirements, Mr. Traft has steadfastly refused to do any more than make a blanket claim of privilege. Mr. Bower's requests in this motion are narrowly tailored to obtain only the minimum relief at this stage necessary to further explore Mr. Traft's invocation of Ms. El-Nady's privilege.

Mr. Traft's facile response to the subpoena – that every document called for would necessarily intrude upon the privilege – not only ignores his burden under Rule 45 and the requirement that he support his assertion of privilege, but also ignores well-established law concerning limitations on the privilege. We know, for example, that Mr. Traft has communicated not just with Ms. El-Nady, but also with Bruce Bower. In light of his refusal even to disclose whether he claims an attorney-client relationship with Bruce Bower and his refusal to provide any engagement letters, one can only infer that there is no such relationship between him and Bruce Bower. Whether work product protection in the context of Mr. Traft's representation of Ms. El-Nady, rather than attorney-client privilege, could apply to his communications with Bruce Bower would, of course, depend on the purpose and nature of those

communications.[1] But in light of Mr. Traft's refusal to provide *any* information about such communications, analyzing such a claim is impossible.

As for Mr. Traft's contact with Ms. El-Nady, the specter of the crime-fraud exception to any privilege clearly exists. His communications include a lengthy call the day of the abduction, as well as his communications with Bruce Bower, who has offered his assistance to Ms. El-Nady since the abduction and has been in regular contact with Ms. El-Nady since. Ms. El-Nady is currently a fugitive, having been charged by the United States with international child kidnapping. The crime-fraud exception "withdraws protection where the client sought or employed legal representation in order to commit or facilitate a crime or fraud." *In re Grand Jury Proceedings*, 417 F.3d 18, 22 (1st Cir. 2005); *see also In re Grand Jury Proceedings (Violette)*, 183 F.3d 71, 75 (1st Cir. 1999); *United States v. Reeder*, 170 F.3d 93, 106 (1st Cir. 1999); *Purcell v. District Attorney for the Suffolk District*, 424 Mass. 109, 112 (1997). The potential for misuse of attorney advice is heightened in this case, where the nature of the crime at issue – international kidnapping and secreting of Mr. Bower's children in a foreign country – is ongoing as an unlawful retention of the children outside the United States. *See* 18 U.S.C. § 1204. Any communications that Mr. Traft has had post-abduction with Ms. El-Nady, while she is a fugitive and continues to deny Mr. Bower his lawful rights to custody of his children, would be especially suspect. *See In re Application of the Unites States for an Order Authorizing the Interception of Oral communications at the Premises Known as Calle May-Aguez 212, Hato Rey, Puerto Rico*, 723 F.2d 1022, 1026 (1st Cir. 1983) ("[C]ommunications between attorney and client which concern illegal activities in progress are not protected by the privilege."). Mr.

---

[1] With his former client a fugitive, cognizable "work product" would remain limited to advice consistent with ethical obligations to encourage her return.

Traft was given the opportunity to inform Mr. Bower's counsel that no such communications took place. He refused to do so.

One need not actually believe that Mr. Traft intentionally participated in Ms. El-Nady's crime for the crime-fraud exception to apply. As the First Circuit has held, the innocence of the lawyer is irrelevant, as "[t]he case law dealing with the crime-fraud exception in the attorney-client context makes it *transparently clear* that the client's intentions control." *In re Grand Jury Proceedings (Violette)*, 183 F.3d 71, 79 (1st Cir. 1999) (emphasis added); *In re Grand Jury*, 417 F.3d at 23 ("The crime-fraud exception requires the *client's* engagement in criminal or fraudulent activity and the *client's* intent with respect to attorney-client communications." (emphasis in original)); *Schussel*, 291 Fed. Appx. at 345 ("The exception applies based on the client's intent, not the lawyer's. The exception applies, therefore, regardless of whether the attorney was an innocent or willing accomplice." (internal citation omitted)); *In the Matter of Ellis*, 425 Mass. 332, 336 (1997).

In the circumstances, the relief that Mr. Bower seeks at this stage is entirely proper. The standard for application of the crime-fraud exception is not onerous. As the First Circuit has explained,

> As we read the consensus of precedent in the circuits, it is enough to overcome the privilege that there is a reasonable basis to believe that the lawyer's services were used by the client to foster a crime or fraud. The circuits – although divided on articulation and on some important practical details – all effectively allow piercing of the privilege on something less than a mathematical (more likely than not) probability that the client intended to use the attorney in furtherance of a crime or fraud. This is a compromise based on policy but so is the existence and measure of the privilege itself.

*In re Grand Jury*, 417 F.3d at 23 (internal footnote omitted). An even lower standard applies here, where Mr. Bower merely seeks additional information about the material claimed to be

privileged, so as to allow for a possible *in camera* inspection and an assessment of whether the

crime-fraud exception applies:

> It is often hard to determine whether the attorney-client relationship has been
> misused by the client for crime or fraud without seeing the document, or hearing
> the testimony, as to which the privilege is claimed.  To overcome this problem (as
> well as other privilege problems) judges have sometimes been willing to review
> privileged materials by themselves *in camera* and then decide whether the other
> side is entitled to it. *See, e.g., United States v. Jacobs*, 117 F.3d 82, 87 (2d
> Cir.1997).  The Supreme Court has blessed this procedure in *Zolin*, 491 U.S. at
> 572, 109 S.Ct. 2619; *see also United States v. Edgar*, 82 F.3d 499, 509 (1st Cir.),
> *cert. denied* 519 U.S. 870, 117 S.Ct. 184, 136 L.Ed.2d 123 (1996).
>
> *Zolin* also said that a "lesser evidentiary showing" is needed for *in camera* review
> than is needed finally to pierce the privilege, and that upon this showing whether
> to conduct *in camera* review is within the trial court's discretion. 491 U.S. at 572,
> 109 S.Ct. 2619.  For such a review, all that was needed was a factual basis "to
> support a good-faith belief by a reasonable person" that "*in camera* review of the
> materials may reveal evidence to establish the claim that the crime-fraud
> exception applies." *Id.* (internal quotation marks omitted).  "May" is a very
> relaxed test and, as only the judge gets this initial access, properly so.

*Id.* at 22 (internal footnote omitted).  Without further information from Mr. Traft in support of

his invocation of Ms. El-Nady's privilege, and potentially an *in camera* inspection of materials,

neither Mr. Bower nor the Court can assess whether the crime-fraud exception would apply to

any otherwise privileged materials.  Once again, the relief that Mr. Bower seeks through this

motion is narrow and designed simply to allow for further exploration of Mr. Traft's claim of

privilege.[2]

## CONCLUSION

For the reasons provided herein, Mr. Bower respectfully requests that the Court allow this

motion to compel and order Mr. Traft to (1) inform Mr. Bower's counsel of the names of those

with whom he claims to have an attorney-client relationship, to the extent he has responsive

---

[2] Should this Court conduct a hearing and Ms. El-Nady refuse to attend while remaining a
fugitive, the missing witness doctrine and the fugitive disentitlement doctrine may give rise to adverse
inferences against her, thereby eliminating any privilege rights she might otherwise possess.

communications with such persons; (2) with respect to such persons, provide copies of any

engagement letters or agreements; (3) provide Mr. Bower's counsel with a privilege log; and (4)

make available for an *in camera* inspection documents on the log that Mr. Bower seeks to have

reviewed following receipt of the log.

## REQUEST FOR ORAL ARGUMENT

Mr. Bower respectfully requests a hearing on this motion.

October 21, 2010

Respectfully submitted,

Colin Bower,
By his attorneys,

/s/  Joshua L. Solomon
Barry S. Pollack (BBO#642064)
Joshua L. Solomon (BBO#657761)
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA 02109
(617) 338-2800 (phone)
(617) 338-2880 (fax)

Lisa G. Arrowood (BBO #022330)
Alexis D'Arcy (BBO #667608)
TODD & WELD LLP
28 State Street
Boston, MA 02109
(617) 720-2626 (phone)
(617) 227-5777 (fax)

Certificate of Service and Compliance with L.R. 7.1 and 37.1

I hereby certify that this document filed through the ECF system
will be sent electronically to the registered participants as
identified on the Notice of Electronic Filing (NEF) and to Mr.
Traft by mail on October 22, 2010.  I also certify that prior to filing
this motion, counsel for Mr. Bower conferred on multiple
occasions with Mr. Traft, but were unable to reach any agreement
to resolve the matters addressed herein.  In addition to the efforts
described herein, the undersigned and Barry S. Pollack, Esq., on
behalf of Mr. Bower, participated in a conference call with Mr.
Traft on October 18, 2010, at approximately 4:00 p.m., which
lasted for about 20 minutes.  The parties were unable to reach an
agreement on any way to narrow their differences.

/s/      Joshua L. Solomon