UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COLIN BOWER, on his own behalf and as the guardian and legal custodian of his minor children, N and R,<br><br>Plaintiff,<br><br>v.<br><br>MIRVAT EL-NADY BOWER and EGYPTAIR AIRLINES COMPANY,<br><br>Defendants. | NO. 1:10-cv-10405-NG |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL YAHOO! AND GOOGLE TO COMPLY WITH THIRD-PARTY DOCUMENT SUBPOENAS AND TO COMPEL THE DEFENDANT, MIRVAT EL-NADY BOWER, TO CONSENT TO THE PRODUCTION OF EMAILS**

**INTRODUCTION**

The Plaintiff Colin Bower ("Bower") herewith moves this Court to compel Yahoo! and Google to produce all emails from any and all email accounts registered to the Defendant Ms. Mirvat El-Nady Bower ("Ms. El-Nady"), including accounts identified as mirvatsnady@yahoo.com and mirvatnady@gmail.com, from July 1, 2009 through the present, pursuant to two duly noticed document subpoenas issued pursuant to Federal Rule of Procedure 45. See Exhibits A & B to the Affidavit of Alexis V. D'Arcy, Esq. filed herewith. To facilitate compliance, the Plaintiff also respectfully requests either an order pursuant to Rule 34 compelling Ms. El-Nady to provide consent to Yahoo! and Google to produce the responsive emails, or an order which shall operate to provide the necessary consent. See Proposed Order attached hereto as Exhibit C. For reasons fully explained herein Yahoo! and Google's argument that the Stored Communications Act, 18 U.S.C. §§ 2701-2703 (2006) ("SCA" or "the Act") precludes their compliance with the Plaintiff's subpoenas is misplaced, because the emails

1

sought belong to a party to litigation and are potentially relevant to key issues in this action. Particularly, here, where the Defendant has kidnapped two young children, knowingly kept them away from their custodial parent for more than a year, and willfully ignored the criminal and civil jurisdiction of this court, Ms. El-Nady should be deemed to have consented to the production. Notably, both Yahoo! and Google have notified Ms. El-Nady via email of the subpoenas. See Affid. of Alexis D'Arcy, Esq. ¶¶13-14 filed herewith. She has not, however, interposed an objection. Id.

## STATEMENT OF FACTS

On August 11, 2009, Ms. El-Nady abducted Mr. Bower's young minor children, N and R, taking them away from their Massachusetts home to Egypt.[1] See Amended Complaint ("Am. Compl.") at ¶1. Ms. El-Nady facilitated this kidnapping through EgyptAir. Id. Pursuant to a Massachusetts Probate and Family Court order, Bower had sole legal custody over N and R at the time of the abduction. Id. Ms. El-Nady illegally fled the state and the country with N and R and took them to Egypt, during a scheduled visit with them at her Massachusetts home. She has kept them away from their father and their Massachusetts home ever since. Id.

Following the abduction, Ms. El-Nady transmitted a message to Mr. Bower through an individual unknown to him threatening that if he contacted the police to report the kidnapping, he would never see or speak to his children again. Id. at ¶12. Nonetheless Mr. Bower reported the kidnapping to police on August 16, 2009, the day he discovered it, which resulted in federal criminal charges arising from the abduction. Id. at ¶7. Ms. El-Nady is presently a fugitive from these kidnapping charges which are pending against her in this District Court. Id. For more than a year, Ms. El-Nady has willfully ignored the criminal jurisdiction of this Court, and since March 2010, when the complaint in this action was filed, she has ignored this Court's civil authority.

---

[1] At the time of the abduction N and R were, respectively eight and six years of age. Am. Compl. at ¶6.

Mr. Bower has made multiple trips to Egypt since N and R were abducted in an attempt to locate and bring his children home. With political support from the highest level United States government officials, including Secretary of State Hillary R. Clinton and Senator John Kerry, on his most recent visits to Egypt in October 2010, Mr. Bower was permitted short, supervised visits with N and R, which were closely watched over by an entourage accompanying Ms. El-Nady. It was apparent to Mr. Bower at those meetings that N and R have been brainwashed by their mother against their father and against the United States. In addition, at the meeting Ms. El-Nady, who was also present, attempted to extort from Mr. Bower money and an end to any media coverage of the kidnapping in exchange for greater visitation with N and R. This was the only contact that Mr. Bower has had either with N or R or Ms. El-Nady since the abduction fourteen months ago.

*The Subpoena to Yahoo!*

On June 6, 2010, Mr. Bower served upon Yahoo! a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action. See Exhibit A. That subpoena sought all emails from any and all email accounts registered to Ms. El-Nady, including from the email account mirvatsnady@yahoo.com. See id. at p. 4. Because this subpoena was issued from the United States District Court for the District of Massachusetts, was duly served on Yahoo!'s registered agent in the state of Massachusetts, and production was to take place in Boston, Massachusetts at the offices of Plaintiff's counsel, this Court has jurisdiction to enforce the subpoena.

*Yahoo!'s Response to the Subpoena*

Yahoo! objected to the subpoena via letter on June 14, 2010. See Correspondence from Yahoo! Legal Assistant, Kris Kim, to Carla Salvucci, Esq., prior counsel for the Plaintiff, attached hereto as Exhibit D. Therein Yahoo! objected to the subpoena for several reasons, but

3

primarily on the ground that the SCA, 18 U.S.C. § 2701, et. seq., prohibits it from divulging the contents of Ms. El-Nady's emails. At the same time, however, Yahoo! was clear that Ms. El-Nady's consent to the subpoena would satisfy a principal exception to the Act. See Exhibit D ¶3; 18 U.S.C § 2702(b)(3).

*The Subpoena to Google*

Documents produced in this litigation reveal that Ms. El-Nady communicates not only via a Yahoo! email account but also via a Gmail account. See Exhibit E. Therefore, on October 18, 2010, the Plaintiff issued to Google a subpoena from this Court seeking all emails since July 1, 2009, from any and all email accounts registered to Ms. El-Nady, including from the email account mirvatnady@gmail.com. See Exhibit B at 5.

*Google's Response to the Subpoena*

Like Yahoo!, Google objected to the subpoena primarily on the grounds that the SCA bars its compliance. See Exhibit F. Google elaborated that "[t]he appropriate way to seek such content is to direct your request to the account holder who has custody and control of the data in the account." See id. ¶4.

## ARGUMENT

**I. Production of Ms. El-Nady's Emails Would Not Violate the SCA, Which Has No Effect on a Party's Discovery Obligations Under Rule 34.**

The SCA is a narrow statute designed to provide Fourth Amendment-like privacy protections to electronic communications on the internet. Orin S. Kerr, A User's Guide to the Stored Communications Act, and a Legislator's Guide to Amending It, 72 Geo. Wash. L. Rev. 1208, 1214 (2004) (containing a thorough explanation of the SCA, its narrow scope and its numerous exceptions). It "is not a catch-all statute." Id. The SCA takes a back-seat to the normal operation of Rules 34 and 45, and the Act's privacy protections can be waived by a party to litigation or trumped by competing considerations. See Flagg v. City of Detroit, 252 F.R.D.

346, 366 (E.D. Mich. 2008) (holding that requiring the Defendant to execute consent to production of electronic communication would not violate the SCA's non-disclosure provisions); Thayer v. Chiczewski, No. 07C1290, 2009 U.S. Dist. LEXIS 84176, at *20-21 (N.D. Ill Sept. 11, 2009) (same); see also Romano v. Steelcase, Inc., No. 2006-2233, slip op. at 7 (N.Y. Sup. Ct., Sept. 21, 2010) (see Exhibit I hereto) (same).

In less egregious circumstances courts have ordered a party to consent to production under Rule 34, despite the SCA's privacy protections. In Flagg, for example, after a thorough review of the prominent SCA cases, the court determined that the authority of Rule 34 trumps the SCA's disclosure prohibition. Flagg, 252 F.R.D. at 366. There the court ordered the City of Detroit to provide Sky-Tel, a non-party that had provided text messaging devices and correspondence services to various City officials and members of that city's police department, with consent to produce all responsive text messages. Id. The plaintiff in Flagg had alleged, among other things, that the City of Detroit and members of that city's police department had conspired to deliberately delay the murder investigation of the plaintiff's mother.[2] First Amended Complaint at ¶¶1, 18, Flagg, No. 05CV74253 (E.D. Mich. Sept. 21, 2006).

Similarly in Romano, for example the New York State Supreme Court held in a products liability case that the Defendant's need for information posted to MySpace and Facebook outweighed the SCA's privacy protections, agreeing with the defendant that the plaintiff may have posted information on these sites which was inconsistent with her claimed measure of

---

[2] In Flagg the Court considered in detail whether SkyTel should be categorized under the SCA as an electronic communication service ("ECS") or a remote communication service ("RCS") or both. Flagg, 252 F.R.D. at 359-361. Such was a critical distinction in that case because if the communications were deemed ECS communications, then only the individual text message authors or recipients could consent to production under 18 USC § 2701(b)(3). Id. at 359. On the other hand if SkyTel was an RCS provider then the City, i.e., "the subscriber" of the text messaging service, could consent to the production as provided for in § 2702(b)(3). Id. at 356 n.26. The court ultimately held that Skytel was an RCS provider. Id. at 363. It is of no consequence to the present motion whether Yahoo! provides ECS or RCS services. Either way Ms. El-Nady's consent is sufficient under 18 U.S.C. § 2702(b)(3), because she is both the Yahoo! subscriber and the author or recipient of the relevant emails.

damages. No. 2006-2233, slip op. at 1-2, 4, 7 (Exhibit I).[3]  Reasoning that the author of an email or internet posting loses a "'legitimate expectation of privacy in an email that had already reached its recipient [because] at this moment, the e-mailer would be analogous to a letter-writer whose expectation of privacy ordinarily terminates upon delivery of the letter,'" the court ordered the plaintiff to execute a proper consent form as required by the operators of Facebook and MySpace to permit the defendant to gain access to all such records including records previously deleted or archived by these operators. Id. at 6 (citing United States v. Lifshitz, 369 F.3d 173 (2nd Cir. 2004); Beye v. Horizon Blue Cross Blue Shield of New Jersey, 568 F. Supp. 2d 556 (D. NJ 2008)).

Finally, in Thayer, the court held that the SCA does not prevent AOL, an internet service provider ("ISP"), from divulging email pursuant to a third party subpoena in a civil case if the account holder provides his or her consent. 2009 U.S. Dist. LEXIS 84176, at *15. The plaintiff brought an action against the City of Chicago and others alleging violations of his constitutional rights when he was arrested during an anti-war protest. Id. at *1. The court deemed the plaintiff to have impliedly consented to AOL's production of all of his emails because he did not object to the production, he put his mental state at issue when filing a civil suit against the defendant, and had actually consented to the production of at least one email. Id. at *20.

In reaching its holding, the court in Thayer distinguished cases such as In re: Subponea Duces Tecum to AOL, LLC, 550 F. Supp.2d 606, 611 (E.D. Va. 2008), and Theofel v. Farey-Jones, 359 F.3d 1066, 1073-74 (9th Cir. 2004), which have been construed over-broadly to prohibit an ISP from complying with a civil subpoena, by explaining that "at the heart of those decisions, lies the courts' interest in advancing the legislative intent to protect from unauthorized

---

[3]  In Romano the plaintiff sued Steelcase, Inc., after she fell from a chair it had manufactured. See Daniel J. Burnick, Esq., Courts Are Beginning to Allow Discovery into Social Media Sites, http://www.alabamaemploymentlawblog.com (last accessed on Nov. 3, 2010). The plaintiff alleged that the fall had caused her severe injuries which necessitated multiple surgeries on her neck and back. Id.

disclosure electronically-stored documents, which would have otherwise remained private." Thayer, 2009 U.S. Dist. Lexis 84176, at *15 (citing In re Subpoena Duces Tecum to AOL, LLC., 550 F. Supp.2d 606 at 611; Theofel, 359 F.3d at 1073). In re Subpoena Duce Tecum to AOL, LLC., centered on a motion to compel a non-party's emails. 550 F. Supp.2d at 611. Similarly, the subpoena in Theofel was issued in bad faith, was unreasonably broad and was unlimited in time or scope such that irrelevant private information was disclosed which otherwise would be beyond the bounds of discoverable material. 359 F.3d at 1071-72.

The subpoenas at issue in the present case, unlike the subpoenas in In re: AOL Subpoena Duces Tecum and Thoeffel, are narrowly drawn, and seek only relevant information from a party to the litigation who has obligations under Rule 34 to produce potentially relevant documents in her possession, custody or control. As in Thayer and Romano, in the present case Ms. El-Nady's actions in fleeing the country with N and R in violation of the relevant custody order and federal anti-kidnapping laws, keeping the children away from their home, and jeopardizing their safety, while knowingly ignoring the damages she would cause to the Plaintiffs, have put her emails directly at issue. Further, these actions trump any right she may have had to keep these emails private. As a party to this lawsuit, the requirements of Rule 34 apply to her, and she would have to produce these documents directly were she not a fugitive failing to participate in these proceedings. As were the defendants in Flagg, Ms. El-Nady should be ordered to consent to the subpoenas under Rule 34, despite the SCA's disclosure prohibition. In addition, as in Thayer, where the court found the plaintiff had impliedly consented to the production by interposing no objection, Ms El-Nady has failed to object to these subpoenas despite receiving notice of them. Therefore, she should be deemed to have impliedly consented to them. Furthermore, even if she had interposed an objection, both Rule 34 and Ms. El-Nady's status as a fugitive would trump

any objection. See Walsh v. Walsh, 221 F.3d 204, 215 (1st Cir. 2000) (discussing application of the fugitive disentitlement doctrine).

This Court has the inherent authority to impose the relief sought in this motion and to cure in part the fact that Ms. El-Nady has simply ignored the civil and criminal jurisdiction of this Court. See Degen v. United States, 517 U.S. 820, 823 (1996) ("Courts invested with the judicial power of the United States have certain inherent authority to protect their proceedings and judgments in the course of discharging their traditional responsibilities."). Ms. El-Nady's status as a fugitive is directly linked to the facts in this civil litigation, and the discovery Mr. Bower seeks in this motion is narrowly directed toward factual issues in this case, including the abduction and the measure of damages. Thus, ordering Ms. El-Nady's consent to these subpoenas would be an appropriate sanction for her failure to acquiesce to this Court's civil or criminal jurisdiction. See Walsh, 221 F.3d at 215 (explaining that recent cases use the fugitive disentitlement doctrine as a practical tool for sanctioning a party's mistakes, omissions or misconduct).

**II. The Yahoo! and Google Subpoenas are Narrowly Tailored and Seek Only Emails Directly Relevant to Allegations in the Amended Complaint.**

Mr. Bower seeks all of Ms. El-Nady's emails in any and all Yahoo! or Google email accounts registered to her, including the accounts mirvatsnady@yahoo.com and mirvatnady@gmail.com for the time period July 1, 2009 through the present. The emails the Plaintiff seeks are directly relevant to the abduction, identification of potential witnesses, the measure of damages in this case and to many of the facts alleged in the Amended Complaint, including but not limited to:

- Ms. El-Nady intentionally fled the United States to Egypt with N and R; Am. Compl.. at ¶1;

8

- Ms. El-Nady facilitated the kidnapping through EgyptAir; see id. at ¶¶1, 11, 13-14;

- Ms. El-Nady planned her escape at least one week in advance of her August 11, 2009 flight; Id. at ¶11;

- Ms. El-Nady was aware that in escaping the United States with N and R she knowingly violated an existing custody order; Id. at ¶¶1, 46-47;

- Since August 11, 2009, Ms. El-Nady has been knowingly and wrongfully imprisoning N and R in a location unknown to their father; Id. at ¶¶ 25, 38;

- Ms. El-Nady is aware of the emotional damages her actions have caused and continue to cause Mr. Bower and N and R; Id. at ¶¶ 45-47; and

- The continually mounting damages that Ms. El-Nady has caused Mr. Bower and N and R were intentional or at least foreseeable. Id.

In addition, the subpoenas are limited in time to the period that begins with the month immediately prior to the abduction. See Exhibits A at p. 4 and Exhibit B at p. 5.[4]

### III. The Account mirvatsnady@yahoo.com Contains at Least Seventy-Three Directly Relevant Emails.

Pursuant to the SCA's exception for non-content or header information, see 18 U.S.C. § 2702(c)(6), on October 27, 2010, Yahoo! produced header information for the account mirvatsnady@yahoo.com for the relevant period.[5] The header information which contains, inter

---

[4] Yahoo! incorrectly reads the Plaintiff's subpoenas as requiring it to review or sort through judgments about the responsiveness of emails. See Exhibit D at ¶4. Therefore, it also objected to the requests in the subpoena as vague, overbroad and unduly burdensome. See id. Correctly interpreted, however, both subpoenas seek "[a]ll documents and emails concerning the email account identified as mirvatsnady@yahoo.com [for the specified period]." See Exhibits A at p. 4 "Request No.1." In addition, Yahoo! has informed the Plaintiff that due to technological limitations at Yahoo! this is the only acceptable format for the subpoena (as opposed, for example, to requiring Yahoo! to search for particular emails with particular content). See Exhibit D at p. 2.

[5] Prior to producing the header information, Yahoo! required the Plaintiff to issue a subpoena from the Northern District of California expressly requesting header information. See Exhibit G hereto. That

alia, the to, date and from fields, illuminates seventy-three responsive emails sought by the subpoena.[6] See Exhibit H Summary of Responsive Header Information Produced by Yahoo!. The header information demonstrates that prior to and after the abduction, Ms. El-Nady communicated approximately twenty times via email with her brother Maged El-Nady and with various other individuals and friends. See Exhibit H Nos. 28-47. In particular, Ms. El-Nady communicated with her brother, Maged El-Nady, via email two days after the abduction. See id. No. 38. In addition, she communicated with a friend, Annemarie Codur, via this account as recently as February of 2010. See id. No. 46.

The header information also demonstrates twenty-six communications between Ms. El-Nady and her divorce appellate attorney, Michael Traft, Esq., including in the days and weeks leading up to Ms. El-Nady's August 11, 2010 abduction of the children. See id. Nos. 48-73. These communications included three exchanges the day before the abduction and four the day of the abduction. See id. Nos. 62-68. (The email headers also reveal that Mr. Traft wrote to Ms. El-Nady's Gmail account.) As addressed in Plaintiff's Memorandum in Support of his Motion to Compel Response to Subpoena from Michael Traft, Esq., the crime-fraud exception to the privilege may apply to these communications. See Docket Number 77. Pursuant to Rule 10(c), the Plaintiff incorporates that pleading herein by reference.

In addition, the headers reveal twenty-seven emails between Ms. El-Nady and Mr. Hugh Sullivan, Esq., Ms. El-Nady's London real estate attorney, and between Ms. El-Nady and Edward Amaral, Esq., her Boston divorce attorney. See id. Nos. 1-27. Most of these emails copy Ms. El-Nady's brother, Maged El-Nady, or originate with him. Thus, if the attorney-client

---

subpoena requesting header information did not supersede the subpoena issued from this Court seeking the contents of emails.

[6]     Header information does not contain the subject field, avoiding premature release of potentially privileged information.

10

privilege ever applied to these communications, it has been waived. See id. Nos. 2, 6-8, 9-24 and 26.

To the extent that the emails relate to the abduction or the present location of his children, the Plaintiff is entitled to know the contents of these emails and whether the attorney-client privilege has been waived. Therefore, the Plaintiff respectfully requests an in camera review of these fifty-three emails between Ms. El-Nady and her attorneys to determine whether any privilege which may have applied has been waived. To facilitate such a review, the Plaintiff further requests that these fifty-three emails be produced directly to this Court.

## CONCLUSION

For the foregoing reasons, the Plaintiff respectfully requests that this Court (1) order Yahoo! and Google to produce all emails from any email account registered to Ms. El-Nady, including the accounts mirvatsnady@yahoo.com and mirvatnady@gmail.com; (2) order Ms. El-Nady to consent to Yahoo! and Google's production of the relevant emails; (3) specify in its Order that if Ms. El-Nady does not consent to the production of relevant emails within five days of the Court's order, the Court's order shall be interpreted to provide Yahoo! and Google with the consent necessary under 18 U.S.C. § 2702(b)(3) to produce all of the responsive emails, and (4) perform an in camera review of the fifty-three emails between Ms. El-Nady, her attorneys and others. See Plaintiff's Proposed Order attached hereto as Exhibit C.

## REQUEST FOR ORAL ARGUMENT

The Plaintiff respectfully requests a hearing on this motion, which the Plaintiff believes will aid resolution of these matters.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | Colin Bower, N, and R, |
|  | By his attorneys, |
| November 4, 2010 | /s/ Alexis D'Arcy |
|  | Lisa G. Arrowood (BBO #022330) |
|  | Alexis D'Arcy (BBO #667608) |
|  | larrowood@toddweld.com |
|  | adarcy@toddweld.com |
|  | TODD & WELD LLP |
|  | 28 State Street |
|  | Boston, MA  02109 |
|  | (617) 720-2626 (phone) |
|  | (617) 227-5777 (fax) |
|  |  |
|  | Barry S. Pollack (BBO#642064) |
|  | Joshua L. Solomon (BBO#657761) |
|  | jsolomon@sandw.com |
|  | bpollack@sandw.com |
|  | SULLIVAN & WORCESTER LLP |
|  | One Post Office Square |
|  | Boston, MA  02109 |
|  | (617) 338-2800 (phone) |
|  | (617) 338-2880 (fax) |

## CERTIFICATE OF SERVICE

I hereby certify that this document and its attachments filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 5, 2010.

/s/ Alexis V. D'Arcy

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

I hereby certify that on November 2, I conferred with counsel for Yahoo!, John Berroya, concerning the subject of this motion. We were unable to reach an agreement as to production of the contents of the Yahoo! emails. With respect to Google, on November 2, I left a message through a Google Legal Assistant for counsel for Google to return my call so that we might discuss this motion. Ms. El-Nady is unreachable for purposes of compliance with this rule.

/s/ Alexis V. D'Arcy