UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COLIN BOWER, on his own behalf and as the guardian and legal custodian of his minor children, N and R, <br><br> Plaintiff, <br><br> v. <br><br> MIRVAT EL-NADY BOWER and EGYPTAIR AIRLINES COMPANY, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) NO. 1:10-cv-10405-NG |

**PLAINTIFF'S MEMORANDUM OF LAW IN**
**OPPOSITION TO BRUCE BOWER'S MOTION FOR A PROTECTIVE ORDER**

**INTRODUCTION**

Based in part on information the Plaintiff, Mr. Colin Bower, has obtained since the abduction, it is highly likely that Mr. Bruce Bower possesses knowledge and documents relevant to the claims in this case and knowledge of other individuals who may possess knowledge relevant to the Defendant Mirvat El-Nady Bower's abduction of Plaintiff's children and the children's current whereabouts. Therefore, the Plaintiff herewith opposes Bruce Bower's motion for a protective order. Further, the Plaintiff respectfully moves this Court for an Order requiring Bruce Bower to make a complete production of responsive documents pursuant to a Rule 45 subpoena _duces_ _tecum_.

## STATEMENT OF FACTS

On August 11, 2009, Ms. El-Nady abducted Mr. Bower's young minor children, N and R, taking them away from their Massachusetts home to Egypt.[1]  See Amended Complaint ("Am. Compl.") at ¶1.  Ms. El-Nady facilitated this kidnapping through EgyptAir.  Id.  Pursuant to a Massachusetts Probate and Family Court order, Colin Bower had sole legal custody over N and R at the time of the abduction.  Id.  Ms. El-Nady illegally fled the state and the country with N and R and took them to Egypt, during a scheduled visit with them at her Massachusetts home.  She has kept them away from their father and their Massachusetts home ever since.  Id.

The Plaintiff did not discover that the children had been kidnapped until August 16, 2009, when he attempted to pick up his children at Ms. El-Nady's home.  Id. at ¶7.  He reported the kidnapping to the police that same day.  Id. at ¶7.  Federal law enforcement charged Ms. El-Nady with kidnapping, and Ms. El-Nady is currently a fugitive from these charges.  Id.

Bruce Bower has been a long time confidant of Ms. El-Nady and has maintained intimate ties to her, her immediate family in Egypt and N and R through the present time and despite the kidnapping.  Although the Plaintiff has severely limited visitation rights with his children – he has seen them only twice since the abduction, in closely supervised situations in Cairo – Bruce Bower currently maintains close contact with the children.  For example, according to a United States Consular official in Egypt, Ms. El-Nady has reported that she and the children speak with Bruce Bower twice per week.  See Declaration of Colin Bower ¶2 filed herewith.

*The Rule 45 Subpoenas to Bruce Bower*

The Plaintiff served a deposition subpoena on Bruce Bower on October 2, 2010 and a subpoena duces tecum on September 20, 2010.  See Exhibits A and B to the Declaration of

---

[1]   At the time of the abduction N and R were, respectively eight and six years of age.  Am. Compl. at ¶6.

Alexis D'Arcy filed herewith.[2]   The deposition was to take place on November 15, 2010.

Despite the overwhelming evidence that Bruce Bower possesses information relevant to the

Plaintiff's claims in this lawsuit and the present location of the Plaintiff's children, Bruce Bower

has moved for a protective order to prohibit the taking of his deposition at any time.  Further,

Bruce Bower responded to the subpoena <u>duces</u> <u>tecum</u> by producing only nine single page emails

– a fraction of the responsive materials likely in his possession.  <u>See</u> Exhibit <u>C</u>.

**DISCUSSION**

Bruce Bower's motion should be denied because he has failed to establish good cause for

the issuance of a protective order.  The high likelihood that Bruce Bower possesses knowledge

relevant to the facts in this case outweighs the comparatively light burden that Bruce Bower

argues will result to him if the deposition proceeds.

**I.      It is Highly Likely that Bruce Bower Possesses Knowledge Relevant to the Claims in this Action.**

Evidence unearthed in discovery thus far supports the conclusion that Bruce Bower likely

possesses knowledge of the children's present whereabouts and well being and of Ms. El-Nady's

plans to abduct the Plaintiff's children and imprison them in Egypt.

> ➢ The Counsel General of the United States in Egypt informed the Plaintiff on a recent trip to Egypt that Bruce Bower is in contact with N and R two times per week.  <u>See</u> Declaration of Colin Bower ¶2 filed herewith;

> ➢ Bruce Bower's phone records reveal two calls on August 18, 2009 to an Enterprise Rent-A-Car location on Commonwealth Avenue in Brookline, Massachusetts near El-Nady's residence in Chestnut Hill, although Bruce Bower lives in Hollis, New Hampshire.  <u>See</u> Exhibit <u>D</u>.

---

[2]      Unless indicated otherwise all Exhibits cited herein are Exhibits to the Declaration of Alexis V. D'Arcy, Esq. filed herewith.

- Bruce Bower and Jane Bower (his wife) have been in frequent email contact with Ms. El-Nady and members of her immediate family prior to and since the abduction.  See Exhibits C BBower00001-0009 and E;

- Ms. El-Nady's Verizon cell phone records reveal that on August 12, 2010, the day after the abduction and prior to the Plaintiff or law enforcement authorities learning of the abduction, Bruce Bower's made six calls in a row to Ms. El-Nady and left six voicemail messages.  See Exhibit F.

- Bruce Bower wrote to the Egyptian Courts on August 30, 2010 and urged that the Plaintiff be prevented from seeing his children.  See Declaration of Colin Bower ¶3 and Exhibit A thereto;

- Bruce Bower was in contact with Michael Traft, Esq., Ms. El-Nady's appellate divorce lawyer, at least twice approximately two weeks after the abduction. See Exhibit G;

- Bruce and Jane Bower financially supported Ms. El-Nady in the months leading up to the abduction.  See Exhibit C at BBower00004.  Ms. El-Nady somehow managed to pay for the flights to Egypt that she used to take the children out of the country using almost $10,000 in cash paid at the airport the day of the flight. See Exhibit H;

- Via an email on February 17, 2010, in which Bruce Bower forwarded Ms. El-Nady a newsstory covering the kidnapping, and despite the fact that Ms. El-Nady is a fugitive from criminal charges, Bruce Bower offered to Ms. El-Nady, "[i]f we can help, simply let us know how."  See Exhibit C at BBower00009.

- Bruce Bower's Hollis telecom records reveal frequent calls to individuals in Egypt since the abduction.  See Exhibit I.

➢ Ms. El-Nady's phone records reveal calls to other numbers in Hollis, New

    Hampshire, although she lived in Chestnut Hill, Massachusetts.  See Exhibit J.

Bruce Bower's close ties to Ms. El-Nady and N and R both before the abduction and

continuing to the present justify Bruce Bower's deposition.  Among many other questions, the

Plaintiff should be entitled to inquire of Bruce Bower where the children are living, the name of

the children's school, and the status of their physical and mental health, which is a serious

concern given the traumatic abduction they endured and the imprisonment which continues.

Further the Plaintiff is entitled to an explanation for the communications with Enterprise Rent-a-

Car and for the flurry of calls the day after the abduction, before anyone else knew Ms. El-Nady

had abducted the children.  The Plaintiff is also entitled to documents, including emails, phone

records, and financial records.  Such questioning and documents are highly relevant to the

following allegations in the Amended Complaint:

➢ Ms. El-Nady intentionally fled the United States to Egypt with N and R; Am.

    Compl. at ¶1;

➢ Ms. El-Nady facilitated the kidnapping through EgyptAir; see id. at ¶¶1, 11, 13-

    14;

➢ Ms. El-Nady actions have caused N and R severe emotional damage; El-Nady is

    aware of this and this was forseeable; Id. at ¶¶ 45-47; and

➢ Ms. El-Nady planned her escape at least one week in advance of her August 11,

    2009 flight;  Id. at ¶11;

➢ Ms. El-Nady was aware that in escaping the United States with N and R she

    knowingly violated an existing custody order;  Id. at ¶¶1, 46-47;

➢ Since August 11, 2009, Ms. El-Nady has been knowingly and wrongfully

    imprisoning N and R in a location unknown to their father; Id. at ¶¶25, 38;

➢ The continually mounting damages that Ms. El-Nady has caused Mr. Bower and

N and R were intentional or at least foreseeable. Id. at ¶¶46-47.

In this case, where the most knowledgeable person – Ms. El-Nady – is totally unavailable, Bruce

Bower may be the most knowledgeable percipient witness to the abduction and the continued

imprisonment.

**II.     Bruce Bower Has Failed to Demonstrate "Good Cause" to Justify The Extraordinary Measure of a Protective Order Prohibiting His Deposition.**

"Prohibiting the taking of depositions is an extraordinary measure.  The moving party has

a heavy burden of showing 'extraordinary circumstances' based on 'specific facts' that would

justify such an order." Prozina Shipping Co. v. Thirty-Four Autos., 179 F.R.D. 41, 48 (D. Mass.

1998) (citing Salter v. Upjohn Co., 593 F.2d 649, 651 (5th Cir. 1979)); Invest. Prop. Int'l, Ltd. v.

IOS, Ltd., 459 F.2d 705, 708 (2d Cir. 1972); Bucher v. Richardson Hosp. Auth., 160 F.R.D. 88,

92 (N.D. Tex. 1994) (protective orders prohibiting depositions are "rarely granted," and then

only if movant shows a "particular and compelling need" for such an order); Motsinger v. Flynt,

119 F.R.D. 373, 378 (M.D.N.C. 1988) ("Absent a strong showing of good cause and

extraordinary circumstances, a court should not prohibit altogether the taking of a deposition.");

Medlin v. Andrew, 113 F.R.D. 650, 653 (M.D.N.C. 1987); Arthur Treacher's Franchisee

Litigation, 92 F.R.D. 429, 437 (E.D. Pa. 1981); Wright v. Patrolmen's Benev. Ass'n, 72 F.R.D.

161, 164 (S.D.N.Y. 1976) (protective order barring deposition will not be granted on the grounds

that information might be available from other sources).

The party seeking the protective order bears the burden of proving "good cause." Prozina

Shipping Co., Ltd., 179 F.R.D. at  48; see also Anderson v. Cryovac, Inc., 805 F.2d 1, 7 (1st Cir.

1986) (discussion of good cause standard under Rule 26(c) and burden on moving party to show

good cause).  Protective orders prohibiting depositions, however, are rarely granted.  Salter, 593

F.2d at 651.

Bruce Bower fails to meet his burden and has articulated no "extraordinary circumstances" justifying the requested relief. He argues that requesting him to attend a deposition is cumulative of information already provided to the Plaintiff by the FBI. However, this argument can be easily disposed. Bruce Bower has failed to meet his burden of establishing that the Plaintiff has obtained any information from the FBI. Further, the fact that Bruce Bower was questioned in connection with a federal investigation does not make Bruce Bower's attendance at deposition in this case more burdensome or unreasonable. See Fleet Bus. Credit, LLC v. Solarcam, LLC., No. AMD 05-901, 2005 U.S. Dist. LEXIS 7699, at *3-4 (D. Md. May 2, 2005) (holding that it was not unreasonable to subpoena a witness who already had been deposed in a bankruptcy proceeding on similar matters in a related proceeding); see also Wright, 72 F.R.D. at 164 (protective order barring deposition will not be granted on the grounds that information might be available from other sources). To the contrary, that federal agents saw fit to examine Bruce Bower only highlights the relevance of and need for this information.

Bruce Bower maintains that his motion for a protective order should be granted because he has offered to provide a sworn affidavit in lieu of his testimony. Memo. at 4. Decisional law makes clear, however, that oral depositions as a means of obtaining discoverable information are preferable to sworn written statements In Re Subpoena Issued to Dennis Friedman, Esq., 350 F.3d 65, 72 (2d. Cir. 2003) (rejecting district court's ruling requiring written answers to interrogatories in lieu of deposition testimony). In denying the defendant's motion for a protective order, which sought to limit discovery to written questions, the court in Mill-Run Tours, Inc. v. Khashoggi, 124 F.R.D. 547, 549 (S.D.N.Y. 1989) (internal citations omitted) concluded the noticed depositions were "indispensable":

> First, the interrogatory format does not permit the probing follow-up questions necessary in all but the simplest litigation. Second, without oral deposition, counsel is unable to observe the demeanor of the witness and evaluate his credibility in anticipation of trial. Finally, written questions provide an

opportunity for counsel to assist the witness in providing answers so carefully tailored that they are likely to generate additional discovery disputes.

See also Nat'l Life Ins. Co. v. Hartford Acc. and Indem. Co., 615 F.2d 595, 600 n.5 (3d Cir. 1980) ("There are strong reasons why a party will select to proceed by oral deposition rather than alternate means, most significantly the spontaneity of the responses.") (*reversing* denial of motion to compel appearance at deposition); Greenberg v. Safe Lighting Inc., Inertia Switch Division, 24 F.R.D. 410, 411 (S.D.N.Y. 1959) (*denying* motion to vacate notice of deposition and concluding, "[e]xperience has made it abundantly clear that the advantages of oral examination far outweigh the advantages of written interrogatories in carrying out the deposition procedures in aid of discovery under the rules" of civil procedure).

This rationale applies equally to a sworn affidavit as it does to sworn interrogatory answers. This case is particularly compelling. The well-being of two minor children is at stake as are the Plaintiff's parental rights. Bruce Bower's close relationship with the Defendant El-Nady made him privy to conversations with her at the time of the abduction and in the present, and he may have provided resources to facilitate the abduction. For the reasons highlighted by the above decisional law, the alternate discovery method proposed by Bruce Bower would be insufficient.

Finally, Bruce Bower has no great burden of travel to attend the deposition. He lives in Hollis, New Hampshire, a town which abuts the Massachusetts state border and Bruce Bower's residence is only forty-eight miles (an hour's drive) from the offices of Plaintiff's counsel.

## II.    Having Failed to Produce All Relevant Documents, Bruce Bower Should be Ordered to Comply with the Rule 45 Subpoena Duces Tecum to him Immediately.

Based on the frequency of the communications and contact between Bruce Bower and N and R and Ms. El-Nady, the nature of the relationship between them, and the other facts unearthed in discovery, Bruce Bower should be compelled to produce several categories of

documents that he has refused to produce.  In all but one of the requests, the Plaintiff limited his

requests to materials dated since June 1, 2009.  See Exhibit B at pp. 4-6.  Subject to this

limitation, the Plaintiff sought the following categories of documents:

1.  documents concerning El-Nady, the Children, Colin Bower, EgyptAir, or travel by anyone to Egypt;

2.  documents concerning communications with or about El-Nady the Children, Colin Bower or EgyptAir;

3.  documents concerning communications with any member of El-Nady's family, any member of the Children's family, or any friend, associate or intermediary for El-Nady (at any time);

4.  emails from the account bbower@charter.net, or any other email account used by [Bruce Bower], addressed to El-Nady, the Children or Colin Bower, or concerning any of them, EgyptAir, or travel by anyone to Egypt;

5.  documents concerning the phone number 603-465-7950, including without limitation, monthly invoices, call logs indicating numbers dialed, calls received, call time and duration;

6.  documents concerning [other] telephone numbers used by [Bruce Bower] including without limitation, monthly invoices, call logs indicating numbers dialed, calls received, call time and duration;

7.  credit card and bank statements for June, July and August 2009;

8.  documents concerning the whereabouts of the Children since the date of the abduction.

In response to these requests Bruce Bower produced only nine-single page emails and

asserted various objections, including overbreadth and privilege.  Bruce Bower's production was

woefully lacking.  None of the emails he produced date prior to the abduction.  Further, email

header information obtained from Ms. El-Nady's gmail account reveals the existence of at least

eleven email communications between Ms. El-Nady and Bruce Bower which although

responsive to Request No. 2., Bruce Bower did not produce.  Compare Exhibit E with Exhibit C

BBower00001-0009.

Equally troubling, Bruce Bower failed to produce the letter he wrote to the Egyptian Courts on August 30, 2010, in which he asked the Egyptian Courts to forbid the Plaintiff access to his children for five years.  See Exhibit A to the Declaration of Colin Bower.  This letter was clearly responsive to Request No. 1 supra.  Nonetheless, the Plaintiff only learned of this document via the Egyptian Consul General.  See the Declaration of Colin Bower at ¶2.

Further, Bruce Bower's credit card and bank statements are relevant to this lawsuit for several reasons.  Bruce Bower's phone records from the week after the abduction reveal communications with Enterprise Rent-A-Car.  Further, emails between Ms. El-Nady and Bruce and Jane Bower after the abduction evidence that Bruce and Jane Bower provided significant financial support for Ms. El-Nady, see Exhibit C at BBower00004, a significant fact in light of Ms. El-Nady's mysterious ability to pay $10,000 in cash for the airline tickets purchased during the abduction.  See Exhibit H.  The Plaintiff should be permitted to inspect these documents and to examine Bruce Bower concerning their contents.  Finally, the telephone records the Plaintiff obtained directly from Hollis Telecom contained relevant facts such as the communications with Enterprise Rent-a-Car, frequent calls to Egypt and to attorney Michael Traft, Ms. El-Nady's divorce appellate attorney, whose only known connection to Bruce Bower is Ms. El-Nady.  See Excerpt from Hollis Telecom Phone Records, Exhibit G (reflecting calls between 617-338-5566 [Mr. Traft] and Bruce Bower).  Bruce Bower should be ordered to produce his phone records and other land line telephone records in his control which will also likely contain evidence relevant to these claims.

The almost inadvertent discovery of these important facts and communications described herein reveals that Bruce Bower has intentionally withheld documents responsive to this subpoena duces tecum and suggests that there may be additional responsive material of which the Plaintiff is unaware.  The importance of this material in a case centering around the well-

being of the Plaintiffs two minor children outweighs Bruce Bower's claims of undue burden and

his request for a protective order.

Finally, the Plaintiff has served a subpoena on Google, Inc. ("Google") for Bruce

Bower's emails from the account brb964@gmail.com since June 1, 2009.[3]  However, it is

unlikely Google will produce these emails without Bruce Bower providing the necessary

consent.  Bruce Bower could be ordered either to produce all of the responsive emails, or to

provide Google with the consent necessary to produce the records.  However, due to the

possibility that Google may retain emails which Bruce Bower has deleted from his account,

Bruce Bower should be ordered to consent to the Plaintiff's Subpoena to Google as set forth in

Section (3) the Plaintiff's Proposed Order.  See Exhibit K.

## CONCLUSIONS AND REQUESTED RELIEF

For the reasons set forth above, Bruce Bower's Motion for a Protective Order should be

denied and his deposition should be ordered to proceed forthwith.  See Proposed Order Exhibit

K.  Further, the Plaintiff requests that the Court order Bruce Bower:

1.) to produce forthwith all documents responsive to the requests;

2.) to provide consent to Google, Inc. to produce all emails for the account
brb964@gmail.com since June 1, 2009, and

3.) to provide a privilege log for any documents withheld subject to a claim of
privilege in accordance with Rules 26 and 45.

---

[3]     Although Bruce Bower produced no emails from this account, it is apparent from header
information from Ms. El-Nady's email account mirvatnady@gmail.com produced to the Plaintiff by
Google, Inc. that Bruce Bower communicated with Ms. El-Nady via this email address as recently as
September 4, 2010.  See Exhibit E.

Respectfully submitted,

Colin Bower, N, and R,
By his attorneys,

November 24, 2010

/s/ Alexis D'Arcy
Lisa G. Arrowood (BBO #022330)
Alexis D'Arcy (BBO #667608)
larrowood@toddweld.com
adarcy@toddweld.com
TODD & WELD LLP
28 State Street
Boston, MA  02109
(617) 720-2626 (phone)
(617) 227-5777 (fax)

Barry S. Pollack (BBO#642064)
Joshua L. Solomon (BBO#657761)
jsolomon@sandw.com
bpollack@sandw.com
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA  02109
(617) 338-2800 (phone)
(617) 338-2880 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that this document and its attachments filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 24, 2010.

/s/ Alexis V. D'Arcy