# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| COLIN BOWER, ON HIS OWN BEHALF AND AS THE GUARDIAN AND LEGAL CUSTODIAN OF HIS MINOR CHILDREN, N AND R,<br><br>    Plaintiff,<br><br>v.<br><br>MIRVAT EL-NADY BOWER AND EGYPTAIR AIRLINES<br><br>    Defendants. | Civil Action No. 10-10405-NG |

### BRUCE BOWER'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO QUASH AND BRUCE BOWER'S OPPOSITION TO PLAINTIFF'S UNOPPOSED MOTION FOR ISSUANCE OF A SUBPEONA AS "SO ORDERED"

On November 18, 2010, Plaintiff Colin Bower ("Plaintiff") filed an Unopposed Motion for the Issuance of Subpoena "So Ordered" to non-party Charter Communications Holding Company, LLC ("Charter"). Plaintiff's motion seeks the same unduly burdensome, irrelevant and harassing production from Charter that Plaintiff sought in his October 7, 2010 Rule 45 Subpoena to non-party Bruce Bower ("Bower"). First, Plaintiff's motion seeks communications from Charter that may not be disclosed under the Stored Communications Act. Moreover, Plaintiff's motion is nothing more than an attempt to circumvent the proper avenues for obtaining discovery, especially in light of the non-party status of both Bower and

Charter. Bower opposes Plaintiff's Motion for the Issuance of a Subpoena as "So Ordered"[1] and moves to quash the subpoena.

## BACKGROUND

Plaintiff has commenced this action against Eqyptair Airlines and his ex-wife, Mirvat El-Nady Bower ("El-Nady") arising out of El-Nady's international abduction of Plaintiff's two children, N and R, to Egypt. The United States brought criminal charges against El-Nady arising out of this conduct. In connection with these charges, the FBI conducted an investigation, including contacting and conducting interviews with Plaintiff's parents, Bruce and Jane Bower. El-Nady, although residing in Egypt, remains an international fugitive-at-large from these felony charges.

On October 7, 2010, Plaintiff served a Rule 45 subpoena on Bower to produce documents, information or objects.[2] The subpoena sought, among other things, all documents concerning, referring to or relating to communications between Bower and any member of El-Nady's family, communications between Bower and any person in Egypt, communications

---

[1] On November 22, 2010, this Court allowed Plaintiff's Motion for the Issuance of Subpoena as "So Ordered." Nevertheless, Plaintiff's Motion contains a footnote stating:

> Counsel for EqyptAir has also informed [Plaintiff's] counsel that EqyptAir has no objection to the relief requested herein. Charter has informed [Plaintiff's] counsel that it intends to provide notice to the email subscriber whose records are requested that it will produce the requested materials under the Subpoena. Bruce Bower, whose email address the plaintiff believes is the subject of the subpoena to Charter, has been separately subpoenaed and is represented by counsel, but questions remain as to the completeness of his production, necessitating a production by Charter. In an abundance of caution, while not required to do so, plaintiff's counsel is also providing a copy of this motion to counsel for Bruce Bower. If Bruce Bower files any opposition to this motion or otherwise challenges the disclosure during the pendency of this motion or within five business days of the Court's "so ordering" the Subpoena, Charter has informed counsel for [Plaintiff] that it intends to withhold the subpoenaed materials until this Court considers and disposes of any such challenge.
>
> Plaintiff's Unopposed Motion for Issuance of Subpoena as "So Ordered," page 2, n. 1. On November 24, 2010, Bower informed Charter that it intended to object to the subpoena.

[2] The subpoena requested, among other things, all of Bower's emails since June 1, 2009 from the account bbower@charter.net, or any other email account used by Bower or registered to Bower, addressed to El-Nady, N and R, or Plaintiff, or addressed to any other recipient, which concern El-Nady, N and R, Plaintiff, travel by El-Nady or N and R, Egyptair, or travel by anyone to Egypt.

2

between Bower and Eqyptair, communications between Bower and Enterprise Rent-a-Car, financial documents and cell-phone records. Bower responded, producing documents responsive to the subpoena and objecting where appropriate.

On November 18, 2010, Plaintiff filed the instant "Unopposed Motion for Issuance of a Subpoena 'So Ordered.'" In it, Plaintiff seeks to obtain voluminous emails from Bower's email accounts- the same emails Plaintiff sought in his Rule 45 subpoena to Bower. Namely, the subpoena seeks:

> Emails sent to, copied to, or sent by the email account bbower@charter.net from June 1, 2009 to the present. To the extent technologically feasible and to the extent you choose to do so, rather than producing all response emails to this request, you may instead limit your production to (1) all emails sent to, copied to, or sent by the email account bbower@charter.net that were sent to, copied to, or sent by the email address mirvatsnady@yahoo.com, mirvatnady@gmail.com, maged@egybelg, or mariana@mybostoncondo.com; (2) a log showing the to, from, cc, bcc, date and subject of all emails sent to, copied to, or sent by the email account bbower@charter.net from June 1, 2009 to the present; and (3) the full content of those emails from such log identified by the plaintiff following his receipt of the log.

The Rule 45 Subpoena for documents, served upon Bower, sought, among other things, all documents concerning communications with El-Nady, her family or friends, and or the children, all of the emails from June 1, 2009 to the present from bbower@charter.net, or any other email account, addressed to El-Nady, the children or Colin Bower, or any other recipient which concern El-Nady, the children, Colin Bower and travel by the children or anyone to Egypt; all documents concerning Bower's phone number, including invoices and detailed call logs; documents which reveal the cell phone numbers used by Bower since June 1, 2009 and call logs referring to those numbers; credit card and bank statements for June through August 2009; and any other documents concerning the whereabouts of the children.

The emails sought in Plaintiff's instant Motion for Issuance of Subpoena as "So Ordered" are the same as those documents already sought from Bower in Plaintiff's Rule 45 Subpoena.  Bower has produced the responsive documents and objected where appropriate. Plaintiff's instant motion for Issuance of Subpoena as "So Ordered" to Charter is nothing more than an attempt to circumvent the proper avenues for discovery (for example, filing a motion to compel) and an attempt to obtain documents from Charter which may not be produced by Charter under the Stored Communication Act without Bower's consent.

## ARGUMENT & AUTHORITIES

**I.     The Disclosure of the Information Plaintiff Seeks from Charter in His Motion for Issuance of Subpoena as "So Ordered" Violates Federal Privacy Law**

Plaintiff's Motion seeks disclosure of information from Charter, the disclosure of which is prohibited by the Stored Communications Act (the "Act"). See 18 U.S.C. §§ 2701 et seq.  The Act provides, in pertinent part:

(1) A person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service; and
(2) A person or entity providing any remote computing service to the public shall not knowingly divulge to any person or entity the contents of any communication which is carried or maintained on that service.
    (A) On behalf of, and received by means of electronic transmission from (or created by means of processing of communications received by means of electronic transmission from), a subscriber or customer of such service;
    (B) Solely for the purpose of providing storage or computer processing services to such subscriber or customer, if the provider is not authorized to access the contents of any such communications for purposes of providing any services other than storage or computer processing . . .

The Act also provides various exceptions for disclosure of communications, including the consent of the originator, addressee or intended recipient of such communication, or to a governmental agency if the provider has a good faith belief that an emergency involving danger of death or serious physical injury requires disclosure without delay. 18 U.S.C. § 2702(b)(1)-(8). In addition, the Act provides for limited exceptions for the disclosure of customer records, allowing disclosure by a provider of "a record or other information pertaining to a subscriber to or customer of such service (*not including the contents of communications covered by subsection (a)(1) or (a)(2)* . . . to any person other than a governmental entity," among other limited exceptions.[3]

Courts have uniformly held that where a party issues a non-party subpoena to an internet service provider to obtain customer or subscriber communications, such subpoenas to non-parties must be quashed as they are not among the limited exceptions provided in 18 U.S.C. § 2702(b). See Theofel v. Farey-Jones, 359 F.3d 1066, 1071-72 (9th Cir. 2004) (holding subpoena to non-party internet service provider invalid because it invaded the specific interest the [Act] seeks to protect); In Re Subpoena Duces Tecum to AOL, LLC, 550 F. Supp. 2d. 606, 609-611 (E.D. Va. 2008); ("[a]pplying the clear and unambiguous language of § 2702 to this case, AOL, a corporation that provides electronic communication services to the public, may not divulge the contents of the [non-party witness'] electronic communications to [defendant] because the statutory language of [the Act] does not include an exception for the disclosure of electronic communications pursuant to civil discovery subpoenas"); Chasten v. Franklin, 2010 WL 4065606 at *2 (N.D. Cal. 2010) (holding Act "prohibits providers of

---

[3] The Act also distinguished between an "electronic communication service" and a remote computing service. The Act defines an electronic communication service ("ECS") as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). An email service provider, such as Charter, is an electronic communication service.

electronic communication or remote computing services to the public from knowingly divulging the contents of their customers' electronic communications or the records relating to their customers," stating "civil subpoenas to a non-party, however, are not among [the Act's] 'unambiguous exceptions.'"); Crispin v. Audigier, Inc., 717 F. Supp. 2d 965, 991 (C. D. Cal. 2010) (quashing non-party subpoenas to social networking websites seeking plaintiff's communications to the extent messages sought were private); J.T. Shannon Lumber Co. v. Gilco Lumber Inc., 2008 WL 4755370 at *1-2 (N.D. Miss. 2008) (quashing non-party subpoenas to Google, Inc. and Yahoo, holding [Act] prohibited disclosure of information sought, and refusing to "direct [defendant] to consent to the release of the information from the listed email providers"); F.T.C. v. Netscape Communications Corp., 196 F.R.D. 559, 561 (N.D. Cal. 2000) (distinguishing discovery subpoenas from trial subpoenas, refusing to allow FTC to use Rule 45 to circumvent protections built into the Act); O'Grady v. Superior Court, 44 Cal. Rptr. 3d 72, 76-77 (2006) (refusing to create exception to prohibitions in the Act for civil discovery subpoenas, reasoning language of the Act is unambiguous, disclosure of stored emails violates the Act unless such disclosure falls within enumerated exception, and such disclosure may discourage users from using new media). Indeed, as the Chasten court noted, "allowing [plaintiff] to obtain defendant's emails through a civil discovery subpoena to Yahoo! would allow parties to "make an end-run around the [Act's] protections through the use of a Rule 45 subpoena." Chasten, 2010 WL4065606 at *2 (quoting FTC, 196 F.R.D. at 561).

Moreover, the few cases in which Courts have refused to quash such Rule 45 subpoenas have been limited to those instances where the information sought at least pertains to the communications of a *party* to the litigation- not the electronic communications of a non-party to the litigation. See Thayer v. Chiczewski, 2009 WL 2957317, at * 6 (N.D. Ill. 2009)

(refusing to quash subpoena to internet service provider because subpoena "target[ed], largely, documents that [Plaintiff] would be required to produce if he had not deleted them from his email accounts"); Flagg v. City of Detroit, 252 F.R.D. 346, 349-350 (E.D. Mich. 2008) (denying defendants' motion to preclude discovery from electronic provider where defendants' communications were sought, and deeming employees of defendant city to consent to release of work text messages under Act pursuant to city policy); Romano v. Steelcase, Inc., 907 N.Y.S. 2d 650, 652 (Sup. Ct. Sept. 21, 2010) (allowing defendant's motion for access to plaintiff's social networking pages and accounts where Plaintiff put her physical condition at issue in her lawsuit for personal injuries, including loss of enjoyment of life, where public portions of plaintiff's pages indicated plaintiff has active lifestyle).  Moreover, it is clear that the limited cases in which courts have refused to quash non-party subpoenas to electronic communications services are those cases where special circumstances existed, such as the case where plaintiff puts such communications at issue, or where the plaintiff had deleted the emails himself and resort to the third party service provider was the only source from which the emails could be obtained. See Romano, 907 N.Y.S. 2d at 652; Thayer, 2009 WL 2957317 at * 6.

In contrast to the special circumstances in the aforementioned cases, no such special circumstances exist in the present case.  The disclosure of the email communications sought by Plaintiff from Charter is prohibited by the plain language of the Act.  Charter, as the provider of Bower's email services, is an electronic communications service within the meaning of the Act.  Under the unambiguous statutory language of § 2702, Charter is prohibited from disclosing the communications sought to Plaintiff. See In Re Subpoena Duces Tecum to AOL, LLC, 550 F. Supp. 2d. at 611.  Plaintiff's Motion for Issuance of Subpoena as "So Ordered" must be denied and Plaintiff's subpoena to Charter must be quashed.

## II. Plaintiff's Subpoena to Charter is Overly Broad and Not Relevant to the Claims or Defenses in the Case

Plaintiff's subpoena to Charter is far too broad in its scope and seeks information wholly irrelevant to Plaintiff's underlying action for damages against Egyptair. Namely, it is clear that the subpoena's first request is overly broad, as it requests all emails for a seventeen-month period, which includes all communications Bower had via email, including those with his attorney, those which are personal, and all of which Bower submits are irrelevant. See Theofel v. Farey-Jones, 359 F.3d 1066, 1071-72 (9th Cir. 2004) (holding subpoena to non-party internet service provider invalid "because subpoena caused disclosure of documents that otherwise would remain private," including those that were privileged, personal, and unrelated to the commercial litigation between the parties).

To the extent that Plaintiff attempts to argue that the second portion of the subpoena to Charter allows an option for Charter to produce a narrower scope of emails, this argument is without merit because all of the information sought is wholly irrelevant to Plaintiff's civil action for damages against Egyptair. More specifically, the claims against Egyptair, and the corresponding defenses, revolve around Egyptair's alleged negligent business practices. Plaintiff has not adduced any reason why email communications between Bower and any of the addresses listed could possibly be relevant to Plaintiff's action against Egyptair.

In addition, in a prior conversation with counsel for Plaintiff, counsel for Bower inquired as to the relevancy of any deposition testimony and documents sought from Bower to Plaintiff's civil action for damages against Egyptair. Perhaps recognizing that such information sought from Bower is irrelevant to Plaintiff's claims, counsel for Plaintiff stated that such information would go to Plaintiff's damages. It is difficult to conceive of how any

email communications of Bower could affect Plaintiff's damages against Egyptair for negligence. Nevertheless, even assuming that Bower's communications could somehow affect Plaintiff's damages against Eyptair, the connection between any of Bower's emails and Plaintiff's damages is far too tenuous to support a non-party deposition subpoena. See Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, LTD., 333 F.3d 38, 41 (1st Cir. 2003) (upholding district court's quashing of Rule 45 non-party subpoena, holding burden on non-party outweighed Plaintiff's need for materials where Plaintiff contended only that materials sought would "bear on the issue of causation and damages").

In addition, while the abduction of N and R occurred on August 11, 2009, Plaintiff's subpoena seeks Bower's email communications up until the present. Likewise, Plaintiff has not even alleged how any recent email communications by Bower could be relevant to his claims against Egyptair or affect his damages. Plaintiff's subpoena to Charter seeking disclosure of Bower's email communications is overly broad and seeks information wholly irrelevant to his underlying action.

### III. Plaintiff's Motion for Issuance of a Subpoena as "So Ordered" Is a Bad Faith Attempt to Circumvent the Discovery Processes and this Court Should Award Costs and Fees to Bruce Bower

As previously discussed, Plaintiff served its Rule 45 subpoena on Charter after having already served a subpoena on Bower seeking the same email communications. Bower responded to Plaintiff's subpoena, producing relevant email communications sought, among other things, and objecting where appropriate. Nevertheless, instead of proceeding appropriately under the Federal Rules of Civil Procedure and moving to compel responses to its subpoena from Bower, Plaintiff has chosen to attempt to circumvent these established procedures and obtain the information sought from Charter.

Moreover, it is evident that Plaintiff is aware of the Stored Communications Act, as it has also served subpoenas in this action on Google and Yahoo, seeking email communications from the accounts held by Mirvat El-Nady. When Google appropriately objected to the subpoena based on the Act, Plaintiff proceeded to file a Motion to Compel Yahoo and Google to disclose the email communications sought. In his Motion to Compel, Plaintiff engages in extensive discussion of the Act, citing several specific reasons why its prohibitions should not apply to the instant case. Specifically, Plaintiff points to the egregious conduct of Mirvat El-Nady in kidnapping N and R and removing them to a foreign nation, argues such conduct should be deemed implied consent to the release of the emails, and further argues that her egregious conduct "trumps" any right she has to keep the emails private. Plaintiff also points to the fact that because Mirvat El-Nady is a party to the case the requirements of Rule 34 apply to her, she would have had to produce these documents directly and she should therefore be deemed to have consented to their production from Yahoo and Google.

Notably, none of the aforementioned factors to which Plaintiff cites in support of his motion to compel subpoena responses from Yahoo and Google are applicable to the subpoena to Bower. First and foremost, Bower is a non-party to this action, who is not subject to Rule 34 and whose non-party status is entitled to special consideration with regard to the issuance of subpoenas. In re Public Offering PLE Antitrust Litigation, 427 F.3d 49, 53 (1st Cir. 2005), citing Cusumano v. Microsoft Corp., 162 F.3d 708, 717 (1st Cir. 1998) (the fact that the individual or entity served with the Rule 45 subpoena is a non-party is "entitled to special weight in evaluating the balance of competing needs" in motion for protective order). Next, there is absolutely no allegation that Bower engaged in any wrongdoing whatsoever, and as such, he cannot be deemed to have waived any privacy right in his email communications. In

sum, there are simply no special circumstances justifying Charter's disclosure of the email communications from Bower's account. Moreover, it is apparent from Plaintiff's Motion to Compel Yahoo and Google's compliance with the third-party subpoenas that Plaintiff is well-aware of the applicable law regarding the Act, and the limited instances in which Courts have found exceptions. In addition, as discussed, Plaintiff has already served a Rule 45 subpoena on Bower, to which Bower has responded. If Plaintiff is in some way unsatisfied with Bower's response, the appropriate course of action is to file a motion to compel, not to attempt to obtain the information in violation of federal privacy law from some other source. In light of these facts, as well as Plaintiff's knowledge of the applicable law and choice to blatantly ignore the law and serve the subpoena on Charter, Bower respectfully submits that Plaintiff's instant motion is frivolous and in bad faith and requests his costs and fees for responding to this motion.

## CONCLUSION

For the reasons stated herein, non-party Bruce Bower respectfully requests this Court deny Plaintiff's Motion for the Issuance of Subpoena as "So Ordered," and/or quash the subpoena served upon Charter Communications Holding Company, LLC and Charter Communications, Inc. seeking communications from Bruce Bower's email account. Non-party Bruce Bower respectfully requests a hearing on this matter and further requests that the Court order any other relief it deems just and proper, including an award of costs and fees.

[signatures next page]

                                                Respectfully submitted,

                                                Bruce Bower,
                                                By his attorney,

                                                */s/ William T. Hogan, III*
                                                William T. Hogan, III (BBO# 237710)
                                                bill.hogan@nelsonmullins.com
                                                Nelson Mullins Riley & Scarborough LLP
                                                One Post Office Square, 30th Floor
                                                Boston, MA 02109

Dated:  November 30, 2010


## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that this document has been filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Date:  November 30, 2010                                           */s/ William T. Hogan*