UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
)
COLIN BOWER, on his own behalf and as  )
the guardian and legal custodian of his   )
minor children, N and R,                 )
                                         )
     Plaintiff,                        )
                                         )
v.                                       )     CIVIL ACTION NO. 1:10-cv-10405-NG
                                         )
MIRVAT EL-NADY BOWER and                 )
EGYPTAIR AIRLINES,                       )
                                         )
     Defendants.                       )
_____)

## PLAINTIFF'S OPPOSITION TO DEFENDANT
## EGYPTAIR'S MOTION TO DISMISS OR TRANSFER

Barry S. Pollack (BBO #642064)
Joshua L. Solomon (BBO #657761)
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA 02109
(617) 338-2800 (phone)
(617) 338-2880 (fax)

Lisa G. Arrowood (BBO #022330)
Alexis D'Arcy (BBO #667608)
TODD & WELD LLP
28 State Street
Boston, MA 02109
(617) 720-2626 (phone)
(617) 227-5777 (fax)

# TABLE OF CONTENTS

Table of Contents ........................................................................................................... i

Table of Authorities ...................................................................................................... ii

Preliminary Statement ....................................................................................................1

Background .....................................................................................................................3

Argument .........................................................................................................................6

    I.   Venue is proper in this District Under 28 U.S.C. § 1441(a), Which Provides for
        Venue in the Court to which EgyptAir Removed This Action ............................................6

    II.  Venue Would be Proper Under 28 U.S.C. § 1391 If it Were Applied. .............................8

        A.   Because EgyptAir is an "alien," venue would be proper if
            28 U.S.C. § 1391(d) applied. ...................................................................................8

        B.   Because a substantial part of the events at issue occurred in Massachusetts,
            venue would be proper here if 28 U.S.C. § 1391(a) were applied. .............................9

    III.  Transfer to the Eastern District of New York Would Not be Appropriate ......................12

Conclusion ....................................................................................................................20

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Astro-Med, Inc. v. Nihon Kohden America, Inc.*, 591 F.3d 1 (1st Cir. 2009) ........11, 12, 13

*Diatronics, Inc. v. Elbit Computers, Ltd.*, 649 F. Supp. 122 (S.D.N.Y. 1986),
    *aff'd*, 812 F.2d 712 (2d Cir. 1987) ...................................................................8

*Doe v. D'Agostino*, 367 F. Supp. 2d 157 (D. Mass. 2005)...................................8

*Flowers Industries, Inc. v. F.T.C.*, 835 F.2d 775 (11th Cir. 1987) ......................7

*JMTR Enterprises, L.L.C. v. Duchin*, 42 F. Supp. 2d 87 (D. Mass. 1999) .........6

*Kleinerman v. Luxtron Corp.*, 107 F. Supp. 2d 122 (D. Mass. 2000)...................13, 16, 18

*Lambert v. Kysar*, 983 F.2d 1110 (1st Cir. 1993) .............................................6, 7

*In re Mailman Steam Carpet Cleaning Corp.*, 196 F.3d 1 (1st Cir. 1999) ..........7

*Smilde v. Snow*, 73 Fed. Appx. 24 (5th Cir. 2003) ............................................7

*Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38 (1st Cir. 2001) .......................9, 11, 12

*Velcro Group Corp. v. Billarant*, 692 F. Supp. 1443 (D.N.H. 1988) ..................8

*Williams v. Peters*, 10 F.R.D. 445 (D. Mass. 1950)............................................8

*Wolverine Proctor & Schwartz, Inc. v. Aeroglide Corp.*,
    394 F. Supp. 2d 299 (D. Mass. 2005) ..........................................................13

## STATE CASES

*Streeter v. Executive Jet Management*, No. X01020179481S,
    2005 WL 4357633 (Conn. Super. Ct. Nov. 10, 2005)..................................19

*Streeter v. Rifton Management, LLC*, No. X01 CV 02179481S,
    2004 WL 3130585 (Conn. Super. Ct. Dec. 27, 2004) .................................19

## DOCKETED CASES

*United States v. Mirvat El-Nady Bower*, Criminal Case No. 09-mj-00536-RBC-1
    (D. Mass), filed December 1, 2009.................................................................5

## STATUTES and RULES

28 U.S.C. § 1391 ............................................................................ 2, 6, 7, 8, 9, 12

28 U.S.C. § 1404 ............................................................................................... 15

28 U.S.C. § 1441 ................................................................................. 2, 6, 7, 8

Fed. R. Civ. P. 45(b)(2)(B) ............................................................................ 14

Plaintiff Colin Bower respectfully submits this opposition to the motion to dismiss or transfer filed by the defendant EgyptAir Airlines ("EgyptAir").

## PRELIMINARY STATEMENT

This action arises out of the abduction of Mr. Bower's two young children from their Massachusetts home by defendant Mirvat El-Nady, who was assisted in her criminal activity by EgyptAir's negligent and reckless conduct in facilitating the abduction.  Ms. El-Nady is a fugitive from federal criminal kidnapping charges, brought in this Court.  Mr. Bower's children remain prisoners of Ms. El-Nady in Egypt, while Mr. Bower continues in a frenetic international effort to find and recover his sons.

Prior to the abduction, Mr. Bower and Ms. El-Nady were divorced through a Massachusetts Family Court proceeding.  The Massachusetts court awarded Mr. Bower sole legal custody of his children.  Mr. Bower, Ms. El-Nady, and the children all lived in Massachusetts, from where Ms. El-Nady abducted them while they were visiting with her at her Massachusetts home.

After removing this action from Massachusetts Superior Court to this Court, and after answering the amended complaint that Mr. Bower subsequently filed in this Court, EgyptAir moved to dismiss for lack of personal jurisdiction and venue, or in the alternative to transfer venue to the Eastern District of New York.  Following months of jurisdictional discovery, during which Mr. Bower demonstrated the extensiveness of EgyptAir's contacts with Massachusetts – including the almost $20 million in revenue it derived from Massachusetts agents and passengers in just one year, including from its single largest U.S. customer, which is headquartered in the Commonwealth – *EgyptAir confirmed in writing its withdrawal of the request that the Court dismiss for lack of personal jurisdiction.*  Quixotically, it has nevertheless persisted in its request

that the Court dismiss for lack of venue or transfer this action to New York.  The venue-based dismissal request and alternative request for transfer are all that remain of EgyptAir's motion.

Venue is entirely proper in this Court.  Because EgyptAir removed this action from a state court within this District, 28 U.S.C. § 1441(a) makes this District a proper venue.  Even if the general venue statute, 28 U.S.C. § 1391, applied rather than § 1441, however, venue would still be proper here.  EgyptAir is an "alien" for purposes of § 1391(d), and thus may be sued in any District Court in the United States.  In addition, the Massachusetts-based events in furtherance of the abduction, and the abduction itself within Massachusetts, are undeniably critical events giving rise to this action, making venue proper under § 1391(a) as well. EgyptAir's contention that the Court may consider only the location of EgyptAir's conduct finds no support in the venue statute or caselaw.  In fact, EgyptAir fails to cite a single authority in support of such an argument.  Worse, EgyptAir fails to acknowledge clear First Circuit law expressly rejecting its position.

Nor has EgyptAir carried its weighty burden of showing that, notwithstanding proper venue here, convenience and justice would warrant a transfer to the Eastern District of New York.  Mr. Bower lives in Massachusetts, where he chose to bring this action, resulting in a strong presumption against transfer.  The kidnapped children's legal residence remains here. Many critical events, including the planning and initial stages of the abduction, took place here. Already identified witnesses reside here or within this Court's subpoena power.  Criminal proceedings are pending in this Court related to the events at issue.  Only by taking into account solely its own convenience, and by once again improperly considering only its own tortious conduct, does EgyptAir argue erroneously that this case more appropriately belongs in New York.  The facts of the case as alleged in Mr. Bower's complaint, information gathered during

discovery, and well-established caselaw concerning the transfer statute, dictate otherwise. EgyptAir's extensive and ongoing connection to and business dealings with Massachusetts further undermine its claim that convenience and justice demand a different forum.  There is no basis for a transfer.

## BACKGROUND

On August 11, 2009, Ms. El-Nady abducted Mr. Bower's young minor children, N and R, taking them away from their Massachusetts home to Egypt.  Amended Complaint ("Compl.") ¶ 1.  N and R were eight and six years old at the time of the abduction.  *Id.* ¶ 6.  EgyptAir facilitated Ms. El-Nady's kidnapping of the children by ignoring multiple red flags alerting it to El-Nady's wrongdoing.  *Id.* ¶¶ 2.  Apart from two brief meetings in Cairo, arranged through diplomatic efforts, and closely supervised by an entourage accompanying Ms. El-Nady, Mr. Bower has not seen N and R or spoken to them since.  *Id.* ¶ 1.

Pursuant to a Massachusetts Probate and Family Court order, Mr. Bower had sole legal custody over N and R at the time of the abduction, and possesses sole legal and physical custody over them today.  *Id.* ¶ 1.  During the children's visit with Ms. El-Nady at her Massachusetts home, she illegally fled the state and the country with the children, brought them to Egypt, and has kept them away from their Massachusetts home and their father ever since.  *Id.*

EgyptAir culpably participated in this unlawful abduction by arranging and facilitating travel out of the country for Ms. El-Nady, N, and R.  *Id.* ¶ 2.  Not only did EgyptAir fail to impose reasonable safeguards against the use of its services to assist with kidnappings to Egypt, but it egregiously ignored bright red flags particular to this case that no reasonable company in its position would have overlooked.  Ms. El-Nady purchased the three one-way tickets for herself, N, and R at the EgyptAir airport counter just prior to the flight, paying almost $10,000 in cash on the spot.  *Id.* ¶ 4; Ticketing Documents, attached as Exhibit A to the Declaration of

Joshua L. Solomon, filed herewith (the "Solomon Declaration").  Not only was no father present with the children at the time of the purchase and no evidence of parental consent given, but the surname on the children's passports did not match that of Ms. El-Nady, the only adult traveling with them.  Complaint ¶ 4.  Ms. El-Nady's ticketing records reflect a surname of "El Nady," while the children's reflect "Power."  *See* Ticketing Documents, Solomon Declaration, Exhibit A.  In addition, the children's passports were issued by a different country than that which issued the passport that Ms. El-Nady used; Ms. El-Nady presented Egyptian passports for the children, at a United States airport, without any entry visas reflecting the children's arrival in the country.  Complaint ¶ 4.

These flags should have been particularly acute given the destination of the flight.  Egypt is not a signatory to the Hague Convention on the International Aspects of Child Abductions, enhancing the risk of child abductions to Egypt due to the difficulty in apprehending abductors in and recovering children kidnapped to Egypt.  *Id.* ¶ 19.  On its website regarding travel matters, the Department of State has published and reported information for air carriers and others regarding, among other things, international parental child abduction and how the ease of international travel has contributed substantially to the growing problem of such abductions.  The Department of State has issued and posted a special flyer dated August 2000 regarding the problems of international child abductions to Egypt, which identified the lack of any treaties with Egypt that would facilitate the return of abducted children.  *Id.*  Furthermore, a high-profile international child abduction to Egypt out of Connecticut, resulting in a $27 million jury verdict and $38.3 million judgment in 2005 against the air carrier, highlighted the risk of child abductions to Egypt and underscored the seriousness of such matters for international air carriers. *Id.* at ¶ 20.  Notwithstanding the well-known risk of kidnappings to Egypt generally, and the

particularly suspicious circumstances in this case, EgyptAir accepted from the children's abductor the $10,000 in cash for one-way tickets.

Making matters worse, after the abduction, both directly and through counsel, Mr. Bower sought EgyptAir's assistance in obtaining information that might help him find and recover his children. EgyptAir ignored him, never so much as responding to his pleas. For example, attached to the Solomon Declaration as Exhibit B are a letter to EgyptAir and two emails to its counsel, none of which received any response from EgyptAir.

The United States has charged El-Nady with child kidnapping in this Court. *See United States v. Mirvat El-Nady Bower*, Criminal Case No. 09-mj-00536-RBC-1 (D. Mass), filed December 1, 2009. She remains a fugitive from those charges. Complaint ¶ 7. The Massachusetts Family Court that issued the order granting Mr. Bower sole legal custody has held Ms. El-Nady in contempt. *Id.* ¶ 7.

Mr. Bower originally brought this action in Massachusetts Superior Court. EgyptAir removed to this Court. Rather than promptly filing a motion to dismiss on personal jurisdiction, venue, or other grounds, or seeking a transfer, EgyptAir served an answer. Subsequently, EgyptAir informed Mr. Bower and the Court that it intended to move to dismiss for lack of personal jurisdiction and/or to have the case transferred to a different forum. By the time of an initial scheduling conference, three months after the filing of the original complaint, EgyptAir still had not filed any motion to dismiss or transfer. When EgyptAir eventually filed its motion, more than a month later, the Court granted Mr. Bower leave to take jurisdictional discovery. That discovery has led to disclosure of a variety of Massachusetts contacts by EgyptAir, including tens of millions of dollars in revenue derived from Massachusetts travel agents and tour operators, which include some of EgyptAir's largest customers in the U.S. In fact, *the*

largest customer, Grand Circle Travel, which alone has produced as much as $14 million in revenue for EgyptAir in a single year, is headquartered here. *See generally infra* at 17-18.

Following this discovery, and recognizing the extensive contacts with Massachusetts, EgyptAir abandoned the portion of its motion to dismiss that claimed a lack of personal jurisdiction, expressly waiving any defense of personal jurisdiction for purposes of this action. *See* Email from EgyptAir's counsel, Solomon Decl., Exhibit C.  EgyptAir continues, nevertheless, to assert that venue is improper here.  It also argues that even if venue is proper, convenience and justice warrant a transfer.  It cannot support either argument.

## ARGUMENT

**I.    VENUE IS PROPER IN THIS DISTRICT UNDER 28 U.S.C. § 1441(A), WHICH PROVIDES FOR VENUE IN THE COURT TO WHICH EGYPTAIR REMOVED THIS ACTION.**

The venue provision of the removal statute establishes venue in this Court.  While EgyptAir focuses its argument on the general venue statute, 28 U.S.C. § 1391, venue of a removed action is governed instead by 28 U.S.C. §1441(a).  As the First Circuit has made clear, "the venue of a removed action is not governed by § 1391, but by 28 U.S.C. § 1441(a)." *Lambert v. Kysar*, 983 F.2d 1110, 1122 n.2 (1st Cir. 1993); *see also JMTR Enterprises, L.L.C. v. Duchin*, 42 F. Supp. 2d 87, 99 (D. Mass. 1999).  Under § 1441(a), "the proper venue of a removed action is 'the district court of the United States for the district and division embracing the place where such action is pending.'" *Id.* (quoting 28 U.S.C. § 1441(a)).  EgyptAir removed this action from Massachusetts Superior Court, thus placing venue properly in this Court under § 1441(a).

EgyptAir does not contend that venue of a removed action properly lies in the court to which the action is removed.  Instead, it contends incorrectly that Mr. Bower's recitation of the general venue statute in his amended complaint somehow makes § 1441(a) inapplicable.  The

amended complaint was filed in this Court, *following* removal.  At the moment of removal, venue became proper in this Court under § 1441(a).  Subsequent events, including the filing of the amended complaint, do nothing to strip this Court of venue.  *See Smilde v. Snow*, 73 Fed. Appx. 24, 26 (5th Cir. 2003) ("Smilde voluntarily submitted himself to the jurisdiction of that court and consented to that venue.  Personal jurisdiction and venue are determined at the outset of litigation and are not affected by subsequent events.") (internal citations omitted); *Flowers Industries, Inc. v. F.T.C.*, 835 F.2d 775, 776 n.1 (11th Cir. 1987) ("Although Flowers began the process of changing its incorporation to Georgia while this case was pending, we give no weight to this change because venue must be determined based on the facts at the time of filing.").  When venue is vested by § 1441, the filing establishing venue is necessarily the notice of removal, which effects the removal and thus triggers § 1441(a)'s venue provision.  Mr. Bower's later amended complaint did not affect the venue determination.

Furthermore, even if the venue determination were made as of the filing of the amended complaint, post-removal, the mere recitation of § 1391 could not render § 1441(a) inapplicable.  Even where the defendant, which has the ability to waive venue challenges, asserts in removal papers that venue is proper under a particular statute, the defendant is not bound by its own recitation when later challenging venue.  *See Lambert*, 983 F.2d at 1122 n.2.  *A fortiori*, a plaintiff who has no ability to vest or divest a court of venue under § 1441(a) cannot be held to have altered the applicability of that statute by pleading a different statute as the basis for venue.  This is consistent with long-standing pleading rules that focus on *factual* allegations and do not bind parties to invocations of particular statutory provisions.  *See, e.g.*, *In re Mailman Steam Carpet Cleaning Corp.*, 196 F.3d 1, 5 (1st Cir. 1999) (holding that "[a]ffirmative pleading of the precise statutory basis for federal subject matter jurisdiction is not required as long as a

complaint alleges sufficient facts to establish jurisdiction," (internal citations omitted) and dismissing the defendant's argument otherwise as "pettifoggery" over which the court "need not linger"); *Doe v. D'Agostino*, 367 F. Supp. 2d 157, 178 (D. Mass. 2005) (determining that plaintiffs brought suit under the wrong statute and applying the correct statute to the allegations pled); *Williams v. Peters*, 10 F.R.D. 445, 446 (D. Mass. 1950) ("As long as facts justifying removal are alleged, it [is] a matter of little moment whether technically it should have been petitioned under [a different statute]."). The amended complaint's recitation of § 1391 has no effect on the venue analysis. Furthermore, even if it did, and even if a dismissal on venue grounds somehow resulted (notwithstanding the fact that § 1391 is also satisfied here (*see* Part II *infra*)), Mr. Bower should be granted leave to amend simply to recite § 1441(a) as an additional basis for venue.

## II.  VENUE WOULD BE PROPER UNDER 28 U.S.C. § 1391 IF IT WERE APPLIED.

EgyptAir's effort to shift focus from § 1441 to § 1391, even if accepted, would gain it nothing. Under both § 1391(d) and § 1391(a), venue would be proper in this Court.

### A.  Because EgyptAir is an "alien," venue would be proper if 28 U.S.C. § 1391(d) applied.

Section 1391(d) is succinct and unambiguous: "An alien may be sued in any district." Corporations formed under the laws of foreign countries are "aliens" for purposes of § 1391(d). *Velcro Group Corp. v. Billarant*, 692 F. Supp. 1443, 1449 (D.N.H. 1988) ("The rule that an alien can be sued in any district applies to a corporation incorporated in a foreign country just as it does to alien individuals.") (internal citations omitted); *Diatronics, Inc. v. Elbit Computers, Ltd.*, 649 F. Supp. 122, 124, 125 (S.D.N.Y. 1986), *aff'd*, 812 F.2d 712 (2d Cir. 1987) ("Since the defendant [an Israeli corporation] is an alien, however, the defendant may be sued in any district. *See* 28 U.S.C. § 1391(d). Thus, venue is proper."). As the Complaint alleges (¶ 8) and EgyptAir

concedes (*see* Declaration of Sameh A. Aziz Helmi ¶ 3[1]), EgyptAir is a corporation formed under the laws of Egypt.  Consequently, EgyptAir is subject to venue in this Court pursuant to 28 U.S.C. § 1391(d).

**B.      Because a substantial part of the events at issue occurred in Massachusetts, venue would be proper here if 28 U.S.C. § 1391(a) were applied.**

If the Court were to apply 28 U.S.C. § 1391, venue would also be proper in this District under § 1391(a)(2).  That provision places venue in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."[2]  The law is clear that there can be multiple proper venues under § 1391(a)(2), so long as there are multiple places in which a substantial part of the events at issue occurred.  *See Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42 (1st Cir. 2001) (contrasting the pre-1990 version of the venue statute, which allowed for only one proper venue, and the current version, under which "venue may be proper in any number of districts").

Try as it might, EgyptAir cannot divorce Massachusetts from "a substantial part of the events or omissions giving rise" to Mr. Bower's claims.  The abduction at the core of this case began in Massachusetts.  As alleged in the complaint, Mr. Bower, his children, and Ms. El-Nady all lived in Massachusetts at the time of the abduction.  Mr. Bower had sole legal custody over his children pursuant to an order issued by a Massachusetts Probate and Family Court, which made Ms. El-Nady's conduct unlawful.  Complaint ¶ 1.  Ms. El-Nady abducted the children from her Massachusetts home, where they were staying with her during a scheduled visit.  *Id.*  She

---

[1]  EgyptAir filed the Helmi Declaration as Exhibit A to its memorandum in support of its motion to dismiss or transfer.

[2]  Section 1391(a) applies where subject matter jurisdiction rests solely on diversity grounds, as is the case here.  In its removal notice, EgyptAir invoked both diversity and federal question jurisdiction, claiming for the latter that this action arises under a treaty of the United States.  That treaty has no application here.  That issue, however, is immaterial to the venue question, as 28 U.S.C. § 1391(b)(2), which applies in federal question cases, is identical to § 1391(a)(2).

planned this abduction from her home in Massachusetts for at least a week prior to carrying it out. *Id.* ¶ 11.

Furthermore, Ms. El-Nady's unlawful retention of the children outside of the state, away from their father, is directly aimed at Massachusetts, where Mr. Bower resides and where the children's lawful residence remains. *Id.* ¶¶ 6-7, 25. Recognizing the Massachusetts focus of Ms. El-Nady's action, the United States Attorneys' Office for this District has filed criminal kidnapping charges against Ms. El-Nady in this Court, not in the Eastern District of New York where EgyptAir would have this case transferred. *Id.* ¶ 7. The criminal complaint against Ms. El-Nady expressly recites that she committed the offense in this District. *See* Criminal Complaint, Solomon Declaration, Exhibit D. The Massachusetts Family Court whose order Ms. El-Nady violated in abducting the children and thus depriving Mr. Bower of his parental rights has held her in contempt. *Id.* ¶¶ 7, 24. The Massachusetts Court order that Ms. El-Nady violated prohibited her from removing the children from Massachusetts. *See* State Court Judgment ¶ 8, Solomon Declaration, Exhibit E.

EgyptAir has not disputed the Massachusetts focus of these events. In fact, it has implicitly conceded them by arguing that the Court should ignore all events other than EgyptAir's specific conduct in facilitating Ms. El-Nady's flight. According to EgyptAir, while Ms. El-Nady is a defendant in this action, because she remains a fugitive for now and has not yet appeared in this action, her actions in Massachusetts cannot be considered when assessing venue. Yet EgyptAir cites not a single authority for its position that only its conduct, and not its fugitive co-defendant's, is relevant to the venue determination. In fact, the law in this Circuit is squarely to the contrary. Even if Ms. El-Nady were not a defendant, more than just EgyptAir's conduct would be relevant to venue. The venue statute contains no language limiting the definition of "a

substantial part of the events or omissions giving rise to the claim" to conduct that the defendant engaged in within the forum.  Accordingly, the First Circuit has already expressly rejected the very argument that EgyptAir makes:

> In considering 'events or omissions' for purposes of venue, we decline to adopt the Eighth Circuit's approach, which looks only at the acts of the defendant. Instead, we join those courts that have chosen a more holistic view of the acts underlying a claim.

*Uffner*, 244 F.3d at 42 n.6 (internal citations omitted).  Following this "holistic view," the First Circuit has also expressly held that "we do not focus on the actions of one party."  *Astro-Med, Inc. v. Nihon Kohden America, Inc.*, 591 F.3d 1, 12 (1st Cir. 2009).  EgyptAir fails to cite to this controlling First Circuit authority.  Furthermore, because multiple venues may be proper, the Court is "not required to determine the best venue, merely a proper venue."  *Id.*  Nor is it necessary for the facts occurring in the forum to be among those in dispute.  Rather, under the First Circuit's approach, "an event need not be a point of dispute between the parties in order to constitute a substantial event giving rise to the claim."  *Uffner*, 244 F.3ds. at 43.

The facts of the First Circuit's *Uffner* case illustrate this point well.  That action involved a dispute between the owner of the ship *La Mer* and the ship's insurers.  The ship sank within Puerto Rican territorial waters.  The insurers denied coverage, and the plaintiff brought suit against them in the District of Puerto Rico.  *Id.* at 39-40.  Just as EgyptAir argues that all relevant action that *it* took was at JFK Airport in New York, the insurers in *Uffner* took no action toward denial of coverage within Puerto Rico.  Nor was the insurance contract negotiated or put into effect within Puerto Rico  *Id.* at 41.  Rather, the ship's sinking, in which the insurers were not involved, was the only event that occurred in the forum.  *Id.* at 42.  It was even the case that resolution of the coverage dispute did "not require an investigation into how, when, or why the

accident occurred," as the coverage dispute involved simply whether a missing out-of-water survey of the ship was required for coverage to be effective. *Id.* at 43.

The First Circuit rejected the insurers' argument that venue was improper.  It held that "although the sinking of *La Mer* is itself not in dispute, the event is connected to the claim inasmuch as Uffner's requested damages include recovery for the loss," and "the jurisdiction where that loss occurred is 'substantial' for venue purposes."  *Id.*  Here, one cannot deny, and EgyptAir does not attempt to deny, that Ms. El-Nady's planning of the abduction from her Massachusetts home, her actual abduction of the children while they were staying with her in Massachusetts, her illegal removal of the children from Massachusetts, and the children's forced retention away from their home and their father in Massachusetts are substantial events connected to Mr. Bower's and the children's losses.  The fact that EgyptAir's conduct might have all taken place elsewhere is irrelevant to whether venue is proper here, regardless of whether it would also be proper in New York.  *See id.* ("Appellees have suggested that venue is proper in the Virgin Islands or in Georgia.  We do not address these possibilities since, as we have already noted, § 1391 contemplates that venue may be proper in several districts.  In this case, Puerto Rico is at least one of them.").  Because substantial events giving rise to Mr. Bower's claims indisputably occurred in Massachusetts, venue would be proper under § 1391(a).

## III.   TRANSFER TO THE EASTERN DISTRICT OF NEW YORK WOULD NOT BE APPROPRIATE.

EgyptAir has requested that even if the Court concludes that venue in this Court is proper, that it nonetheless transfer the matter to the Eastern District of New York.  EgyptAir bears the burden of showing that transfer is warranted.  *See Astro-Med, Inc. v. Nihon Kohden America, Inc.*, 591 F.3d 1, 13 (1st Cir. 2009).  It has not satisfied that burden.  EgyptAir tells the Court that convenience and justice demand such a transfer.  What EgyptAir actually means is

that it would be more convenient for it to litigate in New York, without any regard for Mr.

Bower's or others' convenience.  Once again, as in mounting its venue challenge, EgyptAir

inappropriately focuses solely on its own conduct in helping to bring about the abduction of Mr.

Bower's children.

Mr. Bower chose Massachusetts, where he and his abducted children reside, as the forum

for this action.  As the First Circuit has made clear, "there is a strong presumption in favor of the

plaintiff's choice of forum."  *Id.* (internal quotation marks and citation omitted).  This

presumption "is particularly strong here because the jurisdiction he chose is his home forum."

*Kleinerman v. Luxtron Corp.*, 107 F. Supp. 2d 122, 125 (D. Mass. 2000) (internal citation

omitted).  Furthermore, it is not enough for EgyptAir to demonstrate that it would be more

convenient for it to litigate in another forum, as the Court must consider the convenience of both

parties.  *See Wolverine Proctor & Schwartz, Inc. v. Aeroglide Corp.*, 394 F. Supp. 2d 299, 312

(D. Mass. 2005) ("[T]his court must consider the convenience of both parties, and [defendant]

has not shown that transfer to North Carolina would be more convenient for the plaintiffs.").

With this backdrop, EgyptAir cannot demonstrate that convenience and justice require a transfer.

EgyptAir's transfer request is based primarily on the false premise that the only operative

events took place at JFK Airport, and thus that all witnesses are in New York.  As discussed

above, *see supra* at 9-10, critical events, including the actual abduction at the center of this case,

occurred in Massachusetts.  Mr. Bower, who was of course a party to the divorce action that led

to the Massachusetts custody order that Ms. El-Nady violated, and who will be a critical witness

concerning events leading up to the abduction, damages suffered as a result of the abduction, and

his intensive efforts since to recover his children and bring an end to at least one form of

suffering that EgyptAir's conduct caused, lives here in Massachusetts.  If Mr. Bower succeeds in

recovering his children prior to trial, they too will be here in Massachusetts.  Similarly, the police officers who responded to the crime and conducted an investigation, as well as the federal agents who investigated the crime that led to federal criminal charges against Ms. El-Nady, are in Massachusetts, and likely beyond any ability of Mr. Bower to secure their testimony at a trial in New York.

Other witnesses who have already emerged through discovery are in Massachusetts as well (or close enough to the Massachusetts border to be subject to a subpoena from this Court). For example, through discovery, Mr. Bower has learned that Michael Traft, a Boston-based lawyer, was in frequent contact with Ms. El-Nady in the weeks surrounding the abduction. Phone records reflect that Mr. Traft spoke to Ms. El-Nady for 16 minutes on the day of the abduction, August 11, 2009, and spoke to or exchanged voicemails with Ms. El-Nady on August 10, July 27, July 14, July 9, July 8 (twice, for a total of one hour and 17 minutes), July 7, July 6, and July 2.  *See* Excerpts from Verizon Phone Records, Solomon Declaration, Exhibit F (reflecting calls between 617-959-1666 [Ms. El-Nady] and 617-338-5566 [Mr. Traft]).  Mr. Traft also exchanged at least 26 emails with Ms. El-Nady in July and August 2009, including three exchanges the day before the abduction and four the day of the abduction.  *See* Summary of Email Headers, Solomon Declaration, Exhibit G.

Two other witnesses, Bruce and Jane Bower, live in Hollis, New Hampshire, within this Court's subpoena power under Fed. R. Civ. P. 45(b)(2)(B).  As with Mr. Traft, Bruce Bower was also in contact with Ms. El-Nady leading up to the abduction.  *See* Verizon Records, Solomon Declaration, Exhibit H (reflecting calls between 617-959-1666 [Ms. El-Nady] and 603-465-7950 [Bruce Bower]).  Bruce and Jane Bower also provided financial support to Ms. El-Nady and, since the abduction and while she remains a fugitive, Bruce Bower has offered his continued

support from afar.  *See* Bruce Bower Emails, Solomon Declaration, Exhibit I.  In fact, Bruce

Bower has gone so far as to give advice to Ms. El-Nady on how to avoid detection and capture,

thus assisting her in her ongoing crime.  *See* Bruce Bower Email, Solomon Declaration,

Exhibit J.  Plaintiff Colin Bower has also learned through government officials with whom he is

working to recover his children that Bruce Bower has been in regular contact with Ms. El-Nady

since the abduction.  *See* Colin Bower Declaration ¶ 2.  Bruce Bower and Mr. Traft, whose only

known connection is Ms. El-Nady, have also communicated with each other.  *See* Excerpt from

Hollis Telecom Phone Records, Solomon Declaration, Exhibit K (reflecting calls between 617-

338-5566 [Mr. Traft] and 603-465-7950 [Bruce Bower]).

Another witness, Mariana Galstian, was in frequent contact with Ms. El-Nady leading up

to the abduction.  This contact included more than a dozen phone calls in the week before the

abduction, including seven on the actual day of the abduction.  *See* Verizon Records, Solomon

Declaration, Exhibit L (reflecting calls between 617-959-1666 [Ms. El-Nady] and 617-548-6461

[Ms. Galstian]).  Ms. Galstian lives in Massachusetts.  *See* Galstian Tr. at 8, Solomon

Declaration, Exhibit M.  All of these witnesses are subject to this Court's subpoena power.

There is no reason to believe any of them would be subject to a New York court's jurisdiction.

That so many witnesses are local to this forum, but not a New York forum, is no surprise.

This is where Mr. Bower, his children, and Ms. El-Nady all lived leading up to and at the time of

the abduction.  It was from here that the children were abducted.  It is here where the harm that

Ms. El-Nady's and EgyptAir's conduct caused is being suffered daily.  Unlike any EgyptAir

witnesses, many of these local witnesses are beyond Mr. Bower's ability to produce for trial

without a subpoena from a court with jurisdiction over them.  When assessing the availability of

witnesses, § 1404(a) "requires the court to consider the convenience of witnesses, with a

preference of live testimony over testimony by deposition." *Kleinerman*, 107 F. Supp. 2d at 125 (internal citation omitted). This concern is far more salient with regard to non-party witnesses here in Massachusetts than for EgyptAir employees who, in EgyptAir's words, "may" be witnesses. As this Court has recognized, "[a]s the employer of several key witnesses in this case, [defendant] can assuredly secure the appearance in Massachusetts of those witnesses required to testify." *Id.* at 126.

Against these local witnesses, EgyptAir offers the vague assertion that any witnesses to the activities at JFK Airport would likely be in New York. It includes in its motion a speculative list of categories of persons who "may" have seen or heard something at JFK Airport or who are "potential witnesses," such as "passenger services employees, cabin crew personnel and corporate management employees." Motion to Dismiss at 19. Yet in discovery, EgyptAir has identified only one specific person with direct personal knowledge of events at JFK Airport: the ticket agent (Satyawattie Singh) who sold Ms. El-Nady almost $10,000 in one-way tickets to Egypt, for cash, the day of the flight, and without apparently making any effort to check on Ms. El-Nady's authority to leave the country with the two children. *See* Excerpt from EgyptAir's Answers to Interrogatories, Solomon Declaration, Exhibit N. In fact, Mr. Bower expressly requested in an interrogatory that EgyptAir identify all persons with knowledge or information related to this matter. In addition to Ms. Singh, EgyptAir stated only that an employee of Swissport (EgyptAir's contracted service provider at JFK Airport) with initials "RAL" "may possess information concerning the check-in procedures utilized for El-Nady and the Children," and that EgyptAir's U.S. Manager, Sameh Helmi, possesses information about procedures that EgyptAir uses at JFK generally. *See id.*

Mr. Helmi, whose information apparently includes knowledge of EgyptAir's general practices, not the events of this case, testified regarding jurisdictional and venue issues, and has already made clear that traveling is not a problem for him and his staff.  To the contrary, he travels "frequently" on behalf of EgyptAir throughout the United States and regularly to Egypt. *See* Helmi Tr. at 162-63, Solomon Declaration, Exhibit O.  Both he and other members of EgyptAir's staff, including airport-based staff, travel for such business matters as trade shows, Star Alliance meetings, meetings with travel agent clients of EgyptAir, and assisting with presidential flights.  *Id.* at 163-66.

In addition, EgyptAir's 30(b)(6) deposition designee for jurisdictional and venue issues, Jessica O'Keefe, likewise testified regarding the need to travel for business.  In fact, notwithstanding EgyptAir's current claim that Boston makes for an inconvenient forum for it, Ms. O'Keefe has directly contradicted that position, writing in an email that "traveling to Boston is not a problem."  *See* Email chain, Solomon Declaration, Exhibit P.  Ms. O'Keefe herself travels to Boston once or twice per year, usually accompanied by Mr. Helmi (or his predecessor). *See* O'Keefe Tr. at 74-76, Solomon Declaration, Exhibit Q.  Elaborating on her email statement that "traveling to Boston is not a problem," Ms. O'Keefe conceded that if an important client of EgyptAir wants to see her, she is willing to travel to that client.  *Id.* at 84.  EgyptAir does not truly consider travel to be a hardship, including travel between New York and Boston, at least when its profitable business relationships are at issue, as opposed to Mr. Bower's children.

EgyptAir is no stranger to Massachusetts.  Its single largest U.S. customer, Grand Circle Travel, is based in Boston.  *See* O'Keefe Tr. at 61, Solomon Declaration, Exhibit Q.  Grand Circle alone has been responsible for approximately $14 million in revenue to EgyptAir in a single year.  *See id.* at 45-47, Solomon Declaration, Exhibit Q; Excerpt from EgyptAir Sales

Report, Solomon Declaration, Exhibit R.  In fact, three of EgyptAir's top ten U.S.-based customers, and five of its top 15, are headquartered in Massachusetts, with Massachusetts travel agents and tour operators responsible for approximately $20 million in annual revenue.  *See* O'Keefe Tr. at 60-63, Solomon Declaration, Exhibit Q; Excerpt from EgyptAir Sales Report, Solomon Declaration, Exhibit R.  EgyptAir officials based in New York travel here to meet with some of these key customers.  *See* O'Keefe Tr. at 75, Solomon Declaration, Exhibit Q.

 While travel between Boston and New York may not be terribly difficult, and is routine for EgyptAir, the additional cost to Mr. Bower of mounting this litigation in another forum is significant.  He is currently facing serious depletion of his limited resources from his ongoing efforts to find and recover his kidnapped children.  These efforts include intensive legal efforts in Egypt and frequent travel between Boston and Cairo at great expense.  Frequent additional travel to New York would risk his losing income from missed work, which in turn could further impact his ability to see and recover his children.  For Mr. Bower, the difference between New York and Boston is not merely one of convenience, but of economic hardship.  *See Kleinerman*, 107 F. Supp. 2d at 125 ("There is a qualitative component to the balance of convenience which must focus on the comparative financial abilities of the parties. . . .") (internal citation omitted).

 Finally, EgyptAir's additional effort to suggest that New York law controls, thus making a New York forum better suited for this action, likewise fails.  Many of the events, and all of the harm, are focused on Massachusetts, giving it the greatest interest in this dispute.  While it is likely premature for the Court to reach a definitive choice-of-law determination – and it need not do so for purposes of this motion, given the overwhelming considerations pointing to this forum as the most convenient and just – it is worthy of note that in another case with remarkable similarities to this one, the court ruled that the law of the children's and the victim-parent's

residence, not the law of the state from which the flight departed, provided the controlling law. Specifically, in *Streeter v. Rifton Management, LLC*, No. X01 CV 02179481S, 2004 WL 3130585 (Conn. Super. Ct. Dec. 27, 2004), a Connecticut court addressed a Massachusetts mother's claim against the abductor of her children and the air carrier that transported them from Connecticut to Egypt. The defendants sought to preclude a claim for loss of consortium, recognized by Massachusetts but not by Connecticut. *See id.* at *2. The court rejected this challenge, finding that Massachusetts law applied:

> Only [the place where the conduct causing the injury occurred] inclines in favor of Connecticut since it is here that the flight resulting in the abduction occurred. The "injury" . . . is necessarily with reference to the plaintiff; she learned of the kidnapping in Massachusetts and it is in that state where she remained and thus endured the deprivation of her children and experienced emotional and financial sequelae. The domicile of all of the actors, with the exception of the Ohio-based [air carrier], is in Massachusetts. Most significant in this court's view is [the place where the relationship between the parties is centered] since this case centers on the disruption of the parent-child relationship. That relationship was clearly in Massachusetts. Connecticut's relationship is fortuitous; in point of fact, documentation suggests first consideration was given to a Massachusetts airport as the point of origin for the flight. Given the timetable imposed by the father, Connecticut (specifically, Bradley) was chosen-not only for convenience to the father but for the airport's size and physical layout. There was but a small window of activity – albeit instrumental – in Connecticut. All of the arrangements for the abduction were initiated from the father's location in Massachusetts. For all of these reasons and for the additional reasons that to apply Connecticut law would deprive the plaintiff of any tort remedy for the twenty-two month loss of filial consortium and that Massachusetts law embodies a public policy traditionally embraced by our courts, justice and reason point to Massachusetts as the jurisdiction whose law bears the most significant relationship to the parties and this controversy. The plaintiff may assert a claim for loss of filial consortium.

*Id.* at *4. The court subsequently reaffirmed its application of Massachusetts law in rejecting the air carrier's effort to vacate a $27 million jury verdict against it. *Streeter v. Executive Jet Management*, No. X01020179481S, 2005 WL 4357633, at *4 (Conn. Super. Ct. Nov. 10, 2005). As the *Streeter* case demonstrates, the choice-of-law question is not as favorable to EgyptAir's

facile assertion that New York law must apply because that is where it sold the tickets to

Ms. El-Nady.

Weighed against the witnesses available locally, and the strong presumption in favor of a

plaintiff's choice of forum, especially where that forum is the plaintiff's home, EgyptAir has not

come close to satisfying its burden to show that transfer is proper.

## CONCLUSION

For the reasons provided herein Mr. Bower respectfully requests that the Court deny

EgyptAir's motion in its entirety.

January 21, 2011                                   Respectfully submitted,

                                                   Colin Bower,
                                                   By his attorneys,

                                                   /s/ Joshua L. Solomon
                                                   Barry S. Pollack (BBO #642064)
                                                   Joshua L. Solomon (BBO #657761)
                                                   SULLIVAN & WORCESTER LLP
                                                   One Post Office Square
                                                   Boston, MA 02109
                                                   (617) 338-2800 (phone)
                                                   (617) 338-2880 (fax)

                                                   Lisa G. Arrowood (BBO #022330)
                                                   Alexis D'Arcy (BBO #667608)
                                                   TODD & WELD LLP
                                                   28 State Street
                                                   Boston, MA 02109
                                                   (617) 720-2626 (phone)
                                                   (617) 227-5777 (fax)

<u>Certificate of Service</u>

I hereby certify that this document(s) filed through the ECF system
will be sent electronically to the registered participants as
identified on the Notice of Electronic Filing (NEF) on
January 21, 2011.

/s/ Joshua L. Solomon