# EXHIBIT A

ANN MARIE MORTIMER (SBN 169077)
amortimer@hunton.com
DIANA BIASON (SBN 247274)
dbiason@hunton.com
HUNTON & WILLIAMS LLP
550 South Hope Street, Suite 2000
Los Angeles, California  90071-2627
Telephone: (213) 532-2000
Facsimile: (213) 532-2020

JOHN WOODS (Admitted *Pro Hac Vice*)
jwoods@hunton.com
HUNTON & WILLIAMS LLP
1900 K Street, NW
Washington, DC  20006
Phone (202) 955-1500
Fax (202) 778-2201

Attorneys for Defendant
YAHOO! INC.

*Hunton & Williams LLP*
*550 South Hope Street, Suite 2000*
*Los Angeles, California 90071-2627*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HOLOMAXX TECHNOLOGIES CORPORATION, a Pennsylvania Corporation<br><br>Plaintiff,<br><br>v.<br><br>YAHOO!, INC., a Delaware corporation, and CISCO IRONPORT SYSTEMS, LLC, a Delaware limited liability company,<br><br>Defendant. | CASE NO.:  CV10-04926 JF(PG)<br><br>**DEFENDANT YAHOO! INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. RULE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>DATE:           February 25, 2011<br>TIME:           9:00 A.M.<br>JUDGE:         Honorable Jeremy Fogel<br>COURTROOM: Courtroom 3, 5th Floor |

1

## **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................. 1

II.  ARGUMENT ....................................................................................................... 1

    A.   Dismissal Under The CDA Is Warranted Based On The Facts Alleged....................... 2

        1.   Plaintiff's Objectionable, Harassing Emails Are Within the Scope Of The CDA. ...................................................................................... 3

        2.   Yahoo's Conduct Is Immune Under The CDA Section (c)(2)(B). ................... 4

    B.   Plaintiff Fails To State A Wiretap Claim. ............................................................... 6

    C.   Plaintiff Fails To State A Stored Communications Act Claim. ..................................... 8

    D.   Plaintiff Fails To State A Computer Fraud And Abuse Act Claim............................... 9

    E.   Plaintiff's State Law Claims Should Be Dismissed. ................................................. 10

        1.   Yahoo! Has No Duty To Send Plaintiff's Emails. ..................................... 10

        2.   Justification Is An Appropriate Defense In This Matter. ............................. 11

        3.   Plaintiff Fails to Identify Any Relationships Interfered With........................ 12

        4.   Plaintiff Has Failed To Show Interference Was Substantially Certain........... 12

        5.   Plaintiff Has Failed To Demonstrate Independently Wrongful Conduct........ 13

        6.   Plaintiff's Wiretapping And Eavesdropping Claims Fail. ............................ 14

    F.   Plaintiff Does Not State A Claim Under The UCL.................................................. 15

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Google v. Google, Inc.*,
    640 F. Supp. 2d 1193 (N.D. Cal. 2009) ............................................................ 2

*9201 San Leandro LLC v. Precision Castparts Corp.*,
    548 F. Supp. 2d 732 (N.D. Cal. 2008) ............................................................ 10

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) ............................................................ 5, 8, 12

*Bank of New York v. Fremont General Corporation*,
    523 F.3d 902 (9th Cir. 2008)............................................................ 13

*Barnes v. Yahoo!, Inc.*,
    570 F.3d 1096 (9th Cir. 2009)............................................................ 2

*Bohach v. City of Reno*,
    932 F. Supp. 1232 (D. Nev. 1996) ............................................................ 8

*Bradley v. Google*,
    2006 U.S. Dist. LEXIS 94455 (N.D. Cal. Dec. 22, 2006) ............................................................ 7

*Bunnell v. Motion Picture Association of America*,
    567 F. Supp. 2d 1148 (C.D. Cal. 2007) ............................................................ 14

*Cedars-Sinai Medical Ctr. v. Shalala*,
    177 F.3d 1126 (9th Cir. 1999)............................................................ 2

*Crowley v. CyberSource Corp.*,
    166 F. Supp. 2d 1263 (N.D. Cal. 2001) ............................................................ 7, 8

*Cvent, Inc. v. Eventbrite, Inc.*,
    2010 U.S. Dist. LEXIS 96354 (E.D. Va. Sept. 14, 2010)............................................................ 9

*DocMagic, Inc. v. Ellie Mae, Inc.*,
    __ F. Supp. 2d__, 2010 WL 3987495 (N.D. Cal. Oct. 12, 2010) ............................................................ 12

*Doe v. GTE Corp.*,
    347 F.3d 655 (7th Cir. 2003)............................................................ 2

*In re Facebook PPC Advertising Litigation*,
    2010 U.S. Dist. LEXIS 39776 (N.D. Cal. Apr. 22, 2010) ............................................................ 7

*In re Pharmatrak*,
    329 F.3d 9 (1st Cir. 2003)............................................................

*Fraser v. Nationwide Mutual Insurance Co.*,
    352 F.3d 107 (3d Cir. 2003)............................................................ 8

*Giordano v. Wachovia Mortg., FSB*,
    2010 U.S. Dist. LEXIS 136284 (N.D. Cal. Dec. 14, 2010) ............................................................ 7

YAHOO! INC.'S REPLY - CASE NO. CV 10-04926 JF (PG)

*Goddard v. Google, Inc.*,
    2008 U.S. Dist. LEXIS 101890 (N.D. Cal. Dec. 17, 2008) ............................................ 3, 4

*Green v. America Online*,
    318 F.3d 465 (3d Cir. 2003) ...................................................................................... 4

*Ideal Aerosmith, Inc. v. Acutronic United States, Inc.*,
    2007 U.S. Dist. LEXIS 91644 (W.D. Pa. Dec. 13, 2007) ........................................ 7

*Jewel Companies, Inc. v. Pay Less Drug Stores Northwest, Inc.*,
    510 F. Supp. 1006 (N.D. Cal. 1981) ...................................................................... 12

*Jones v. Bock*,
    549 U.S. 199 (2007) ................................................................................................ 2

*Konop v. Hawaiian Airlines, Inc.*,
    302 F.3d 868 (9th Cir. 2002) .................................................................................. 6

*e360Insight, LLC v. Comcast Corp.*,
    546 F. Supp. 2d 605 (N.D. Ill. 2008) ........................................................ 3, 4, 5, 12

*LVRC Holdings LLC v. Brekka*,
    581 F.3d 1127 (9th Cir. 2009) .............................................................................. 10

*Langdon v. Google, Inc. et al.*,
    474 F. Supp. 2d 622 (D. Del. 2007) ................................................................. 2, 3, 4

*National Numismatic Certification, LLC v. eBay, Inc.*,
    2008 U.S. Dist. LEXIS 109793 (M.D. Fla. July 8, 2008) ..................................... 3

*Perfect 10, Inc. v. Google, Inc.*,
    2008 U.S. Dist. LEXIS 79200 (C.D. Cal. Jul. 16, 2008) ...................................... 2

*eBay, Inc., v. Bidder's Edge, Inc.*,
    100 F. Supp. 2d 1058 (N.D. Cal. 2000) ................................................................ 9

*Silicon Image, Inc. v. Analogix Semiconductor, Inc.*,
    2007 U.S. Dist. LEXIS 39599 (N.D. Cal. May 16, 2007) .................................... 12

*Smith-Haynie v. District of Columbia*,
    155 F.3d 575 (D.C. Cir. 1998) ............................................................................... 2

*Theofel v. Farey-Jones*,
    359 F.3d 1066 (9th Cir. 2004) ............................................................................... 9

*Tietsworth v. Sears*,
    720 F. Supp. 2d 1123 (N.D. Cal. 2010) ................................................................ 7

*Toys R Us, Inc., Privacy Litigation*,
    2001 U.S. Dist. LEXIS 16947 (N.D. Cal. Oct. 9, 2001) ....................................... 9

*Tuck Beckstoffer Wines LLC v. Ultimate Distributors, Inc.*,
    682 F. Supp. 2d 1003 (N.D. Cal. 2010) ................................................... 12, 15, 16

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

iii

*United States v. Clegg,*
    509 F.2d 605, 612-13 (5th Cir. 1975) ................................................................ 2

*United States v. Goldstein,*
    532 F.2d 1305 (9th Cir. 1976) ......................................................................... 7

*United States v. Ritchie,*
    342 F.3d 903 (9th Cir. 2003) ........................................................................... 7

*United States v. Szymuszkiewicz,*
    622 F.3d 701 (7th Cir. 2010) ........................................................................... 7

*Zango, Inc. v. Kaspersky Laboratory, Inc.,*
    2007 U.S. Dist. LEXIS 97332 (W.D. Wash. August 28, 2007) ...................... 4

*Zango, Inc. v. Kaspersky Laboratory, Inc.,*
    568 F.3d 1169 (9th Cir. 2009) ..................................................................... 4, 5

**STATE CASES**

*1-800 Contacts, Inc. v. Steinberg,*
    107 Cal. App. 4th 568 (2003) ......................................................................... 13

*A. F. Arnold & Co., Ltd. v. Pacific Professional Insurance, Inc.,*
    27 Cal. App. 3d 710 (1972) ............................................................................ 11

*Bailey v. Household Finance Corp. of California,*
    2010 WL 4569950 (S.D. Cal. Nov. 4, 2010) ................................................. 14

*Bradley v. Google, Inc.,*
    2006 WL 3798134 (N.D. Cal. Dec. 22, 2006) ............................................... 14

*Garcia v. Haskett,*
    2006 WL 1821232 (N.D. Cal. June 30, 2006) ............................................... 14

*Kasparian v. County of Los Angeles,*
    38 Cal. App. 4th 242 (1995) ........................................................................... 13

*Korea Supply Co. v. Lockheed Martin Corp.,*
    29 Cal. 4th 1134 (2003) ........................................................................... 13, 14

*Membrila v. Receivables Performance Management, LLC,*
    2010 WL 1407274 (S.D. Cal. Apr. 6, 2010) .................................................. 14

*Moallem v. Coldwell Banker Commercial Group, Inc.,*
    25 Cal. App. 4th 1827 (1994) ......................................................................... 14

*People v. Nakai,*
    183 Cal. App. 4th 499 (2010) ......................................................................... 15

*Quelimane Co. v. Stewart Tite Guaranty Co.,*
    19 Cal. 4th 26 (1998) ...................................................................................... 11

*Schindler v. Marshfield Clinic,*
    2006 WL 1589647 (W.D. Wis. June 2, 2006) ............................................... 11

iv

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

*U.S. v. Warshak,*
    2010 WL 5071766 (6th Cir. Dec. 14, 2010) ........................................................... 14

*White Buffalo Ventures, LLC v. The University of Texas,*
    2004 WL 1854168 (W.D. Tex. Mar. 22, 2004) ...................................................... 12

**FEDERAL STATUTES**

47 U.S.C. § 230(c)(2)(A) ........................................................................................... 4

18 U.S.C. § 2510(15) ................................................................................................. 7

18 U.S.C. § 2511 (2)(a)(i) ...................................................................................... 6, 7

18 U.S.C. § 2701(c)(1) ............................................................................................... 8

Federal Rules of Civil Procedure, Rule 9(b) ........................................................... 10

Federal Rules of Civil Procedure, Rule 12(b)(6) ............................................. 1, 2, 11

**STATE STATUTES**

California Penal Code § 632 ..................................................................................... 14

**MISCELLANEOUS**

2 *Moore's Federal Practice* § 12,34[4][b], at 12-99 (3d ed. 2003) .............................. 2

Wright & Miller, *Federal Practice & Procedure* § 1277, at 634 (3d ed. 2004)............................. 2

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

I.   **INTRODUCTION**

1

2          In its Opposition, Plaintiff advances the novel legal argument that Yahoo! must allow Plaintiff

3   unfettered access to Yahoo! servers and that Yahoo! must disengage its standard spam filtering

4   technologies and deliver to its users anything Plaintiff characterizes as "commercial" email, despite

5   the fact that Yahoo! has no obligation to deliver Plaintiff's emails whatsoever, and, in any event, the

6   statutory safe harbor provisions of the Communications Decency Act (the "CDA"), the Wiretap Act

7   and the Stored Communications Act (the "SCA"), all specifically authorize Yahoo! to protect the

8   integrity of its operating systems and guard its users from a barrage of bulk email -- by Plaintiff's

9   own admission *six million emails daily*.  In so arguing, Plaintiff advocates a system that wrests away

10   from Yahoo! any control over its own systems, and forces Yahoo! to open the floodgates to all of

11   Plaintiff's bulk "commercial" email, no matter how harassing in frequency, thereby imposing on

12   Yahoo! an affirmative obligation to deliver Plaintiff's messages, at Yahoo!'s expense, that simply

13   does not exist as a matter of law.  Plaintiff's attempts to characterize its bulk email as solicited or

14   commercial in nature does nothing to either impose additional duties on Yahoo! to deliver these

15   messages or to strip Yahoo! of its statutorily protected rights to filter.  Instead, as is evident from the

16   face of the Complaint, and as confirmed by relevant caselaw, Yahoo! is well within its statutory

17   rights to impose spam filtering technologies like those Plaintiff complains of to block bulk email.  As

18   discussed below, Plaintiff's efforts to graft onto the statutory safe harbor provisions of the CDA,

19   Wiretap Act and SCA overly restrictive qualifiers exempting commercial or solicited email from

20   filtering, and limiting immunity to filtering of pornography or lewd materials only, essentially gut

21   these statutory provisions and must fail as unsupported by law.  Moreover, each of Plaintiff's causes

22   of action fails on independent grounds, including by failing to meet the pleading requirements of

23   *Iqbal/Twombly*  to demonstrate the existence of a plausible claim, failing to plead essential elements

24   to the claim, and by admitting facts in its complaint that dispose of its legal arguments.

25   II.   **ARGUMENT**

26          In an effort to circumvent the CDA, Plaintiff advances three arguments.  First, Plaintiff claims

27   that the Court cannot even consider the CDA on a motion to dismiss.  Second, Plaintiff claims that

28   the CDA does not apply to "routine business emails."  Third, Plaintiff asserts that Yahoo! acted in

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1    bad faith.  As discussed below, these arguments fail.

2        **A.    Dismissal Under The CDA Is Warranted Based On The Facts Alleged.**

3        Plaintiff asserts in a single sentence that the CDA is an affirmative defense that can never be

4    considered on a Rule 12(b)(6) motion.  However, Plaintiff ignores this Court's decision expressly

5    rejecting this very argument.  In *Goodard v. Google, Inc.*, this Court addressed a plaintiff's argument

6    that a motion to dismiss should be denied because "CDA immunity is an affirmative defense that

7    must be raised by the defendant in a responsive pleading." 640 F. Supp.2d 1193, 1200 n.5 (N.D. Cal.

8    2009) (Fogel, J.).  The Court dismissed the complaint without leave to amend, noting that

9    "affirmative defenses routinely serve as a basis for granting Rule 12(b)(6) motions where the defense

10   is apparent from the face of the complaint." *Id.* (citations and quotations omitted).  This holding is in

11   accord with the holdings of the Supreme Court, the law of this Circuit, and other federal courts.

12   *Jones v. Bock*, 549 U.S. 199, 215 (2007), *citing with approval, Leveto v. Lapina*, 258 F.3d 156, 161

13   (3d Cir. 2001) ("[A] complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative

14   defense ... appears on its face."); *See also Cedars-Sinai Med. Ctr. v. Shalala*, 177 F.3d 1126, 1128-29

15   (9th Cir. 1999) ("[A]ffirmative defenses like the statute of limitation may also be raised in motions to

16   dismiss."); *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998) ("[A]n

17   affirmative defense may be raised by pre-answer motion under Rule 12(b) when the facts that give

18   rise to the defense are clear from the face of the complaint.)[1]

19       Not surprisingly, many courts -- including this Court -- have applied CDA immunity to

20   dismiss complaints pursuant to Fed. R. Civ. P. 12(b)(6). *See Barnes v. Yahoo!, Inc.*, 570 F.3d 1096

21   (9th Cir. 2009); *Langdon v. Google, Inc. et al.*, 474 F. Supp. 2d 622 (D. Del. 2007) (dismissal under

22

23   _____

    [1] The leading treatises agree that affirmative defenses can be considered on a motion to dismiss where the
    defense is apparent from the face of the complaint.  *See* Wright & Miller, *Federal Practice & Procedure*
24   § 1277, at 634 (3d ed. 2004); 2 *Moore's Federal Practice* § 12,34[4][b], at 12-99 (3d ed. 2003).  Plaintiff
    offers no reason to depart from this well settled rule, and the case cited by Plaintiff, *Perfect 10, Inc. v. Google,*
25   *Inc.*, 2008 U.S. Dist. LEXIS 79200, at *22 (C.D. Cal. Jul. 16, 2008), does not support such a departure.
    Instead, in *Perfect 10* the Court ultimately rejected 12(b)(6) dismissal based on factual disputes that precluded
26   the issue from being decided: "[t]he question whether any of Google's conduct disqualifies it for immunity
    under the CDA will undoubtedly be fact-intensive.  Neither party has proffered evidence sufficient for the
27   Court to determine at this stage whether Google is entitled to CDA immunity." *Id.* at 24.  Indeed, the Seventh
    Circuit case cited by the *Perfect 10* court, and referenced in Plaintiff's brief here, noted the irrelevance of this
28   argument and analyzed whether the 12(b)(6) dismissal was proper on the merits:  "Plaintiffs do not protest the
    district court's use of Rule 12(b)(6), however, perhaps because the decision could have been recast as a
    judgment on the pleadings under Rule 12(c)." *Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003).

2

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1    CDA Section 230(c)(2)); *see also e360Insight, LLC v. Comcast Corp.*, 546 F. Supp. 2d 605 (N.D. Ill.

2    2008) (same).  Where as here Yahoo!'s CDA immunity is apparent from the face of the complaint,

3    Yahoo!'s motion to dismiss is both procedurally and substantively appropriate.

4       **1.    Plaintiff's Objectionable, Harassing Emails Are Within the Scope Of The CDA.**

5           Plaintiff baldly asserts that the CDA does not apply to "routine business communications."

6    No such carve out for commercial email exists under the CDA.  Instead, courts have held that

7    filtering of email, advertisements, and similar electronic content are within the CDA safe harbors.

8    *See Langdon v. Google, Inc.* et al., 474 F. Supp. 2d 622, 630-31 (D. Del. 2007) (defendant immune

9    under the CDA where it restricted defendant subjectively deemed plaintiff's advertisements

10   "objectionable").  The cases Plaintiff relies upon in its Opposition stand only for the proposition that

11   to qualify as "objectionable" the content in question must be similar to the statutorily prohibited

12   conduct involving "pornography, graphic violence, obscenity *and harassment*."  *Goddard v. Google,*

13   *Inc.,* 2008 U.S. Dist. LEXIS 101890, at *23 (N.D. Cal. Dec. 17, 2008); *Nat'l Numismatic*

14   *Certification, LLC v. eBay, Inc.,* 2008 U.S. Dist. LEXIS 109793, at *81 (M.D. Fla. July 8, 2008)

15   (emphasis added).  Neither of these cases exempt commercial email from CDA immunity or apply

16   the narrow straightjacket to CDA immunity that Plaintiff urges here.

17          Glossing over the harassment prong contained in the CDA, Plaintiff makes no effort to

18   distinguish *e360* or seriously argue why a virtual avalanche of millions of emails daily would not

19   qualify as "harassing" or "objectionable" for CDA purposes.  *See e360Insight,* 546 F. Supp. 2d at

20   606, 610 (applying CDA immunity to commercial bulk emails and advertisements).  Indeed,

21   Plaintiff's Complaint establishes on its face that its emails easily satisfy this test.  Plaintiff admits that

22   it sends more than 6 million emails per day to Yahoo! users (Compl. ¶ 16), and that 3 of every 1,000

23   emails, or 18,000 per day, are sent to invalid accounts or result in users affirmatively opting out from

24   receiving them.  (Compl. ¶ 18.)  Thus, the emails in question are clearly the type of content that

25   Yahoo! could subjectively determine to be either "harassing" or "similar to … harassment," and by

26   opting out a substantial number of Yahoo! users agreed.[2]

27   _____

     [2] Plaintiff's Opposition concedes the point, admitting that had Yahoo!'s spam filters not intercepted Plaintiff's
     email, the expected number of opt outs and complaints would be far higher than estimated by Plaintiff, since,
28   as Plaintiff itself admits, Yahoo! filtered Plaintiff's email "before any users had a *chance* to complain about
     them." *See* Opposition, n.1; Compl. ¶ 31.

                                        3

1    Plaintiff's brief makes clear that its real purpose is to undermine the immunity provisions of

2    the CDA by seeking to litigate the standards and spam filtration methodology applied by Yahoo!

3    which Plaintiff complains is "cheap" and "overzealous" (Opp. at 7).  But CDA immunity was created

4    to avoid precisely this type of second-guessing.  Indeed, this is why Congress empowered service

5    providers like Yahoo! to make subjective determinations and define their own standards for filtering

6    such content.  In *Goddard*, this Court explicitly recognized that CDA Section 230(c)(2) "allows [an

7    interactive service provider] to establish standards of decency without risking liability for doing so."

8    *Goddard*, 2008 U.S. Dist. LEXIS 101890 at *22 (internal citation omitted; emphasis in original); *see*

9    *also Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1172-1173 (9th Cir. 2009) (finding CDA

10   immunity despite the fact that "[t]he degree of threat posed to users by Zango's software is in

11   dispute"); *Green v. America Online*, 318 F.3d 465, 472 (3d Cir. 2003) (noting Section 230 allows

12   providers to establish standards without risking liability); *Langdon*, 474 F. Supp. 2d at 630 (holding

13   CDA Section 230(c)(2) safe harbor permitted defendants to exercise "editorial discretion over

14   internet content and editorial decisions regarding screening and deletion of content from their

15   services").[3]  These cases consistently recognize that 20/20 hindsight is not the appropriate litmus test

16   for filtering, and CDA immunity cannot turn on whether a particular filtering methodology was either

17   over or under-inclusive.  This "results oriented" approach would defeat the very purpose of the

18   statutory framework by subjecting every filtering decision to litigation, when Congress specifically

19   intended CDA immunity to be broadly applied, and provider's filtration decisions appropriately

20   immunized.  *e360Insight*, 546 F. Supp. 2d at 607 (the purpose of the CDA Good Samaritan provision

21   is to protect providers for claims that they were blocking "too much"); *Zango*, 2007 U.S. Dist. LEXIS

22   97332 at *11 (W.D. Wash. August 28, 2007) (no requirement that the blocked material be actually

23   objectionable to qualify for CDA immunity).

24       **2.    Yahoo's Conduct Is Immune Under The CDA Section (c)(2)(B).**

25       Although Plaintiff accuses Yahoo! with sharp rhetoric and little else of bad faith, Plaintiff's

---

[3] Plaintiff seems to claim that the CDA only permits "users to screen out truly objectionable material." (Pl. Br. at 7.)  But the plain language of the statute, which states that immunity applies to "material that the ***provider*** or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable," 47 U.S.C. § 230(c)(2)(A), as well as the case law cited above, demonstrates the flaws in this argument.  Nothing in Judge Fisher's concurrence in *Zango* (*see* Pl. Br. at 6-7), casts doubt on the application of CDA immunity to providers.

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

4

1   accusations are both unfounded and irrelevant as Section (c)(2)(B) of the CDA has no requirement of

2   good faith -- a fact conceded by Plaintiff.  (Opp. at 5).  Nor can there be any real dispute as to

3   whether (c)(2)(B) applies in this case.  CDA Section (c)(2)(B) applies to service providers like

4   Yahoo! that "enable" or "make available" the technical means to restrict access to objectionable or

5   harassing content like Plaintiff's bulk email.  As in *Zango,* 568 F.3d 1169, the allegations in the

6   Complaint that Yahoo! defined Plaintiff's email as harassing and objectionable and enabled tools for

7   its users to block that email requires a finding that Section (c)(2)(B) applies here, rendering the issue

8   of good or bad faith irrelevant.  *See* Compl., ¶¶ 19-20 (admitting, among other things, that

9   SpamGuard "has been programmed to identify spam based on certain mailing characteristics").

10       Even if the good faith requirement applies, however, it is apparent from the face of the

11   Complaint that Yahoo! acted in good faith.  First, of course, the Court must ignore the Complaint's

12   conclusory and threadbare allegations of bad faith.  *See Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1950

13   (2009).  Once that is done, it becomes clear that, yet again, Plaintiff's complaint is that it does not

14   like the filtering standards utilized by Yahoo!.  (*See* Compl. ¶ 40.)  But complaints that Yahoo! is

15   applying too restrictive a standard or a "bad" filtering methodology cannot support a claim of "bad

16   faith" because the CDA was designed to allow service providers like Yahoo! to define and apply their

17   own subjective "standards" for filtering content without fear of liability, even in those cases where

18   defendant is alleged to have engaged in indiscriminate blocking of emails.  *e360Insight, LLC,* 546 F.

19   Supp. 2d at 608.  Despite Plaintiff's claim that its emails were blocked from delivery by Yahoo's

20   spam filters almost immediately, Plaintiff still concedes a high rate of opt outs and bounce backs,

21   notwithstanding a claimed low rate of delivery.  (Compl ¶ 19; Opp. at n.1).[4]  This itself is powerful

22   evidence of Yahoo's good faith.  In short, Plaintiff does not allege that Yahoo! did anything but

23   enforce the standards Yahoo! has developed.  Nor can it.  The fact that Plaintiff wants Yahoo! to

24   adopt different standards that would result in Plaintiff's emails not being filtered is of no

25   consequence, and cannot support a claim of bad faith without destroying the purpose of the CDA.

26   *See e360Insight,* 546 F. Supp. 2d at 606 (acknowledging the balance struck by Congress in the CDA

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

---

27   [4] Further demonstrating that Yahoo!'s conduct involves subjective, good faith filtering is the fact that Plaintiff
28   makes virtually identical, and equally unsupported, allegations against Microsoft.  That two entities whose
     users receive 9 million of the 10 million daily emails sent by Plaintiff independently reached the same
     determination with regard to Plaintiff's emails negates any inference of bad faith.

5

1   is to apply immunity broadly even to over-inclusive filtration and blocking).

2   **B.   Plaintiff Fails To State A Wiretap Claim.**

3   Plaintiff's wiretapping claim is also fatally flawed.  Yahoo!'s passive receipt of emails on its

4   own servers does not qualify as an interception under the Act.  Further, Yahoo! qualifies as an

5   "operator" under the Act, such that it cannot be liable for the interception, disclosure or use of a

6   communication while rendering services to its users.  Further still, the consent of Yahoo!'s users to

7   the screening and filtration of content transmitted over its servers nullifies any potential wiretap

8   claim.  Semantic games about the meaning of the term aside, Plaintiff fails to allege an interception

9   within the meaning of the Act.  Instead, Plaintiff's own Complaint clearly states that Yahoo!

10   "accessed computers on which Holomaxx's confidential email communications were stored."

11   (Compl. ¶ 37; *see also id.* ¶ 56.)  And although Plaintiff disagrees with the controlling rule in the

12   Ninth Circuit that to violate the Wiretap Act an electronic transmission "must be acquired during

13   transmission, *not while it is in electronic storage*," the law of the Ninth Circuit is not in doubt.  *See*

14   *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (emphasis added).[5]  Plaintiff

15   may not agree with this result, but it is bound by it.

16   Second, Plaintiff is misguided in arguing the inapplicability of the "operator" exception of

17   Section 2511(2)(a)(i).  The statute makes clear that immunity is given to "a provider of wire or

18   electronic communication service" which intercepts, discloses, or uses communications in the

19   rendition of service or protection of the provider's rights or property.  18 U.S.C. § 2511 (2)(a)(i).

20   Plaintiff's own allegations demonstrate that Yahoo! both provides email services and uses spam

21   filters as a means of providing service and/or protecting its rights and property as a provider.

22   Plaintiff alleges both that "Yahoo! 'hosts email accounts" and "offers email services" and that

23   Yahoo! uses spam filters technology that "has been programmed to identify spam based on certain

24   mailing characteristics." (*See* Compl. ¶19.)  Accordingly, based on Plaintiff's own allegations,

25   Yahoo! meets the qualifying definition of a service provider and is therefore eligible for statutory

26

27   [5] The failure to state a claim for interception is demonstrated in footnote 19 of Plaintiff's brief (at page 16).
There, Plaintiff argues that, "*Konop* relies on an incorrect definition of 'intercept.'"  However, *Konop* is
binding Ninth Circuit precedent, and its holding cannot be ignored based on Plaintiff's assertion that the Ninth

28   Circuit was wrong.  Yahoo! also objects to Plaintiff's submission of a purported dictionary printout, which was
not even the same year as the version relied upon by *Konop*.

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1  immunity under 18 U.S.C. § 2510(15) ("'electronic communication service' means any service which

2  provides to users thereof the ability to send or receive wire or electronic communications").[6]

3      Third, Plaintiff wrongly argues it has properly alleged a "device." (Opp. at 19.)  However,

4  "[t]he drive or server on which an e-mail is received does not constitute a device for purposes of the

5  Wiretap Act." *Ideal Aerosmith, Inc. v. Acutronic United States, Inc.*, 2007 U.S. Dist. LEXIS 91644,

6  at *12 (W.D. Pa. Dec. 13, 2007); *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1269 (N.D.

7  Cal. 2001) (same).  Thus, there can be no interception as a matter of law.  *See also Bradley v. Google*,

8  2006 U.S. Dist. LEXIS 94455, at *14 (N.D. Cal. Dec. 22, 2006).  Plaintiff offers no reason to depart

9  from the holding of these cases or to abandon this clear-cut rule for a holding that Yahoo!'s servers

10  alone qualify as a device for purposes of the Act.[7]

11      Finally, there is no Wiretap claim because Yahoo!'s users have consented to Yahoo!'s access

12  of e-mail communications such as those sent by Plaintiff.  See 18 U.S.C. § 2511(2)(d) (no liability for

13  "interception" where one party to the communication has given consent).  (*See* Yahoo! Br. at 11-12.)

14  Plaintiff purports to challenge the validity of Yahoo!'s terms of service, suggesting that it intends to

15  engage in a collateral challenge to contracts to which it is not even a party.  (Opp. at 17-18.)

16  Although Plaintiff does not want this Court to consider Yahoo!'s terms of service or the issue of

17  consent (arguing that it is not required to "negative" consent) it is Plaintiff that placed consent

18  squarely at issue in this case by claiming that Yahoo! accessed emails "without the consent of either

19  HOLOMAXX or the intended recipients." (Compl. ¶ 37.)  Plaintiff cannot now attempt to sideline

20  the issue of content or plausibly deny Yahoo!'s undisputed terms of service, which are properly

21  subject to judicial notice.[8]  Because Yahoo's terms of use are appropriate for judicial notice, and fully

[6] Plaintiff claims that Section 2511(2)(a)(i) only exempts "employers" exercising control over their own computers, but not "ISPs." This is wrong, as the case law clearly demonstrates. *See e.g., United States v. Goldstein*, 532 F.2d 1305, 1310 (9th Cir. 1976), *citing United States v. Clegg*, 509 F.2d 605, 612-13 (5th Cir. 1975) ("telephone company" immunized under § 2511(2)(a) where it monitored suspected calls believed to be bypassing the company's billing procedures). These cases also demonstrate that Section 2511(2)(a)(i) immunity extends to the communications provider itself, and not just employees or agents of the provider.

[7] *United States v. Szymuszkiewicz*, 622 F.3d 701 (7th Cir. 2010) and *In re Pharmatrak*, 329 F.3d 9 (1st Cir. 2003), both cited by Plaintiff, involved "interception" of e-mails by the defendant through automatic routing software that duplicated the communication at the time of transmission. That is not Plaintiff's theory here.

[8] The "intended recipients" are Yahoo! users who agreed to be bound by Yahoo!'s terms, which are publicly available. Thus, the Court may consider these terms, which are a matter of public record. *See U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if . . . the document forms the basis of the plaintiff's claim."); *Giordano v.*

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1   demonstrate consent, dismissal is required.[9]

2   **C.   Plaintiff Fails To State A Stored Communications Act Claim.**

3   As with other claims, Plaintiff fails to plead the essential elements of a SCA claim, including

4   the unauthorized access of any facility or stored communications where Yahoo! did nothing more

5   than access its own computers, and where Yahoo! users specifically consented to Yahoo!'s access of

6   communications intended for its users.  Both of these facts are unrebutted by the Plaintiff, fatal to

7   Plaintiff's theory of liability, and compel dismissal of Plaintiff's SCA claim.

8   Plaintiff fails to respond to Yahoo!'s argument that the Complaint fails to specify what

9   "facility" Yahoo! accessed, other than its own servers.  (Opp. at 19.)  Rather than explaining how

10   Yahoo! could exceed its access to it own servers or what other "facility" was accessed, Plaintiff

11   merely says that "[Yahoo!'s] authorities do not support its position."  (Opp. at 19.)  But Plaintiff

12   misconstrues the purposes of those citations, which stand for the straightforward proposition that the

13   failure to plead all elements of a claim require dismissal.  (Yahoo! Br. at 12.)  Because accessing a

14   facility without authorization must be pleaded to state a claim under the SCA, Plaintiff's failure to do

15   so requires dismissal.  Moreover, 18 U.S.C. § 2701(c)(1) precludes a finding that Yahoo! violated the

16   SCA.  As the provider of an electronic service, Yahoo! is permitted to "do as [it] wish[es] when it

17   comes to accessing communications in electronic storage." *See Bohach v. City of Reno*, 932 F. Supp.

18   1232, 1236 (D. Nev. 1996); *see also Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107 (3d Cir.

19   2003); *Crowley*, 166 F. Supp. 2d 1263.  Plaintiff cites no cases in support of its argument, and its

20   attempt to distinguish Yahoo!'s cases is unpersuasive.[10]

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

21   *Wachovia Mortg., FSB*, 2010 U.S. Dist. LEXIS 136284, at *3 n.2 (N.D. Cal. Dec. 14, 2010) (Fogel, J.) (on
22   motion to dismiss, Court may take notice of "matters in the public record"); *In re Facebook PPC Adver. Litig.*,
     2010 U.S. Dist. LEXIS 39776, at *3 (N.D. Cal. Apr. 22, 2010) (Fogel, J.) (enforcing website's terms of service
23   to block plaintiff's claims); *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1131 (N.D. Cal. 2010) (Fogel, J.)
     (defendant's one-year warranty terms considered on motion to dismiss, even where they were not included in
24   or attached to complaint).

     [9] Plaintiff claims that the consent exception is inapplicable because it has alleged that Yahoo! intended to
25   engage in criminal or tortious conduct by injuring its business.  Under *Twombly* and *Iqbal*, the Court need not
     accept Plaintiff's wholly conclusory allegations, especially where Plaintiff itself, in the Complaint,
26   acknowledges that these allegations are pure speculation.  (*See, e.g.*, Compl. ¶ 19 (*Possibly* seeking to cut costs
     in its service to its free email users, Yahoo! improperly relies on a faulty automated spam filter.").)

27   [10] For example, contrary to Plaintiff's statement, in *Crowley*, the plaintiff directed electronic communications
     to the defendant's computer systems and servers, to which defendant had authorized access.  166 F. Supp. 2d
28   at 1271-72.  Thus, it is exactly like this case, where Plaintiff directed its electronic communications to
     Yahoo!'s systems and servers, to which Yahoo! had authorized access.  Plaintiff attempts to distinguish Fraser

8

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1    Equally fatal to Plaintiff's claim is the consent of Yahoo!'s users allowing Yahoo! to access

2    communications directed to its users, and to engage in spam filtering. *See* Section 2701(c)(2)

3    (consent to access nullifies claim). Similar to the Wiretap Act, the SCA does not apply "as long as

4    one party to a communication provides consent." *Toys R Us, Inc., Privacy Litig.*, 2001 U.S. Dist.

5    LEXIS 16947, at *18 (N.D. Cal. Oct. 9, 2001). Since Yahoo!'s email users agree to Yahoo!'s terms

6    of use, which specifically authorize Yahoo! to pre-screen email, there can be no claim for

7    unauthorized access regardless of the device alleged.

8    **D.    Plaintiff Fails To State A Computer Fraud And Abuse Act Claim.**

9    Plaintiff claims that Yahoo! is liable for accessing its own computers, and yet fails to allege

10   any unauthorized access by Yahoo! to Plaintiff's computers as part of Yahoo!'s spam filtering. (Opp.

11   at 21). Tellingly, Plaintiff cites no authority for the untenable proposition that the very act of

12   deciding whether to filter emails that were deliberately sent through Yahoo!'s servers violates the

13   CFAA.[11] Indeed, because the decision to filter the emails is irrelevant to Plaintiff's CFAA claim, to

14   uphold Plaintiff's claim the Court would have to conclude that Yahoo! is not permitted to engage in

15   the conduct Congress encouraged in the CDA. It cannot be that a violation of the CFAA occurs when

16   Yahoo! accesses emails on its own servers that are not within the scope of the CDA (assuming

17   *arguendo* that Plaintiff's limited view of the CDA is correct), but that no violation occurs when

18   Yahoo! accesses emails on its own servers that, under Plaintiff's view, it can permissibly filter.

19   The law does not compel such a result. The fact that a third party sends e-mail to a service

20   provider's servers does not convert those servers into the third party's property. *See eBay, Inc., v.*

21   *Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1070 (N.D. Cal. 2000) (an internet company's servers are

22   its own "private property.") Moreover, the fact that Plaintiff intentionally directed its emails to

23   Yahoo! mutes Plaintiff's claims that Yahoo! impermissibly "used" Plaintiff's information. *See*

24   *Cvent, Inc. v. Eventbrite, Inc.*, 2010 U.S. Dist. LEXIS 96354 at *11 (E.D. Va. Sept. 14, 2010)

25   (rejecting theory similar to Plaintiff's theory here where the information on the Internet was "not

26   on the ground that it involved an "employer," but Plaintiff does not provide an explanation or citation as to
     the relevance of that fact under the statute. Plaintiff offers no reason to depart from the holdings of these

27   authorities.

28   [11] *Theofel v. Farey-Jones*, 359 F.3d 1066 (9th Cir. 2004), the only case cited by Plaintiff, is completely
     irrelevant as it involved individuals who served an unlawful subpoena, not a service provider accessing its *own*
     servers.

9

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1    protected in any meaningful fashion"); *LVRC Holdings LLC v. Brekka,* 581 F.3d 1127, 1129 (9th

2    Cir. 2009) (where access to computer is authorized, there can be no liability for alleged unauthorized

3    "use" of information on the computer).[12]  In any event, as discussed above, because Yahoo!'s email

4    users have consented to the alleged access, the access is authorized, thereby precluding CFAA

5    liability.  Finally, Plaintiff does not even respond to Yahoo!'s argument that the fraud allegations in

6    the Complaint are defective and not plead with the particularity required by Fed. R. Civ. P. 9(b).

7           **E.      Plaintiff's State Law Claims Should Be Dismissed.**

8           As stated in Yahoo!'s moving papers, the CDA immunizes Yahoo! against all claims related

9    to the filtering of spam.  Independently, Plaintiff's interference claims fail because: (1) Yahoo! had

10   no duty to deliver any of Plaintiff's emails; (2) Yahoo!'s interest in protecting its own systems and its

11   users from the unwanted consequences of bulk commercial email and spam justifies Yahoo!'s use of

12   spam filtering technology; (3) Plaintiff has failed to plead essential elements of an interference claim,

13   including the relationships interfered with, knowledge by Yahoo! that its spam filtration was

14   substantially certain to interfere with Plaintiff's contracts; and (4) specific causation.  Plaintiff further

15   fails to state a claim under California's privacy statutes, which are preempted by the ECPA, and, in

16   any event, Plaintiff fails to plead the essential elements to state a claim for wiretapping or

17   eavesdropping.  Lastly, Plaintiff fails to state a viable UCL claim where Yahoo!'s conduct is both

18   immunized by the CDA, or otherwise legal.

19          **1.      Yahoo! Has No Duty To Send Plaintiff's Emails.**

20          Although duty is not an element of an intentional interference claim, the fact that Yahoo! is

21   not duty-bound to send Plaintiff's bulk commercial email bars Plaintiff's action as a matter of law.

22   *See, e.g., 9201 San Leandro LLC v. Precision Castparts Corp.,* 548 F. Supp. 2d 732, 734 (N.D. Cal.

23   2008) ("Dismissal may be based on the lack of a cognizable legal theory or the absence of sufficient

24   facts alleged under a cognizable legal theory.").  Both of Plaintiff's interference claims depend on the

25   assumption that Yahoo!'s failure to deliver Plaintiff's emails is an adequate predicate for liability.  It

26   is not.  As a matter of common sense and the law, Yahoo! cannot be held liable under an interference

27   theory or any other theory for failing to deliver Plaintiff's emails -- at Yahoo!'s own cost -- where it

---

28   [12] As with its Wiretap Act and SCA claims, Plaintiff appears to argue that the CFAA limitations apply only to employers, but not service providers.  Again, Plaintiff cites no authority establishing any such distinction.

10

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1  has no duty to do so.  If Plaintiff is correct that such a duty could be imposed based on some third

2  party agreements, the results would be both illogical and unfair, because it would put strangers to a

3  contract like Yahoo! in the untenable position of being forced to act to effectuate a bargain it is not a

4  party to, does not profit from, and may not even know about.  Nor can Plaintiff complain that it is not

5  maximizing its profits, where Yahoo! had no duty to deliver a single email.  Adopting this very

6  reasoning, in *See, e.g, Schindler v. Marshfield Clinic*,  2006 WL 1589647, at *1 (W.D. Wis. June 2,

7  2006) (dismissing tortious interference based on lack of duty to third parties).[13]  To hold Yahoo!

8  liable for intentional interference by failing to act when it was not required to act runs afoul with

9  basic tort principles.  Yahoo! should not be held liable to pay because Plaintiff made an underlying

10  assumption on its purported contracts, which later proved to be false.[14]

11     **2.     Justification Is An Appropriate Defense In This Matter.**

12     Justification bars Plaintiff's interference claims as a matter of law and Yahoo may assert

13  justification through a Rule 12(b)(6) motion. *A. F. Arnold & Co., Ltd. v. Pacific Professional Ins.,*

14  *Inc.*, 27 Cal. App. 3d 710, 714 n.2 (1972) ("If justification appears on the face of the complaint, then

15  it may be considered on demurrer.").  Plaintiff attempts to limit this broad defense by stating that

16  justification "must be conferred by either statute or special relationship."  Opp. at 10.  Even if this

17  were an accurate statement of the law, which it is not,[15] Yahoo! is justified in protecting its

---

18  [13] Wisconsin's tortious interference with contract cause of action is similar to California's: "(1) the plaintiff

19  had a contract or prospective contractual relationship with a third party; (2) the defendant interfered with the relationship; (3) the interference was intentional; (4) a causal connection exists between the interference and

20  the damages; and (5) the defendant was not justified or privileged to interfere."  *Schindler*, 2006 WL 1589647, at *1.  That Wisconsin's claim specifically incorporates justification and privilege does not change *Schindler's*

21  finding that a plaintiff's claim for tortious interference with contract should be dismissed if the defendant has no duty or obligation to act on behalf of the plaintiff.

22  [14] Plaintiff's citation to *Quelimane Co. v. Stewart Tite Guar. Co.*, 19 Cal. 4th 26, 56-58 (1998) is unavailing.

23  *Quelimane* involved certain title insurance companies' conspiracy to refuse to issue title insurance. *Id.* at 35.  The plaintiffs were the proprietors of real property who alleged interference with its relationship with property

24  purchasers.  *Id.*  The defendants in *Quelimane* however, "represented to the public that they would insure any real estate that had good title."  *Id.* at 36.  Yahoo! has made no similar representation--to its subscribers or to

25  mass email servicers like Plaintiff--that it will deliver spam or bulk commercial email.  In fact, Yahoo!'s TOS states that "Yahoo! may or may not pre-screen Content, but Yahoo! and its designees shall have the right . . .

26  to pre-screen, refuse, or remove any Content that is available via the Yahoo! Services."  Yahoo!'s Request for Judicial Notice, Exh. 1 at 3.

27  [15] In fact, to determine whether particular conduct is justified, the Courts engage in a balancing test of several

28  factors: "[w]hether an intentional interference by a third party is justifiable depends upon a balancing of the importance, social and private, of the objective advanced by the interference against the importance of the interest interfered with, considering all circumstances including the nature of the actor's conduct and the relationship between the parties." *A.F. Arnold & Co.*, 27 Cal. App. 3d at 714 (citation omitted).

11

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1  relationship with its email users, as specifically authorized by the CDA and other federal law.  The

2  law is clear that "an interference with a contract is justified when the person is seeking to protect an

3  interest of greater social value than that attached to the stability of the contract involved." *Jewel*

4  *Companies, Inc. v. Pay Less Drug Stores Northwest, Inc.*, 510 F. Supp. 1006, 1011 (N.D. Cal. 1981).

5  The deleterious effects of spam to consumers and to the livelihood of ISP's like Yahoo! are well

6  documented and not subject to reasonable dispute.  *See, e.g., White Buffalo Ventures, LLC v. The*

7  *University of Texas*, 2004 WL 1854168, at *5 (W.D. Tex. Mar. 22, 2004).  Accordingly, Yahoo! is

8  justified in protecting its own financial interest by providing its users spam filtering technology --

9  technology offered by probably all other email providers -- and is also justified in blocking Plaintiff's

10 based on society's interest in combating bulk commercial email.  That justification does not change

11 by Plaintiff's proclamation that its bulk commercial "emails are all solicited."  Opp. at 1.  In fact,

12 Congress has recognized that certain filtration technology may block even solicited mail, and

13 expressly provided for CDA immunity in those instances. *e360 Insight, LLC*, 546 F. Supp. 2d at 607.

14     **3.     Plaintiff Fails to Identify Any Relationships Interfered With.**

15     Contrary to Plaintiff's self-serving assertions, Plaintiff has not alleged "a class of easily

16 identifiable prospects--and contracts." (Opp. at 10 n.12).  Instead, Plaintiff makes cursory allegations

17 of its "contractual business relationships," its "commercial clients," and "client relationships." (*See*,

18 *e.g.*, Compl. at ¶¶ 9, 33).  These allegations of unidentified client relationships are routinely deemed

19 insufficient. *See Tuck Beckstoffer Wines LLC v. Ultimate Distributors, Inc.*, 682 F. Supp. 2d 1003,

20 1021 (N.D. Cal. 2010) (allegations involving "unidentified 'Clients and Customers'" insufficient);

21 *DocMagic, Inc. v. Ellie Mae, Inc.*, __ F. Supp. 2d__, 2010 WL 3987495, at *14 (N.D. Cal. Oct. 12,

22 2010) (dismissal to plead all elements of intentional interference, including at least one actual

23 relationship).[16]

24     **4.     Plaintiff Has Failed to Show Interference Was Substantially Certain.**

25

26 [16] Plaintiff's assertion that it need not plead the specific names of clients should be rejected based on recent
and subsequent authority, *supra*, indicating otherwise and Plaintiff's only authority, *Silicon Image, Inc. v.
Analogix Semiconductor, Inc.*, 2007 U.S. Dist. Lexis 39599, at *11 (N.D. Cal. May 16, 2007), applied a pre-

27 *Twombly* and *Iqbal* notice pleading standard.  Plaintiff's disjointed attempts to distinguish Yahoo!'s previously
cited authorities should not be heeded in light of these cases requiring the identification of specific

28 relationships, and Plaintiff's failure to present authority on the matter under the *Twombly* and *Iqbal* pleading
standard.

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1    Plaintiff has also failed to demonstrate as it must that Yahoo! knew or was substantially

2  certain that its routine spam filtering would disrupt specific contracts between Plaintiff and third

3  parties or that Yahoo! had a specific intent to interfere with any contract. Instead, Plaintiff concedes

4  the filtration was not specific to Plaintiff. (Comp. at ¶ 19.) Indeed, because Yahoo! was unaware of

5  such contracts, and in any event was not required to delivery *any* of Plaintiff's emails, but was instead

6  protected by federal statute for filtering activities, no viable claim exists. *See 1-800 Contacts, Inc. v.*

7  *Steinberg,* 107 Cal. App. 4th 568, 586 (2003); *see also Korea Supply Co. v. Lockheed Martin Corp.,*

8  29 Cal. 4th 1134, 1153 (2003)[17]. Relatedly, Plaintiff fails to adequately allege causation: "What is

9  required is 'proof that it is reasonably probable that the lost economic advantage would have been

10  realized but for the defendant's interference.'" *Kasparian v. County of Los Angeles*, 38 Cal. App. 4th

11  242, 271 (1995) (emphasis original) (citations omitted). Plaintiff points to paragraph 34 of the

12  Complaint as properly pleading causation, however, paragraph 34 makes no such "but for" allegation

13  with regard to Plaintiff's purported existing contracts, much less its alleged prospective relationships.

14    **5.    Plaintiff Has Failed To Demonstrate Independently Wrongful Conduct.**

15    Contrary to what Plaintiff implies in its Opposition, the requirement to plead independent

16  wrongful conduct to state an intentional interference with prospective economic advantage is well

17  settled California Supreme Court precedent. *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal. 4th

18  1134, 1158 (2003). Plaintiff does not identify any independently wrongful action and merely alleges

19  that Yahoo! "engaged in intentional, wrongful acts to disrupt such economic and business

20  relationships" and that "YAHOO is continuing to engage in the unlawful actions alleged herein."

21  (Compl. ¶¶ 82, 87.) Plaintiff claims that it has pleaded violations of "state and federal

22  communications statutes" and that its UCL claim serves as "the independently wrongful act" for its

23  intentional interference with prospective economic advantage claim. To the extent that the Court

24  ─────────────────────────

25  [17] Plaintiff claims that it need not plead Yahoo's knowledge, rather it is sufficient to plead that "Yahoo's conduct was substantially certain to lead to the interference" citing *Bank of New York v. Fremont General Corporation*, 523 F.3d 902, 911 (9th Cir. 2008);(Opp. at 12.) *Bank of New York* however, was merely

26  distinguishing between direct evidence and circumstantial evidence at the trial stage. *Bank of New York*, 523 F.3d at 911 ("Since there is no direct evidence of [Defendant's] intention, we must determine whether there is

27  evidence from which a finder of fact could reasonably infer its intention. . ."). Nothing in *Bank of New York* relieves Plaintiff of its obligation to plead facts showing that Yahoo! knew that its conduct was substantially

28  certain to lead to the interference. In fact, *Bank of New York* states that the plaintiff had to show that the defendant "knew the interference was certain or substantially certain to occur." *Id.* at 909 (emphasis added).

13

1    determines that Plaintiff's state and federal statutory communications claims fail due to CDA

2    immunity, the instant cause of action also fails.  However, absent a showing of unlawful conduct,

3    Plaintiff claims must fail.  *Korea Supply Co.*, 29 Cal. 4th at 1159 n. 11.

   **6.    Plaintiff's Wiretapping And Eavesdropping Claims Fail.**

4

5         Plaintiff ignores clear precedent that the ECPA pre-empts Plaintiff's invasion of privacy

6    claims.  *Bunnell v. Motion Picture Ass'n of America*, 567 F. Supp. 2d 1148, 1154 (C.D. Cal. 2007).

7    Moreover, Plaintiff's cited authorities are either inapposite or support Yahoo!'s position.  *Bradley v.*

8    *Google, Inc.*, 2006 WL 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (state wiretapping claims fails for

9    failure to allege interception during transmission); *Garcia v. Haskett*, 2006 WL 1821232, at *4 (N.D.

10   Cal. June 30, 2006) (Cal. Pen. Code § 632 claim previously dismissed); *Bailey v. Household Finance*

11   *Corp. of California*, 2010 WL 4569950, at *2-3 (S.D. Cal. Nov. 4, 2010) (No ECPA claim alleged).

12   Even if Plaintiff's state invasion of privacy claims were not preempted, Plaintiff has provided no

13   authority where a state wiretapping or eavesdropping claim applied to electronic mail and survived a

14   motion to dismiss.  *Membrila v. Receivables Performance Management, LLC,* 2010 WL 1407274, at

15   *2 (S.D. Cal. Apr. 6, 2010) (Section 631 limited to telephone or telegraph claims).[18]  Further,

16   Plaintiff, has not properly alleged either interception or use of a device under the Wiretap Act, and

17   even if it did, those allegation do not suffice for Cal. Pen. Code § 632, which requires the use of an

18   "electronic amplifying or recording device" *Id.*[19]  Finally, Plaintiff asserts that users have a

19   "reasonable expectation of privacy" in their email communications citing *U.S. v. Warshak*, 2010 WL

20   5071766 (6th Cir. Dec. 14, 2010).  Plaintiff, however, attempts to apply a Fourth Amendment

21   standard pertaining to unreasonable searches and seizures in *Warshak* to its Cal. Penal Code § 632

22   claim.  At issue in *Warshak* was the government's warrantless search and seizure of the defendant's

23   emails and not spam filtering routinely undertaken by ISPs.  There can be no expectation of privacy

---

[18] Plaintiff claims, without support, that Yahoo!'s additional cited authorities for this proposition were decided before the advent of email communications.  This suggestion is without import.  *See Moallem v. Coldwell Banker Commercial Group, Inc.*, 25 Cal. App. 4th 1827, 1833 (1994) ("But a court is not free to advance the public policy that underlies a statute by extending the statute beyond its plain terms and established reach.").

[19] Plaintiff conflates the device that it is required to plead under Cal. Pen. Code § 632 with the manner in which the communication may be eavesdropped among the parties.  Opp. at 23.  Cal. Pen. Code § 632 requires the use of electronic or amplifying recording device to eavesdrop on confidential communications "carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio. . ." Cal. Pen. Code § 632.

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

14

1    in this case, however, where the fact of pre-screening content and the existence of spam filtration was

2    well known to Plaintiff and Yahoo!'s other email users.[20]

3            Finally, the fact that Plaintiff was sending blast bulk emails to "[persons] whom he did not

4    know," means Plaintiff cannot expect its communications to be private when that person could easily

5    and "instantaneously send[] writings and photographs to thousands of people." *Nakai,* 183 Cal. App.

6    4th at 518.  Similarly, Plaintiff cannot plausibly claim that it "knows" all recipients of its bulk emails,

7    therefore, it cannot expect its emails to be confidential.   Plaintiff's state invasion of privacy claims

8    therefore fail as a matter of law.[21]

9    **F.      Plaintiff Does Not State A Claim Under The UCL**

10           Although Plaintiff does not specify, it appears to rely on the unlawful and unfair prongs of the

11   UCL in its Complaint, and relies on the same facts in its UCL claims that it relies on for its remaining

12   claims. As Plaintiff's other claims fail, so must its UCL claim. *See Tuck Beckstoffer Wines LLC*, 682

13   F. Supp. 2d at 1019-20 (". . .where a plaintiff cannot state a claim under the 'borrowed' law, it cannot

14   state a UCL claim either.")  Simply stating Yahoo!'s conduct was "unfair" does not create a cause of

15   action where there is no demonstrated harm to competition. *Id.* at 1019. Plaintiff has alleged neither.

16   Because Yahoo!'s conduct is expressly immunized by the CDA, or otherwise allowable under the

17   Wiretap Act and SCA, Plaintiff's UCL claim cannot survive.

18   DATED: February 11, 2011                          HUNTON & WILLIAMS LLP

19                                                     By:  /S/ ANN MARIE MORTIMER
20                                                          Ann Marie Mortimer
                                                           Attorneys for Defendant YAHOO! INC.
21

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

22

23   [20] Despite Plaintiff's belabored attempt to distinguish *People v. Nakai*, 183 Cal. App. 4th 499 (2010), a case
     that squarely addresses Cal. Pen. Code § 632, Nakai specifically found that section 632 excludes

24   communications that the parties may reasonably expect to be overheard or recorded. Id. at 518. Plaintiff as a
     bulk email service provider is more than familiar with ISP spam filters and cannot reasonably expect to avoid

25   such filters in its mass email campaigns. (*See e.g.,* Compl.  ¶ 16 ("Both HOLOMAXX and its clients are
     rightly wary of being treated as spam, by customers, regulators, or internet service providers ('ISPs')"); ¶ 25 (".

26   . . HOLOMAXX had faced service issues, and its IP addresses had their 'reputations' affected, when
     spammers sent email from non-HOLOMAXX addresses within the shared block.")).

27   [21] Plaintiff also claims, without opposition, that it is not required to negate any consent exception. Yahoo! is
     not suggesting it do so.  As a mass email servicer, Plaintiff should be keenly aware of common privacy

28   policies and terms of use permitting ISP's to block spam or similar type emails, which subscribers agree to.
     *See* Request for Judicial Notice, Exh. 1 at 3.  Any claim, therefore, that any alleged state wiretapping or
     eavesdropping is without consent should be disregarded.

                                                   15