UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                      )
COLIN BOWER, on his own behalf and as   )
the guardian and legal custodian of his         )
minor children, N and R,                              )
                                                      )
          Plaintiff,                                      )
                                                      )
v.                                                        )          CIVIL ACTION NO. 1:10-cv-10405-NG
                                                      )
MIRVAT EL-NADY BOWER and             )
EGYPTAIR AIRLINES,                            )
                                                      )
          Defendants.                                   )
_____)

**PLAINTIFF'S PARTIAL OBJECTION TO THE MAY 9, 2011 ORDER OF THE
MAGISTRATE JUDGE ON MICHAEL TRAFT'S MOTION TO VACATE ORDER
REQUIRING HIM TO PRODUCE DOCUMENTS PURSUANT TO SUBPOENA**

Pursuant to Rule 2 of the Rules for Magistrate Judges in this District, plaintiff Colin

Bower respectfully submits this partial objection to the May 9, 2011 Order of the Magistrate

Judge on non-party Michael Traft's motion to vacate an earlier Order requiring him to produce

documents pursuant to a subpoena.

Mr. Bower seeks through this partial objection an Order requiring the production by Mr.

Traft of two emails sent within two weeks after the defendant Mirvat El-Nady's abduction of Mr.

Bower's two small children.  The Court deemed the two emails protected by the attorney-client

privilege despite their having been sent to a person indisputably outside the attorney-client

relationship.  It did so based on a decision that the third-party recipient was a "communicating

agent" whose involvement did not render the communications non-privileged.  Mr. Bower

respectfully submits that the May 9 Order was contrary to law, misapplying the "communicating

agent" principle on which it relied by extending it to one who serves not as a necessary and

legitimate communicating agent, but who facilitates communications with a fugitive who is committing an ongoing felony by holding Mr. Bower's children captive abroad for the last 21 months.

## Background

### *Mr. Traft's frequent communications with the fugitive Mirvat El-Nady*

Mr. Traft is a lawyer who has represented the defendant Mirvat El-Nady, a fugitive from criminal charges in this District.  Ms. El-Nady abducted Mr. Bower's children to Egypt in August 2009.  At the time of the abduction, Mr. Bower had, as he does today, sole legal custody of his two sons.  Despite excruciating and extensive international efforts, Mr. Bower has been unable to secure the return of his two sons to their Massachusetts home.  To this day, he does not know where they are, have a contact address for them, or know whether they are safe.

Mr. Traft had contact with Ms. El-Nady in the days surrounding and since her abduction of Mr. Bower's children, including a lengthy call the day of the abduction.  Phone records reflect that Mr. Traft spoke to Ms. El-Nady for 16 minutes on the day of the abduction, August 11, 2009.  He also spoke to her in the period leading up to the abduction, including calls or voicemail exchanges on August 10, July 27, July 14, July 9, July 8 (twice, for a total of one hour and 17 minutes), July 7, July 6, and July 2.[1]  These calls reflected communications between only Ms. El-Nady's cell phone number (for which Mr. Bower had phone records) and Mr. Traft's office number.  Whether there were additional calls in which either Ms. El-Nady or Mr. Traft used a different number remains unknown.

---

[1]  These calls were evidenced by excerpts from Verizon phone records (reflecting calls between 617-959-1666 [Ms. El-Nady] and 617-338-5566 [Mr. Traft]) that were attached as Exhibit D to the Declaration of Joshua L. Solomon, dated October 21, 2010, and submitted with Mr. Bower's motion to compel (the "First Solomon Declaration," docket #32).

Mr. Bower also learned through discovery that Mr. Traft and Ms. El-Nady communicated frequently by email as well, including in the days and weeks leading up to Ms. El-Nady's abduction of Mr. Bower's children.  From email header information produced in discovery (i.e. time, date, sender, and recipient, but without email content), Mr. Bower has learned that Mr. Traft and Ms. El-Nady communicated via email at least twenty-six times in July and August 2009.  These communications included three exchanges the day before the abduction and four the day of the abduction.[2]  The exchanges through Ms. El-Nady's email account abruptly ceased approximately two weeks later, but the email headers revealed that Mr. Traft also used another email address for Ms. El-Nady provided by another service provider, which Mr. Bower has as of yet been unable to obtain through subpoena.

In addition, the email header information revealed that Mr. Traft and Ms. El-Nady often included Maged El-Nady, Ms. El-Nady's brother, on their emails.  Included among such emails were messages on August 20 and 25, less than two weeks after the abduction and around the time that Ms. El-Nady and Mr. Traft ceased using Ms. El-Nady's email address.  The inclusion of Maged El-Nady on these two purportedly privileged messages is the basis for the present objection.

*Mr. Traft's refusal to comply with discovery obligations and Court Orders*

Based on the timing of Mr. Traft's communications with Ms. El-Nady in relation to the abduction of Mr. Bower's children, Mr. Bower sought limited discovery from Mr. Traft. Notwithstanding the harrowing circumstances of this matter, in which two children have been abducted and held away from their father and their home in an unknown location for 21 months, Mr. Traft refused to respond meaningfully to the subpoena.  He provided Mr. Bower instead with

---

[2] These exchanges were reflected in a summary of email headers that was attached as Exhibit C to a Second Declaration of Joshua L. Solomon, dated November 10, 2010 (the "Second Solomon Declaration," docket #42).

only a "blanket" invocation of Ms. El-Nady's attorney-client privilege and work product

protection, in which he stated that he would not respond further.  Mr. Traft also refused to

provide a privilege log or any information concerning whom he represents and whether he had

post-abduction contact with Ms. El-Nady.

In light of Mr. Traft's refusal to satisfy his obligations pursuant to the subpoena, Mr.

Bower filed a motion to compel on October 21, 2010 (docket #30).  The Court held a hearing on

various discovery matters, including Mr. Bower's motion to compel, on February 10, 2011.

Addressing Mr. Traft, the Court stated,

> I mean, and I truly, I cannot believe that an attorney didn't file a response to a
> subpoena.  I – that's not how we do business and it's not going to get you very far
> here, all right.  There are a lot of rules here.  You're a member of the Bar.  You're
> expected to know them, all right, and you need to follow them.

Feb. 10, 2011 Hearing Tr. at 45 (docket #92).  The next day, February 11, 2011, the Court issued

an Order that granted in part Mr. Bower's motion to compel:

> The plaintiff's motion to compel a response to a subpoena from third-party
> Michael Traft (Docket No. 30) is ALLOWED IN PART and DENIED IN PART
> WITHOUT PREJUDICE.  By February 24, 2011, Attorney Traft shall produce a
> privilege log identifying any responsive documents that he is withholding from
> production pursuant to the attorney-client privilege or the work product doctrine.
> Additionally, Attorney Traft shall promptly produce any responsive documents
> for which no privilege is claimed. The motion is otherwise denied without
> prejudice to the filing of a new motion to compel, based on any objections the
> plaintiff may have, following the plaintiff's review of the privilege log.

Order, dated Feb. 11, 2011 (docket #75).

In response, Mr. Traft produced as his "privilege log" a listing of 51 emails with Ms. El-

Nady or third-parties.  The log provided only the senders or recipients and the dates of

communications.  The Court's express direction was to comply with rules applicable to privilege

logs, which includes Fed. R. Civ. P. 45's requirement that the respondent "describe the nature of

the withheld documents . . . in a manner that, without revealing information itself privileged or

protected, will enable the parties to assess the claim." In violation of the Court's directives, Mr.

Traft refused to include descriptions of these materials on his log. While such information is

required in any privilege log, it was particularly pertinent here, where the specter of the crime-

fraud exception reached any otherwise applicable privilege.

Even the information that Mr. Traft did include was incomplete. For example, on Mr.

Traft's log, emails between Ms. El-Nady and Mr. Traft that were copied to others were displayed

as simply emails between Ms. El-Nady and Mr. Traft, without reference to the copies to others,

including Maged El-Nady. Nor did Mr. Traft include all communications that exist. Rather, he

simply listed the dates on which he had email communications, without identifying the number

of or particular communications on each date.

As a result, Mr. Bower filed a motion to enforce the Court's February 11 Order (docket

#79). Once again, Mr. Traft filed no opposition. On March 31, 2011, the Court issued an

electronic Order:

> There being no opposition, plaintiff's motion is allowed. The information
> Attorney Traft provided is inadequate and fails to comply with Fed. R. Civ. P. 45
> or this Court's Order. Attorney Traft shall produce all responsive documents to
> plaintiff within 14 days of the date of this order.

Still, Mr. Traft refused to comply. During a telephone call in which counsel for Mr. Bower

sought to obtain from Mr. Traft the documents that he had been ordered to produce, Mr. Traft

stated that he would not produce the documents; that if the Order required him to do so, it was a

"ridiculous order"; and that he intended to file a motion to vacate "the stupid order."[3]

Rather than producing the documents as he had been ordered to do, or filing an objection

to the Order with the District Court Judge, Mr. Traft filed a motion to vacate what he had labeled

---

[3] This conversation was evidenced by the Declaration of Joshua L. Solomon, dated April 13, 2011 (docket #88).

"the stupid order." In doing so, he criticized the Court for not doing what he "expected" of it and for what he described as the Court's failure to give due attention to his concerns:

> I expected that a matter which involves such significant ethical issues involving the revelation of attorney-client privileged information would not be resolved without at least providing an analysis of the deficiency of the response and enable me to attempt to correct it. Instead, the Court has issued an order apparently solely because of my failure to articulate a separate opposition detailing the same points already outlined in my response.

(Motion to Vacate (docket #85 at 4).)

### The Court's May 9, 2011 Order

Despite Mr. Traft's refusal to properly respond to Mr. Bower's subpoena, failure to file an opposition to the motion to compel, failure to comply with the Court's February 11 Order compelling a privilege log, failure to file an opposition to Mr. Bower's motion to enforce the February 11 Order, and refusal to comply with the March 31, 2011 Order, the Court reconsidered its March 31 Order and allowed Mr. Traft to submit documents for an *in camera* inspection, rather than requiring their production to Mr. Bower.

Following its *in camera* review, the Court issued its May 9 Order to which Mr. Bower makes this partial objection. The May 9 Order refused to require the production of most of the material submitted for *in camera* review, directing Mr. Traft to produce only four emails, not including any emails with Ms. El-Nady. Here, Mr. Bower objects only to the portion of the May 9 Order that deemed privileged two specific emails, dated August 20 and August 25, 2009, that were copied to Maged El-Nady.

According to the May 9 Order, the two emails at issue, both sent within two weeks of the abduction of Mr. Bower's children, were apparently sent between Mr. Traft and Ms. El-Nady, and were copied to Maged El-Nady, Ms. El-Nady's brother. The Court ruled that despite their being copied to a stranger to the attorney-client relationship, the emails remained privileged. In

so ruling, the Court relied upon the "communicating agent" doctrine, finding that "[i]t is clear from the contents that the copy to Maged was only to insure that Mirvat received the communication."  (May 9 Order at 3.)  The May 9 Order cited to two unpublished decisions from the Northern District of Illinois.

**Discussion**

The May 9 Order does not cite to, and in fact departs from, First Circuit and Massachusetts law on the subject of attorney-client privilege, and misapplies the doctrine and caselaw on which it relied to reach the conclusion that the inclusion of Maged El-Nady did not render the communications non-privileged.

Both Illinois cases to which the May 9 Order cited involved insurance-company litigants whose communications flowed through their insurance broker.  As one of the decisions held:

> Plaintiffs correctly point out that the communicating agent served to "facilitate, control and maintain" privileged communications with Chicago counsel. (Declaration of Plaintiff's representative, Ex. "A").  Plaintiffs are not a single corporate entity but consist of a conglomerate of various insurance companies, and as such the broker-agent formed *the only effective way for Chicago Counsel to communicate with all of plaintiffs entities*.  Accordingly, we find that plaintiffs have not waived the attorney-client privilege by communicating through the broker.

*Certain Underwriters at Lloyds v. Fidelity and Cas. Co. of New York*, No. 89 C 0876, 1997 WL 769467, at *2 (N.D. Ill. Dec. 9, 1997) (emphasis added).

As an initial matter, Mr. Traft, on behalf of Ms. El-Nady, never made this argument.  He never claimed that Maged El-Nady was a "communicating agent," much less that he provided "the only effective way for" Mr. Traft to communicate with Ms. El-Nady.  Nor, in any event, is a situation in which a conglomerate of insurers communicates through their broker remotely analogous to the present situation.  To the extent Mr. Traft has felt the need to communicate with Ms. El-Nady through Maged El-Nady, that need is solely a function of Ms. El-Nady's status as a

fugitive from criminal charges. To the extent Maged El-Nady is providing her with a means of communication from afar, and thus perhaps allowing her to avoid communications through a known email account in her own name (as suggested by the abrupt cessation in use of her personal email account in August 2009), Maged El-Nady is assisting her in remaining a fugitive. Even if the emails at issue on their face do not appear to implicate Maged El-Nady or otherwise suggest evasive conduct by Ms. El-Nady, in the broader context of her fugitive status and the abrupt cessation of Mr. Traft's communications directly with Ms. El-Nady's email account, Maged El-Nady's participation is likely in furtherance of criminal conduct and is in the nature of giving aid and support to a fugitive. At the very least, any "need" to communicate through Maged El-Nady is a result of Ms. El-Nady's illegal absence from this jurisdiction due to her having fled during the abduction. It is far from the type of need reflected in communications between a group of insurers and a lawyer through the insurers' joint broker.

Furthermore, even were the Court to look past the fact that Mr. Traft has never claimed that Maged El-Nady was a necessary communicating agent, and the apparent nefarious purpose behind communicating through Maged El-Nady, the Court's ruling improperly extends the scope of the "communicating agent" doctrine on which it relies. The Seventh Circuit opinion to which the *Certain Underwriters of Lloyds* case cites in applying the "communicating agent" doctrine is telling in giving further meaning to the doctrine. The Seventh Circuit opinion addressed a common interest arrangement in which parties and their lawyers having a common interest were allowed to communicate with one another's lawyers and agents. With respect to communications through non-lawyers, the court held:

> Ingram also seems to argue that the communication was not privileged because it was made to an investigator rather than an attorney. *The investigator was an agent for Ingram's attorney, however, so it is as if the communication was to the attorney himself.* "It has never been questioned that the privilege protects

- 8 -

communications to the attorney's . . . agents . . . for rendering his services."  8
Wigmore, Evidence s 2301 at 583 (McNaughton rev. 1961); Cf. *United States v.
Kovel*, 296 F.2d 918, 921-922 (2d Cir. 1961) (client's communications to an
accountant employed by his attorney).

*U.S. v. McPartlin*, 595 F.2d 1321, 1337 (7th Cir. 1979) (emphasis added).  Mr. Traft has never

contended, and the May 9 Order did not find, that Maged El-Nady was Mr. Traft's agent, or even

Ms. El-Nady's agent.

Furthermore, the May 9 Order does *not* find that communicating through Maged El-Nady

was "the only effective way for" Ms. El-Nady to communicate with Mr. Traft.  Nor would there

be any basis for such a finding.  Rather, the Court merely found that Mr. Traft copied Maged El-

Nady "only to insure that Mirvat received the communication."  May 9 Order at 3.  If, in fact,

that were the only purpose, it cannot support a finding that Maged El-Nady was "the only

effective" means of communicating with Ms. El-Nady.

Consistent with the language of the Northern District of Illinois opinions on which the

May 9 Order relies, another court has emphasized the importance of the "communicating agent"

being a *necessary* intermediary:

> [W]e conclude that, although communication of questions and information by and
> through Webber concerning ATA's dispute with Herley may have been
> convenient and helpful to Fukuda in communicating more easily with attorneys
> from whom he, or Webber, on ATA's behalf, sought legal advice, Webber's
> involvement as a third-party conduit for such communications *did not rise to the
> level of a necessity and did not, therefore, meet the standard for preserving the
> attorney-client privilege*.  As noted in *Westinghouse v. Republic of the
> Philippines*, the attorney-client privilege must be narrowly construed because it
> obstructs the truth-finding aspect of the litigation process.  It follows, therefore,
> that exceptions to the rule that disclosure of confidences to a third-party waives
> the attorney-client privilege must be similarly construed.  The court in
> *Westinghouse* emphasized that exceptions to waiver of the attorney-client
> privilege must further the underlying purpose of assuring that a client is able to
> obtain informed legal assistance.  That requirement is met when disclosure of
> otherwise privileged material to a third-party *is essential to the privilege*, i.e., that
> absent disclosure of the communications to the third-party, the purpose of the
> attorney-client privilege would not have been fulfilled because the client could
> not or would not have obtained legal assistance.  Thus, in our view, the term

"necessary" as used by the court in *Westinghouse* indicates that *the third-party disclosure must be of greater importance than merely facilitating communications between client and counsel which would have occurred in any event.*  Rather, for a third-party disclosure to be necessary to obtain legal advice, it must be a *virtually indispensable circumstance or condition* related to obtaining such assistance or advice.

*Advanced Technology Associates, Inc. v. Herley Industries, Inc.*, Civ.A. No. 96-0132, 1996 WL 711018, at *8 (E.D. Pa. Dec. 5, 1996) (emphasis added).  As the party seeking to invoke the privilege (and an exception to waiver of the privilege), Mr. Traft has never argued, let alone made an adequate showing, that his communications through Maged El-Nady satisfy this standard.

It was contrary to law for the May 9 Order to protect, under the attorney-client privilege, the August 20 and 25 emails on which Maged El-Nady was copied.  The abductor and fugitive is not entitled to the development of novel legal doctrine that assists her ongoing wrongful retention of the children.

## Conclusion

For the reasons stated herein, Mr. Bower respectfully requests that the Court sustain this partial objection and order Mr. Traft to produce to Mr. Bower the August 20 and 25 emails on which Maged El-Nady was copied.

May 19, 2011                                        Respectfully submitted,

                                                    Colin Bower,
                                                    By his attorneys,

                                                    /s/ Joshua L. Solomon
                                                    Barry S. Pollack (BBO#642064)
                                                    Joshua L. Solomon (BBO#657761)
                                                    SULLIVAN & WORCESTER LLP
                                                    One Post Office Square
                                                    Boston, MA 02109
                                                    (617) 338-2800 (phone)
                                                    (617) 338-2880 (fax)

Lisa G. Arrowood (BBO #022330)
Alexis D'Arcy (BBO #667608)
TODD & WELD LLP
28 State Street
Boston, MA 02109
(617) 720-2626 (phone)
(617) 227-5777 (fax)

<u>Certificate of Service</u>

I hereby certify that this document filed through the ECF system
will be sent electronically to the registered participants as
identified on the Notice of Electronic Filing (NEF) on May 19,
2011.

/s/      Joshua L. Solomon