UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-10405-RGS

COLIN BOWER

v.

MIRVAT EL-NADY and EGYPTAIR AIRLINES

MEMORANDUM AND ORDER
ON PLAINTIFF'S MOTION FOR A RULING
ON SUBJECT MATTER JURISDICTION

February 21, 2012

STEARNS, D.J.

Plaintiff Colin Bower brought this action on his own behalf and as the guardian of his two minor children after his ex-wife, defendant Mirvat El-Nady, took the children to Cairo, Egypt, in August of 2009, without his consent and in violation of a court order granting Bower custody. Bower alleges that defendant EgyptAir, the airline on which El-Nady flew with her children from New York to Cairo, is liable for interference with Bower's custodial relations, negligence, negligent infliction of emotional distress, and the loss of filial consortium. *See* Am. Compl.

On January 24, 2012, in papers opposing EgyptAir's motion for summary judgment, Bower asked this court to preemptively resolve the (hitherto unraised) issue

of subject matter jurisdiction.[1] Bower's suspicion is that EgyptAir is holding the issue as a trump card against any adverse ruling by this court. *See Am. Fiber & Finishing, Inc. v. Tyco Healthcare Grp., LP*, 362 F.3d 136, 138-139 (1st Cir. 2004) (any party, or the court sua sponte, may raise a jurisdictional defect at any stage of the litigation). The court heard oral argument on February 10, 2012.

DISCUSSION

*El-Nady's Domicile*

Bower asks this court to remand his action to state court after nearly two years of federal litigation. Bower asserts that because El-Nady is a "fugitive from justice," her domicile is Massachusetts, the state from which she fled to New York, and ultimately to Cairo. (The consequence of a Massachusetts domiciliary finding would be the spoliation of the complete diversity on which federal jurisdiction depends, *see* 28 U.S.C. § 1332). In an electronic Order, the court asked Bower to explain the theory under which El-Nady could be deemed a "fugitive from justice" for domiciliary

---

[1] Bower maintains that a careful reading of EgyptAir's answer to its Amended Complaint "suggests that a subject matter jurisdiction issue may exist, specifically whether there is complete diversity among the parties." Pl.'s Mot. for Ruling Resolving Subject Matter Jurisdiction ¶ 1. In its Answer to Bower's assertion of diversity jurisdiction, EgyptAir responded that it "[a]dmits the allegations in paragraph 9 of the Amended Complaint and refers all questions of jurisdiction to the Court." Answer ¶ 11. At the time EgyptAir removed the case to federal court from the Massachusetts Superior Court, Bower took the position that he was domiciled in Massachusetts, while the defendants (including his ex-wife) were domiciled in Egypt.

purposes.[2] As presented to the court, Bower's premise is that in cases of international parental abduction, the abductor-parent is axiomatically deemed a fugitive under federal law. In support of this contention, Bower cites Pub. L. No. 96-611, § 10(a), 94 Stat. 3566, which is entitled "Parental Kidnapping":

> In view of the findings of the Congress and the purposes of sections 6 to 10 of this Act set forth in section 302, the Congress hereby expressly declares its intent that section 1073 of title 18, United States Code, apply to cases involving parental kidnapping and interstate or international flight to avoid prosecution under applicable State felony statutes.

Section 1073 criminalizes the act of fleeing to avoid prosecution.

---

[2] In its February 3, 2012 Order, the court stated:

While the court accepts as a broad proposition of law that where a person is a fugitive from justice her place of domicile for diversity jurisdiction purposes is the place from which she fled, *see Howell v. Tribune Entm't Co.*, 106 F.3d 215, 218 (7th Cir. 1997), a fugitive from justice in both the common law and statutory contexts is defined as a person fleeing from a criminal prosecution or seeking to avoid providing testimony in a criminal proceeding. *See generally United States v. 939 Salem Street, Lynnfield, Ma.*, 2011 WL 3652525, at *2 (D. Mass. Aug. 19, 2011), quoting *Collazos v. United States*, 368 F.3d 190, 199 (2d Cir. 2004) (the term "fugitives" includes those who "learned that their arrests were sought and who then refused to return to the United States in order to avoid prosecution."). *See also* 18 U.S.C. § 921(a)(15) ("The term 'fugitive from justice' means any person who has fled from any State to avoid prosecution for a crime or to avoid giving testimony in any criminal proceeding."). The court is not aware that El-Nady was either the subject of an arrest warrant or had been subpoenaed or otherwise given notice that her testimony was required in a criminal proceeding in either state or federal court prior to her leaving New York for Egypt.

> Whoever moves or travels in interstate or foreign commerce with intent either (1) to avoid prosecution, or custody or confinement after conviction, under the laws of the place from which he flees, for a crime, or an attempt to commit a crime, punishable by death or which is a felony under the laws of the place from which the fugitive flees, or (2) to avoid giving testimony in any criminal proceedings in such place in which the commission of an offense punishable by death or which is a felony under the laws of such place, is charged, or (3) to avoid service of, or contempt proceedings for alleged disobedience of, lawful process requiring attendance and the giving of testimony or the production of documentary evidence before an agency of a State empowered by the law of such State to conduct investigations of alleged criminal activities, shall be fined under this title or imprisoned not more than five years, or both.

According to Bower's reading of the statute, the act of international parental kidnapping in and of itself transforms the kidnapper into a federal fugitive. In the alternative, Bower notes that in March of 2008, the Massachusetts Probate and Family Court (Justice Merrill) held El-Nady in contempt.[3] Bower argues that from this past experience, El-Nady knew or should have known that her "flight to Egypt enabled her to avoid prosecution under state parental kidnapping *and* contempt laws." Bower Letter, Feb. 6, 2012 (Dkt # 165).

EgyptAir, for its part, disagrees with the characterization of El-Nady as a fugitive

---

[3] El-Nady was found guilty of contempt for having willfully "neglected and refused to cooperate with the sale of the [couple's] London flat." Contempt Order attached to Bower Letter, Feb. 6, 2012 (Dkt # 165). Justice Merrill ordered that El-Nady be jailed until she complied, which she did after the hearing. The court notes that at the time of El-Nady's flight, she was no longer under the contempt order.

from justice. It argues that because the United States did not file a criminal complaint against El-Nady until December 1, 2009 (well after her departure for Egypt on August 11, 2009), El-Nady could not have been fleeing a pending criminal prosecution. EgyptAir also argues that Pub. L. No. 96-611, § 10(a), simply adds kidnapping to the list of crimes for which a person can be charged with unlawful flight to avoid prosecution (or the giving of testimony), and that El-Nady was not in fact charged under section 1073.[4]  EgyptAir's Resp. to Order to Show Cause at 3.

More to the point is EgyptAir's argument that whether or not El-Nady is deemed a fugitive, her status as such has no effect on the fixing of her domicile for purposes of diversity jurisdiction.[5] In this respect, EgyptAir is correct. The cases cited by Bower apply when the whereabouts of a fugitive are unknown. The rationale for the rule is perhaps best explained by Judge Posner in *Lloyd v. Loeffler*, 694 F.2d 489 (7th Cir.

---

[4] El-Nady was eventually the subject of a criminal complaint filed under 18 U.S.C. § 1204(a), the international parental kidnapping statute. EgyptAir's Resp. to Order to Show Cause, Ex. A (Dkt # 152-6). In Bower's reply, he states that EgyptAir's interpretation of Pub. L. No. 96-611, § 10(a) is "absurd on its face" as section 1073 already applied to the crime of kidnapping, and Congress was instead making clear its intent that international "kidnappers," as well as domestic "kidnappers," be treated as fugitives.

[5] Although of no matter to the court's determination (because subject matter jurisdiction cannot be waived), EgyptAir makes the not-so-subtle aside that in his Amended Complaint, Bower states that "on or about August 11, 2009, [El-Nady] established a new domicile for herself in Egypt." Am. Compl. ¶ 7.

1982).

> It seems absurd to hold that since a fugitive might be domiciled anywhere or maybe even nowhere . . . , the act of becoming a fugitive puts a person beyond the jurisdiction of the federal courts. Probably the last domicile of the fugitive before he fled should be his domicile for diversity purposes. . . . This is a simple rule, and avoids rewarding the fugitive for his elusiveness.

*Id.* at 490. Where, as here, El-Nady's location – Cairo, Egypt – is known (if not her precise geographic coordinates),[6] her domicile is determined by applying the usual rule – presence in a place coupled with the intent to remain there, determined as of the time the litigation commences. *See Hall v. Curran*, 599 F.3d 70, 72 (1st Cir. 2010). *See also Connectu LLC v. Zuckerberg*, 522 F. 3d 82, 91 (1st Cir. 2008), quoting *Mollan v. Torrance*, 22 U.S. 537, 539 (1824) ("Citizenship is determined as of the date of commencement of an action and, therefore, in cases premised on diversity, jurisdiction

---

[6] EgyptAir asserts that Bower had actual knowledge of the street address in Cairo where El-Nady was living when the lawsuit was initially filed in the Superior Court in February of 2010, as Bower was then engaged in litigation with El-Nady in an Egyptian court. (EgyptAir attaches, as Exhibit E to its brief, copies of invoices issued to Bower by his Egyptian counsel.) Egyptian court orders, produced during discovery, show that El-Nady obtained an order from an Egyptian court awarding her custody of the children. Bower appealed the decision of the Egyptian court on February 7, 2010. Bower has had at least four supervised visits with his children in Egypt during the past two-and-a-half years, after the Egyptian court ordered El-Nady to cooperate with the visitations. Bower asserts that the only address he has for El-Nady in Egypt is the office address of a family member and that the actual address where El-Nady and the children are presently living remains a secret.

'depends upon the state of things at the time of the action brought.'"). Moreover, as EgyptAir points out, there is some support for the proposition that "[a] fugitive from justice can establish a legal 'domicile' where he is in hiding." *United States v. Otherson*, 480 F. Supp. 1369, 1371 n.4 (D. C. Cal. 1979), quoting *Young v. Pollak*, 5 So. 279, 282 (Ala. 1888).[7] Here it is undisputed that at the time Bower filed this lawsuit in Massachusetts, El-Nady had relocated to Egypt, and as Bower's Complaint asserts, intended to remain there with the children permanently.

---

[7] At the February 10, 2012 hearing, EgyptAir also argued that because El-Nady is not a citizen of the United States, her domicile must be based on her exclusion from the relevant language of 28 U.S.C. § 1332(a), which states: "an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled." EgyptAir contends that because El-Nady was not a permanent legal resident of the United States, her domicile must be her country of citizenship, in this case, Egypt. Thus, she falls under section 1332(a)(2), which deems diversity to exist between "citizens of a State and citizens or subjects of a foreign state." The issue, however, is a subject of doubt. In Bower's additional brief to this court, he cites a portion of El-Nady's deposition testimony in the 2007 Massachusetts divorce proceedings in which she answered his attorney's questions as follows:

> Q: Do you have a social security number?
> A: No, I don't.
> Q: Okay. Now, you handed the stenographer an identification, what identification do you have today?
> A: My green card, permanent resident card.
> Q: And what's your number?
> A: REDACTED.

Ex. A, Dkt # 169.

7

*EgyptAir's Request to Dismiss El-Nady or Sever Her from the Action*

In a request of its own, EgyptAir asks that El-Nady be severed as a defendant from this action on two grounds.[8]  First, EgyptAir contends that El-Nady was not properly served within 120 days of the filing of the Complaint as Fed. R. Civ. P. 4(m) requires.  Bower left the state court summons and Complaint at El-Nady's former apartment in Newton, Massachusetts, claiming it as her last "usual place of abode." *See* Fed. R. Civ. P. 4(e)(2).  EgyptAir contends that service was not proper at the Newton address because at the time – February of 2010 – Bower knew that El-Nady resided in Cairo, Egypt.  Consequently, he should have attempted to make service on her in Egypt under the Hague Convention.[9]

> Generally, the plaintiff must show "enough of a nexus or identity between the individual served and the place where service was left to demonstrate that the individual considered that place 'home' at the time of service." . . . Consistent with this analysis, Massachusetts courts considering whether service was made at an individual's "last and usual place of abode" have found service to be improper where the defendant no longer resided at the address to which the summons and complaint were delivered. . . . Thus, in order to be considered the defendant's "last and usual place of abode" under Massachusetts law, there must be evidence that the defendant was continuing to use the address as his home.

---

[8] This is not the first time over the course of this litigation that EgyptAir has made this request.

[9] Egypt ratified the Hague Convention (formally known as the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters) on December 12, 1968.

*United States v. Tobins*, 483 F. Supp. 2d 68, 75-76 (D. Mass. 2007) (citations omitted).[10]

For his part, Bower argues that the court has already rejected a nearly identical argument made by EgyptAir, holding that it lacked standing to challenge the service of process on El-Nady. *See* Order on EgyptAir's Mot. to Dismiss or Transfer (Dkt # 82). Referencing an earlier memorandum of law in this case, Bower asserts that El-Nady was properly served at the Newton address and that, in any event, she was on notice that these claims were proceeding against her.[11] *See* Dkt # 77. This factual assertion was accepted by Magistrate Judge Dein, s*ee* Dkt # 82, and the court is not inclined to revisit her decision.[12]

---

[10] EgyptAir acknowledges that Rule 4(m)'s 120 day requirement does not apply to service in a foreign country, but argues that Bower did not even attempt service in Egypt.

[11] Bower contends that his father, Bruce Bower, has been in contact with El-Nady and emailed her a copy of the Complaint. Dkt # 77 at 7-8. *See Rio Props., Inc. v. Rio Int'l Interlink*, 284 F. 3d 1007, 1017 (9th Cir. 2002) ("[T]he Constitution does not require any particular means of service of process, only that the method selected be reasonably calculated to provide notice and an opportunity to respond. *Mullane* [*v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)]. In proper circumstances, this broad constitutional principle unshackles the federal courts from anachronistic methods of service and permits them entry into the technological renaissance.").

[12] In Bower's previous memorandum, he offered the following by way of extenuation: "While Egypt has historically been a signatory to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial

EgyptAir's alternative argument is for severance under Fed. R. Civ. P. 21, arguing that El-Nady is a dispensable party whose presence as a defendant casts an uncertain shadow over the court's jurisdiction.[13]  *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989) ("[I]t is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered.").  The cure of a potential defect in diversity jurisdiction by resort to Rule 21 is held to be proper.  *See Am. Fiber & Finishing, Inc.*, 362 F.3d at 142.  But because the court is persuaded that at the time this action was filed El-Nady's domicile was in fact in Egypt, severing El-Nady from this action is not necessary to effect any jurisdictional cure and might, in some respect, cause harm to El-Nady's interests insofar as they may parallel those of EgyptAir.[14]  *See*

---

Matters, that treaty's provisions cannot be invoked without a specific address for Ms. El-Nady in Egypt.  While Mr. Bower believes that, at least until the recent turmoil in Egypt, Ms. El-Nady has remained there, she has remained elusive, and Mr. Bower has been unable to uncover her specific location in the nineteen months since she fled.  Pursuant to Article 1, the Hague Convention on Service Abroad does not apply 'where the address of the person to be served with the document is not known,' as is the case here."  Bower Mem. at 10 (Dkt # 77).

[13] EgyptAir argues that El-Nady is a dispensable party because proceeding without her will not "prejudice her interests or expose her to double or otherwise inconsistent obligations."  EgyptAir's Resp. at 14.

[14] As to any actual confluence of interest between the defendants, the court sees no reason at this time to speculate.

*In re Olympic Mills Corp.*, 477 F.3d 1, 12 n.10 (1st Cir. 2007).

ORDER

For the foregoing reasons, the court <u>RULES</u> that it has subject matter jurisdiction based on diversity of citizenship.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE