UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-10405-RGS

COLIN BOWER, on his own behalf
and on behalf of his minor children, N and R

v.

MIRVAT EL-NADY,
and EGYPTAIR AIRLINES

MEMORANDUM AND ORDER ON ASSESSMENT OF DAMAGES

August 27, 2013

STEARNS, D.J.

Plaintiff Colin Bower brought this action on his own behalf and in his capacity as the guardian of his two minor children after his former wife, defendant Mirvat El-Nady, fled to Cairo, Egypt, in August of 2009, taking the children with her without his consent and in violation of a Massachusetts court order granting sole custody to Bower. In his Amended Complaint, Bower asserted claims against El-Nady for interference with his custodial relations (Count I), negligent and intentional infliction of emotional distress (Counts IV and V), and loss of filial consortium (Count VI), as well as claims for emotional distress (Counts IV and V) and false imprisonment (Count III)

on behalf of his children.[1] Despite extended notice, El-Nady failed to answer the Complaint or otherwise appear, and on October 26, 2012, the court entered a default judgment against her. A hearing on assessment of damages was held on June 27, 2013. El-Nady again refused to appear.

## FINDINGS[2]

El-Nady, an Egyptian citizen, and Bower, a U.S. citizen, met in Cairo, Egypt, and were married there in 1998. They later moved to London, where their two sons, Noor and Ramsay, were born. The children are citizens of both the United Kingdom and the United States, and by virtue of their birth to an Egyptian parent are deemed Egyptian nationals. In 2005, the family moved to Massachusetts, but by December of 2008, the marriage had deteriorated

---

[1] Bower also asserted claims for interference with custodial relations, negligence, negligent infliction of emotional distress, and loss of filial consortium against EgyptAir, the airline on which El-Nady flew with her children from New York to Cairo. The court granted summary judgment in EgyptAir's favor on March 22, 2012. *Bower v. El-Nady*, 847 F. Supp. 2d 266 (D. Mass 2012). That decision is currently on appeal by Bower. The appeal does not, however, divest this court of jurisdiction to enter an award of damages in the suit against El-Nady. *See United States v. Brooks*, 145 F.3d 446, 455-456 (1st Cir. 1998).

[2] The following findings are drawn from testimony given by Bower at the hearing on assessment of damages and from the well-pleaded facts in the complaint, which upon entry of default are accepted as true. *See Remexcel Managerial Consultants, Inc. v. Arlequin*, 583 F.3d 45, 52 (1st Cir. 2009), citing *Conetta v. Nat'l Hair Care Ctrs., Inc.*, 236 F.3d 67, 75-76 (1st Cir. 2001).

into a divorce. Bower was granted sole legal custody of the children and shared physical custody with El-Nady. The custody decree stipulated that El-Nady was not to remove the children from Massachusetts.

On August 11, 2009, during a scheduled multi-day visit, El-Nady drove the children to John F. Kennedy International Airport and purchased three one-way tickets to Cairo on a departing EgyptAir flight. Bower discovered the children missing and filed a police report on or about August 16, 2009. El-Nady was subsequently held in contempt by the Probate and Family Court and charged in both state and federal court with criminal kidnaping offenses.[3] Noor and Ramsay, who at the time of the abduction were eight and six years of age, respectively, remain in Egypt to this day.

Bower has worked assiduously since his children's abduction to secure their return. He has gathered the support of several national political leaders, including then-Senator and now Secretary of State John Kerry and former Massachusetts Congressman Barney Frank, who sponsored congressional resolutions calling on the government of Egypt to facilitate the immediate return of the children to the United States. *See* S. Res. 477, 112th Congress (2011-2012); H.R. Res.193, 112th Congress (2011-2012). Despite those efforts

---

[3] The Family Court also reaffirmed its award to Bower of sole legal custody and granted him sole physical custody.

and repeated appeals to the Egyptian authorities by members of the U.S. Department of State, no action has been taken by the Egyptian government.

In the four years since the abduction, Bower has seen his children only three times. He has flown to Egypt on at least twelve occasions to date, but El-Nady has repeatedly refused to permit court-ordered visitations.[4] The visits that have occurred were under the tight control of El-Nady and members of her family. Egyptian state security officials were also present. Bower testified that they were "unnatural visits, but at least I was able to put eyes on the children and spend some time with them." It has been more than a year and a half since he was last able to do so.

Bower is deeply concerned for the emotional and physical well-being of his children. The Massachusetts Probate and Family Court's decision to award sole legal custody to Bower was based in part on El-Nady's history of substance abuse and the determination by a guardian ad litem and two independent evaluators that she was unable to provide structure and consistent oversight for young children and to make reasoned decisions.

---

[4] According to the House Resolution, El-Nady filed for custody of Noor and Ramsay through the Egyptian probate court equivalent in or around March of 2008 by falsely claiming that the children and Bower were residents of Egypt. The Egyptian court authorized bi-monthly visits by Bower with his children during the duration of the custody dispute, which was ultimately resolved in Bower's favor.

Bower further testified that during his three successful visits, the boys appeared physically unhealthy. He is also concerned that they are being indoctrinated in a radical Islamist strain of their Muslim faith and alienated against the United States and Western values. The current turmoil in Egypt and threat of a civil war further adds to his worries.

Bower's travail has entailed emotional, physical, and financial costs. He attends counseling and has been diagnosed with post-traumatic stress disorder, anxiety, and mild depression as a result of having lost the children that "were very much the center of what [his] life was." He has logged countless hours and more than $120,000 in expenses traveling to and from Washington, D.C., and Cairo, in his attempts to meet with the children and advocating with U.S. and Egyptian officials for their return. He has also engaged the assistance of legal counsel and investigative services in Egypt and the United States.

## DISCUSSION

While Bower's economic damages are a matter of simple calculation, his and his children's hedonic damages are not. The court is in the impossible position of having to place a dollar value on something that is intangible and invaluable – "the wrongful taking of children from parents with custodial

rights, an experience which evokes deep-seated, time-honored, and broad societal concerns regarding the health and development of both the children and the parents wrongfully deprived of the right to share in and guide the passage of their offspring from childhood to adulthood with all of the joy and pleasure that journey usually affords a custodial parent." *Streeter v. Rifton Mgmt, LLC*, 2004 WL 3130585, at *8 (D. Conn. 2004). Although the court recognizes that no monetary sum can compensate for this type of loss, it finds El-Nady liable in the amount of $40,000,000.00 in hedonic damages and $250,000.00 in actual damages.

This amount conforms to jury verdicts awarded in two similar cases. In *Pittman v. Grayson*, 1997 WL 370331 (S.D.N.Y. July 2, 1997), a jury awarded compensatory and punitive damages against Icelandair in the amount of $10 million for a father and $5 million for his daughter where the child's mother had flown her to Iceland in violation of a court order and in defiance of the father's right to joint legal custody. *See id.* at *1 (vacating verdict on other grounds). The jury in *Streeter* awarded $27 million to a mother and $1.5 million to her two minor children against an air charter operator that facilitated abduction of the children to Egypt by their father, who shared legal custody. *Streeter*, 2005 WL 4357633 (Conn. Super. 2005) (unpublished

opinion). The child in *Pittman* remained in Iceland at the time of trial, while the children in *Streeter* were rescued approximately two years after their abduction and were known to be in good health. *Pittman by Pittman v. Grayson*, 149 F.3d 111, 115 (2d Cir. 1998); *Streeter*, 2005 WL at *15 n. 21.

Here the separation has already endured twice the length of time as in *Streeter* and, given the current strife in Egypt and the diminished diplomatic influence of the United States, may not be resolved at any time in the near future (and may not be resolved before the boys reach their majority). Under the circumstances, the court believes that an award of $20 million to Bower and $10 million each to Noor and Ramsay is appropriate, whether seen as symbolic or as a rough approximation of an immeasurable loss of filial companionship that may be permanent. The court also awards Bower $250,000.00 for the actual expenses that he has incurred to date in his efforts to rescue the boys and for the likely expenses he will incur in the foreseeable future in the endeavor.

## ORDER

The Clerk shall enter judgment for plaintiffs in the amount of $40,250,000.00 as provided in the body of this decision.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE